UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal Action No. 6: 09-16-DCR |
| V. | ) | |
| CHARLES WAYNE JONES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Although originally released on his own recognizance, subject to certain enumerated conditions [Record No. 26], an Order was issued for Defendant Charles Wayne Jones' arrest for an alleged bond violation on April 17, 2009. [Record No. 149] The motion prompting Jones' arrest asserted that, on or about March 24, 2009, Jones had met with Brian Hubbard and, shortly thereafter, Hubbard had sent a threatening message to two government witnesses. [Record No. 145] Following Jones' arrest, United States Magistrate Judge Robert E. Wier conducted a hearing pursuant to 18 U.S.C. § 3148 to determine whether Jones had violated conditions of release and, if so, whether Jones should be incarcerated pending trial or, alternatively, whether his conditions of release should be amended.

Two witnesses were called to testify during the hearing before Magistrate Judge Wier held on April 27, 2009: FBI Special Agent Timothy Briggs, and Readie Richard Hubbard, the father of Richard Brian Hubbard. After considering the testimony of these witnesses and the other evidence presented by the parties during and after the hearing, the Magistrate Judge issued

an Order on May 8, 2009, denying revocation of the Defendant's bond, but amending the terms of his release. [Record No. 205] The United States sought a stay of this determination and further proceedings were held on the afternoon of May 8, 2009, before the undersigned. Over the Defendant's objection, the United States presented additional testimony of Special Agent Briggs to clarify issues from the earlier hearing before the Magistrate Judge. The parties also requested that the Court review the testimony presented from the April 27th hearing as well as the documents submitted by the Defendant following that hearing.

Having reviewed all relevant information, the undersigned concludes that the United States has presented clear and convincing evidence supporting its assertion that Defendant Charles Wayne Jones has violated a condition of release. However, because the Court concludes that the appropriate remedy for the violation is home detention with additional limitations substantially similar to those ordered by the Magistrate Judge, the Court will deny the United States' request for incarceration. Therefore, the United States' motion for revocation will be denied but the Court will adopt and expand the amended terms of release contained in the Magistrate Judge's May 8, 2009, Order.

**I.     Relevant Facts**

As outlined in the Magistrate Judge's May 8th Order [Record No. 205], Jones has been indicted by a federal grand jury for federal election-related charges, including an alleged RICO conspiracy involving the former Clay County Circuit Judge and members of the Clay County Board of Elections. The election and RICO charges pertain to the period 2002 to 2007, while

additional counts alleging extortion and/or honest services mail fraud relate to the 2004 and 2006 elections.

The United States has alleged and offered proof that Brian Hubbard has close connections with Defendant Jones.[1] Following the return of the indictment in this case, Hubbard attempted to meet with Jones at Jones' home on or about March 20, 2009. However, Jones was unavailable during this first attempt. Later, Hubbard and his father, Readie Richard Hubbard, returned to Jones' home on March 23rd and discussed the criminal proceedings. Approximately twelve hours later, Brian Hubbard sent a threatening message to two government witnesses. In the message, Hubbard identifies himself as the sender and transmits a photograph of himself pointing a gun at the camera. Hubbard accuses the witnesses of lies and states, "Look what you have caused by your lies. Good job." The United States claims that this message was instigated by Defendant Jones.

After learning of the message from Brian Hubbard to the government witnesses, Special Agent Briggs interviewed Hubbard on several occasions. Initially, Hubbard stated that he had learned of the identities of the witnesses from either newspaper accounts or from conversations overheard at a local hospital. And while Hubbard conceded that Jones has talked about some of the likely prosecution witnesses during their meeting on March 23rd, he did not indicate that Jones identified the recipients of the threats. In later interviews, however, Hubbard conceded that he and Jones had discussed the persons Hubbard threatened in the early hours of March 24,

---

[1] The connection between Defendant Jones and the Hubbards is outlined at pages 3-4 of the Magistrate Judge's May 8, 2009 Order.

2009. Nothwithstanding this concession, Hubbard has not admitted that Jones suggested that Hubbard threaten any witness.

While Brian Hubbard was not called as a witness during the April 27th hearing, his father testified under subpoena. Admittedly, Richard Hubbard is a life-long friend of Defendant Jones. According to Hubbard Senior, Jones has recently assisted Brian Hubbard in obtaining employment and had nominated his son to act as a election "sheriff" in advance of the 2008 election. Hubbard Senior describes the March 23 visit with Jones as "social" and as lasting approximately 15 minutes. And while Hubbard Senior testified that Jones did mention some of the people who were probable witnesses against him in the pending criminal action, he did not indicate that Jones named the witnesses that were threatened by Brian Hubbard some twelve hours later.

In addition to the foregoing matters, Hubbard Senior offered testimony concerning a 2002 marijuana charge which was amended from a felony to a misdemeanor. While the charge was pending, he indicated that Jones and co-Defendant Freddy Thompson came to his home to encourage him to vote for Thompson in the upcoming election. Hubbard Senior also admitted that he had been subpoenaed to appear before a federal grand jury concerning an unrelated matter in 2006 and that he had talked to Jones about the subpoena at the time.

**II.   Analysis**

As Magistrate Judge Wier outlined in his Order, the analytical process under 18 U.S.C. 3148 is plain. The United States must prove that a release violation occurred. However, the statute imposes differing burdens of proof based on the nature of violation alleged. For an

alleged criminal violation, the government need only offer probable cause that the violation occurred. However, for a violation of "any other condition of release," the United States must prove the violation by "clear and convincing evidence." *Compare* 18 U.S.C. § 3148 (b)(1)(A) *with* 18 U.S.C. § 3148(b)(1)(B).

After discussing the alleged violation under the probable cause standard of § (b)(1)(A), the Magistrate Judge concludes that the lesser standard is inapplicable because the United States did not give Defendant Jones sufficient notice that he is being charged with violating the conditions of his release by committing additional criminal conduct (*i.e.*, violating 18 U.S.C. § 1512(k) by conspiring to threaten or intimidate a witness). And after analyzing whether Jones violated other conditions of his release by improper witness contact, the Magistrate Judge concludes that the United States has not met its burden by offering clear and convincing evidence in support of its position. With respect to the latter finding, the Magistrate Judge noted that:

> The question is close, on this record. The Court barred Jones, while on release, from having discussions with or contact with potential witnesses or victims regarding the subject matter of the case. The Court addressed the matter directly at arraignment . . . and intended the subject matter restriction to clarify the conduct restrictions in a high-profile case from a small county. The restriction fairly requires some level of intentionally violative conduct. Thus, it would violate the condition for Jones to have discussed the subject matter of the prosecution with a person he knew or should have known would be a potential witness/victim in the case. (Citations to record omitted.)

[Record No. 205, p. 11]

Having reviewed the testimony and other evidence relating to this issue, the undersigned concludes that the proof establishes by clear and convincing evidence that Jones had indirect

contact with potential witnesses regarding the subject matter of the litigation. Specifically, the Court concludes that Jones indirectly communicated with the government witnesses through Brian Hubbard. Whether the communication constitutes additional criminal conduct is not dispositive. It is clear that Jones has a close personal relationship with Brian Hubbard and his family. It is equally clear that Jones and the Hubbards discussed on March 23, 2009, potential witnesses. According to the government, Brian Hubbard initially concealed the fact that he and Jones had discussed the witnesses who were later threatened. The undersigned does not believe that Hubbard's admissions to Special Agent Briggs with respect to this matter should be discounted because they occurred during a third interview. Instead, the represent evidence of concealment. There is no evidence of coercion prompting this concession by Hubbard.[2]

The Magistrate Judge reached the conclusion that Jones did not violate the restrictions of "no witness contact" after comparing the subject matter of the litigation with the potential roles of Brian Hubbard and his father as witnesses in this litigation. While this analysis is logical to a point, the Court notes that parties and their surrogates do not always act according to the dictates of logic.[3] However, the undersigned's focus in not confined to whether Brian Hubbard

---

[2] According to Special Agent Briggs, Brian Hubbard admitted that he and Jones had discussed additional, potential trial witnesses (including the witness subsequently threatened) after Hubbard was advised by Briggs that he had failed a polygraph examination.

[3] The fact that the RICO conspiracy extends only to July 2007 (prior to the time Brian Hubbard had official involvement in Clay County elections) does not mean that Brian Hubbard lacks knowledge or information as a witness in the case. Likewise, the fact that Jones is charged with criminal conduct involving the 2004 and 2006 elections – while Hubbard Senior may have knowledge of illegal activity involving earlier elections – does not mean that Hubbard Senior lacks knowledge of illegal activities in subsequent elections. Defendant Jones was barred from having contact with potential witnesses regarding the subject matter of this case. The subject matter of this case involves election fraud in Clay County and allegedly extends over several years. Potential witnesses would include individuals with knowledge of the alleged election fraud, some of which may have occurred at times other than the period charged in the indictment. See Rule 404(b)

and his father are viewed as potential witnesses in this litigation but also extends to whether Brian Hubbard was used an in intermediary to contact other potential government witnesses.

After reviewing the proof presented by the parties, the Court is persuaded by clear and convincing evidence that Brian Hubbard attempted on at least two occasions to discuss the subject matter of the indictment and potential witnesses with Defendant Charles Jones (March 20, 2009, and March 23, 2009). Jones was unavailable on Hubbard's first attempt. However, shortly after Jones met with Brian Hubbard and his father, Hubbard contacted potential trial witnesses and made the threats described above. No evidence has been offered to indicate that Jones advised Hubbard or his father that he could not discuss the case with potential trial witnesses. Instead, Hubbard initially failed to disclose to Special Agent Briggs that the threatened witnesses had been discussed or identified during Hubbard's March 23rd conversation with Jones. While Hubbard did not send the threatening messages to the potential government witnesses for approximately twelve hours after the meeting with Jones, the Court does not conclude that this weighs in favor of Jones' position. Under the circumstances, it is fair to assume that additional time was needed to take and send the subject photograph to individuals who were the subject of the earlier meeting with Defendant Jones.

### III. Conclusion

The United States' objection to the Magistrate Judge's conclusion that Defendant Charles Wayne Jones has not violated the conditions of release by having indirect contact with potential trial witnesses is **SUSTAINED**. However, the United States' request that Defendant Jones bond

---

of the Federal Rules of Evidence.

be revoked for the violation and that he be incarcerated as a result is **DENIED**. The Court concludes that, with the additional modification outlined below, the amended conditions of release outlined in the Magistrate Judge's May 8, 2009, Order are sufficient to assure that Defendant Jones will not pose a danger to the safety of any other person or the community. Accordingly, it is hereby

    **ORDERED** as follows:

1. The Defendant shall be placed on home incarceration at his residence. The Defendant may leave his home (defined as the house in which the Defendant resides and an area within 50 feet of the house) only for medical treatment for himself or his wife, meetings with counsel *approved in advance by the United States Probation Office*, and court appearances. Other than in emergency medical situations involving the Defendant or his wife, the Defendant must get prior approval from the United States Probation Office before leaving his home for any reason. Defendant's home detention condition shall be monitored electronically;

2. The Defendant may not have any direct or indirect contact with any person (except through or in the presence of his counsel) that in any way includes, involves, concerns, mentions, or discusses the subject matter of this case. The term "subject matter of this case" means any of the charges or allegations in the indictment, any Clay County election-related conduct, any reference to or mention of persons that were or may have been involved in Clay County elections, any discussion of defenses, and any other matters that fairly relate in any way to the

        prosecution of London Criminal No. 6: 09-16, including names of persons who may be witnesses in the case. Thus, except through counsel or in a situation with counsel physically present, the Defendant may not discuss the subject matter of this case with any person;

3. The Defendant may not receive visitors at his home except for clergy, attorney, United States Probation Officers, immediate and extended family members, and persons giving him or a family member medical care or treatment (the exception to this prohibition does not include any co-Defendant *and any family member that may be a witness in the trial of this matter*). *The Defendant shall be require to maintain a log of all visitors which shall include the time and duration of any and all visits. This log shall be made available to the Court and to the United States Probation Office upon request.*

4. The Defendant may not use any telephone, cell phone, computer, or other communication device to communicate with any person (other than regarding medical care) except to contact the United States Probation Office, clergy, Defendant's counsel, and the Defendant's immediate family or extended family. However, any calls placed by or on behalf of the Defendant, or received by or on behalf of the Defendant shall be recorded on the log of visitors discussed in paragraph 3 above.

5. Except as modified by this Order, the terms and conditions originally imposed by the Magistrate Judge shall remain in effect.

This 12th day of May, 2009.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge

-10-