United States District Court
Eastern District of Kentucky
Southern Division at London

| | |
|---|---|
| UNITED STATES OF AMERICA | ) London Criminal |
| | ) Action No. 09–16–S |
| vs. | ) |
| | ) Frankfort, Kentucky |
| RUSSELL CLETUS MARICLE | ) March 17, 2010 |
| DOUGLAS C. ADAMS | ) 9:25 a.m. |
| CHARLES WAYNE JONES | ) |
| WILLIAM E. STIVERS | ) |
| FREDDY W. THOMPSON | ) |
| WILLIAM B. MORRIS | ) |
| DEBRA L. MORRIS | ) |
| STANLEY BOWLING | ) |

TRANSCRIPT OF TESTIMONY OF STEVEN BOWLING
BEFORE THE HONORABLE DANNY C. REEVES, AND A JURY

Appearances of Counsel:

On behalf of the United States: STEPHEN C. SMITH, ESQ.
                                JASON D. PARMAN, ESQ.

On behalf of the Defendant       DAVID S. HOSKINS, ESQ.
Russell Cletus Miracle:          MARTIN S. PINALES, ESQ.

On behalf of the Defendant       R. KENT WESTBERRY, ESQ.
Douglas C. Adams:                KRISTEN N. LOGAN, ESQ.

On behalf of the Defendant       T. SCOTT WHITE, ESQ.
Charles Wayne Jones:

On behalf of the Defendant       ROBERT L. ABELL, ESQ.
William R. Stivers:

On behalf of the Defendant       RUSSELL JAMES BALDANI, ESQ.
Freddy W. Thompson:              R. TUCKER RICHARDSON, III, ESQ.

On behalf of the Defendant       JERRY W. GILBERT, ESQ.
William B. Morris:

On behalf of the Defendant       ELIZABETH SNOW HUGHES, ESQ.
Debra L. Morris:

On behalf of the Defendant       DANIEL A. SIMONS, ESQ.
Stanley Bowling:

1   Appearances of Counsel:

2   On behalf of the United States: STEPHEN C. SMITH, ESQ.
                                    JASON D. PARMAN, ESQ.
3                                   Assistant U.S. Attorneys
                                    601 Meyers Baker Road
4                                   Suite 200
                                    London, Kentucky  40741
5

6   On behalf of the Defendant      DAVID S. HOSKINS, ESQ.
    Russell Cletus Miracle:         107 East First Street
7                                   Corbin, Kentucky  40701

8                                   MARTIN S. PINALES, ESQ.
                                    150 East Fourth Street
9                                   Federal Reserve Building
                                    Cincinnati, Ohio  45202
10

11  On Behalf of the Defendant      R. KENT WESTBERRY, ESQ.
    Douglas C. Adams:               KRISTEN N. LOGAN, ESQ.
12                                  220 West Main Street
                                    Suite 1900
13                                  Louisville, Kentucky  40202

14
    On behalf of the Defendant      T. SCOTT WHITE, ESQ.
15  Charles Wayne Jones:            133 West Short Street
                                    Lexington, Kentucky  40507
16

17  On behalf of the Defendant      ROBERT L. ABELL, ESQ.
    William E. Stivers:             120 North Upper Street
18                                  Lexington, Kentucky  40507

19
    On behalf of the Defendant      RUSSELL JAMES BALDANI, ESQ.
20  Freddy W. Thompson:             R. TUCKER RICHARDSON III, ESQ.
                                    300 West Short Street
21                                  Lexington, Kentucky  40507

22
    On behalf of the Defendant      JERRY W. GILBERT, ESQ.
23  William B. Morris:              212 North Second Street
                                    Richmond, Kentucky  40475
24

25

```
 1   On behalf of the Defendant        ELIZABETH SNOW HUGHES, ESQ.
     Debra L. Morris:                  201 West Short Street
 2                                     Lexington, Kentucky   40507

 3
     On behalf of the Defendant        DANIEL A. SIMONS, ESQ.
 4   Stanley Bowling:                  116 West Main Street
                                       Suite 2A
 5                                     Richmond, Kentucky   40475

 6
     Court Reporter:                   CYNTHIA A. OAKES, CRR
 7                                     Official Court Reporter
                                       United States District Court
 8                                     560 Athens Boonesboro Road
                                       Winchester, Kentucky   40391
 9                                     (859) 983-4346

10

11

12

13

14

15

16

17

18

19

20

21

22
     Proceedings recorded by mechanical stenography,
23   transcript produced by computer.

24

25
```

 1          THE COURT:  Mr. Gilbert, you may call your next

 2   witness.

 3          MR. GILBERT:  Steven Bowling, Your Honor.

 4          THE COURT:  Thank you.

 5                    STEVEN BOWLING,

 6   having been first duly placed under oath, was examined and

 7   testified as follows:

 8                    DIRECT EXAMINATION

 9   BY MR. GILBERT:

10   Q    State your name, please, sir.

11   A    Steven Bowling.

12   Q    How old are you, Mr. Bowling?

13   A    Thirty-five.

14   Q    Where do you live?

15   A    Manchester, Kentucky.

16   Q    How long have you lived in Clay County?

17   A    All my life, sir.

18   Q    Are you related to a defendant in this case?

19   A    Yes, sir.

20   Q    And who is that?

21   A    Stanley Bowling.

22   Q    And what relation do you have with him?

23   A    Father.

24   Q    Are you married?

25   A    Yes, sir.

STEVEN BOWLING - DIRECT - MR. GILBERT                          5

1    Q    And what's your wife's name?

2    A    Crystal Bowling.

3    Q    And do you have any children?

4    A    Yes, sir.

5    Q    How many and what are their ages?

6    A    Two girls, one 17 and one ten.

7    Q    Are you employed, sir?

8    A    Yes, sir.

9    Q    By whom and in what capacity?

10   A    North Manchester Water Association.

11   Q    And how long have you held that position?

12   A    Be three years, going on three years.

13   Q    Prior to that, did you work for B&B Excavating --

14   A    Yes, sir.

15   Q    -- Incorporated?

16        And who owns that business?

17   A    Stanley Bowling.

18   Q    That's your father?

19   A    Yes.

20   Q    And for what period of time did you work for them -- for

21   your father, Mr. Bowling?

22   A    Probably from '01, '02, up to '07.

23   Q    Okay.  And what kind of job responsibilities did you have?

24   A    I run equipment.

25   Q    And what type of equipment?

1   A    Excavator, backhoe, bulldozer.

2   Q    Back in November of 2004, did you participate in a dump

3   cleanup in Jackson County referred to as Halcomb Hill?

4   A    Yes, sir.

5   Q    Could you describe that job to the jury, please?

6   A    The job on Halcomb Hill?

7   Q    Yes, sir.

8   A    It was a garbage cleanup, a big dump, big garbage cleanup.

9   Q    And when did you start that project, if you know?

10  A    Probably October.

11  Q    And when was that job completed?

12  A    November 19th.

13  Q    And from October until the job was completed, what was

14  done at the site by B&B Excavating?

15  A    We took the garbage out, sir, removed the garbage with the

16  excavator, piled it up and loaded it into trucks.

17  Q    And did Bart Morris participate and his company, B & J,

18  participate in that cleanup?

19  A    Yes, sir, we loaded the garbage in his trucks and he

20  hauled it out.

21  Q    What sort of trucks does he have?

22  A    Tractors and trailers.

23  Q    And who would drive the tractor and trailer?

24  A    Bart would.

25  Q    Would anybody else?

1    A    No, sir.

2    Q    Were there also other workers, general labor workers, that

3    participated in that job?

4    A    Yes, sir.

5    Q    And who type of work would they do?

6    A    They just picked up garbage.

7    Q    Do you recall a site inspection that was made by Mr. Barry

8    Spivey and Mark Davis on November the 2nd, 2004, at the Halcomb

9    Hill dumpsite?

10    A    Yes, sir.

11    Q    Can you tell the jury about that, please?

12    A    They come that day and told us what was left to do to the

13    job to get it complete.

14    Q    And who all was there that day?

15    A    Me and Bart and some employees handpicking.

16    Q    And what was Bart Morris doing that day?

17    A    He was there with me and talking with them guys to see

18    what else we had to do to get the job complete.

19    Q    And how long was he on the job site?

20    A    He was there all day long as we worked.

21    Q    And what time did he leave?

22    A    Approximately 4:30, 5:00.

23    Q    In November of 2006, were you still working for B&B

24    Excavation?

25    A    Yes, sir.

1  Q    Did you participate in a dump cleanup site in Jackson

2  County referred to as Travis Road?

3  A    Yes, sir.

4  Q    Can you describe that job for the jury, please?

5  A    It was another garbage cleanup where it took excavators to

6  remove garbage and load in tractors and trailers.

7  Q    And what time of the year was the work performed on that

8  site?

9  A    It was in November.

10 Q    And do you know the completion date of that?

11 A    November 15th.

12 Q    And did Bart Morris participate in that cleanup?

13 A    Yes, sir.

14 Q    And what did he do?

15 A    He hauled the garbage out with his truck and trailers

16 after we loaded it.

17 Q    Okay.  Once you start a job, Mr. Bowling, on one of these

18 dump cleanup sites, how often are you there on the site?

19 A    There every day that you can work.  Well, you know,

20 excluding Sundays.

21 Q    And what days could you not work?

22 A    You know, just pouring the rain or something like that is

23 the only reason we didn't work.

24 Q    Do you remember a day when a newspaper reporter came to

25 the job site?

1   A    Yes, sir.

2   Q    And when was that?

3   A    That would have been November the 7th.

4   Q    And did the reporter take pictures?

5   A    Yes, sir.

6   Q    And did you save a copy of that article?

7   A    Yes, sir.

8        MR. GILBERT:  May I display the newspaper article to

9   the witness, please?

10       THE COURT:  Yes, sir.

11  BY MR. GILBERT:

12  Q    Is that an edition of the Jackson newspaper dated November

13  the 9th, 2006?

14  A    Yes, sir.  Yes, sir.

15  Q    And what is the name of the paper?

16  A    Jackson County Sun.

17  Q    Okay.  And has that edition been in your possession since

18  that day?

19  A    Yes, sir.

20  Q    And you saved that?

21  A    Yes.

22       MR. GILBERT:  I would move its introduction, Your

23  Honor.

24       THE COURT:  Any objection?

25       MR. SMITH:  No, Your Honor.

STEVEN BOWLING - DIRECT — MR. GILBERT                10

1          THE COURT:  All right.  What is the next numbered

2     exhibit?

3          THE CLERK:  No. 8.

4          THE COURT:  It will be admitted as William Morris

5     Exhibit No. 8.

6          MR. GILBERT:  If I could, Your Honor, I would move

7     that the photographs be published to the jury?

8          THE COURT:  Yes, sir, you may publish it.

9     BY MR. GILBERT:

10    Q    There are two photographs that appear on the job site, are

11    there not?

12    A    Yes, sir.

13    Q    Does that photograph show — does that photograph show

14    some of the workers there on November the 7th, 2006?

15    A    Yes, sir.

16    Q    And who is this individual here?

17    A    James Goins.

18    Q    And this individual here?

19    A    David Hacker.

20    Q    And this individual here?

21    A    Anthony Hayer.

22    Q    And this individual over here?

23    A    Raleigh Bowling.

24    Q    Okay.  This is a second picture that appears in that

25    newspaper article?  Is that the second picture that appears in

1   the newspaper article?

2   A    Yes, sir.

3   Q    Let me ask you first, this piece of equipment here with

4   the boom on it and the tread tracks, what type of piece of

5   equipment is that?

6   A    That's an excavator.

7   Q    And who would generally operate that piece of equipment?

8   A    I would, sir.

9   Q    And that equipment is owned by who?

10  A    B&B.

11  Q    And behind it, it appears to be a bed of a trailer?

12  A    Yes, sir.

13  Q    And what type of piece of equipment is that, Mr. Bowling?

14  A    That's a tractor and trailer that we loaded the trash

15  into.

16  Q    And who owns that?

17  A    Bart Morris.

18  Q    And who drives that?

19  A    Bart Morris.

20  Q    Do you know of anyone else that drives it?

21  A    No, sir.

22  Q    Now, the quality is not very good.  I'm not doing a very

23  good job centering it.

24       This picture also depicts several individuals in the

25  photograph, does it not?

1   A    Yes, sir.

2   Q    Who is this individual here?

3   A    Steven Bowling.

4   Q    And the individual standing beside you?

5   A    Raleigh Bowling.  James Goins.  I think that's David

6   Hacker.

7   Q    And who is the individual under the boom?

8   A    Bart Morris.

9   Q    To your recollection, Mr. Bowling, how long was Bart

10  Morris on the job site that day, November the 7th, 2006?

11  A    He was there until we completed work that evening.

12  Q    And what time did you-all arrive there that day?

13  A    We was there probably 7:00, 7:30 that morning.

14       MR. GILBERT:  That's all I have.

15       THE COURT:  Thank you.

16       MR. SMITH:  Your Honor, may we approach?

17       THE COURT:  Yes, sir, you may.

18       (Whereupon, the following discussion was had between the

19  Court and counsel at the bench, out of the hearing of the

20  jury.)

21       MR. SMITH:  For the record, Mr. Steven Bowling

22  testified in front of a federal grand jury in Covington,

23  Kentucky, on January the 12th, 2006, and he's testified here in

24  front of this jury here today that -- I believe that Stanley

25  Bowling was the owner of B&B Excavating.  Under oath in front

1    of the federal grand jury, I asked that same question, "Does

2    your father have a position or does he work" — it says, "His

3    father has a position with the company?"  He says, "No, he

4    doesn't."  "Does your dad — how long has that status and your

5    company with your dad?"  "He's helped me as far as jobs and

6    stuff but I've never known him to take a check from the

7    company."

8             I think that in this testimony, Your Honor, there is

9    inconsistencies throughout with his representation already.  I

10   intend — the reason I wanted to approach is I wanted to

11   explore some of these areas that may be outside necessarily

12   just the fact that his dad — whether or not his dad owned the

13   company, but also his role in the company, his operation of the

14   company, and some of those things that we touched upon earlier

15   in his prior sworn testimony.

16            There's two issues there.  One, I believe that are

17   going to be inconsistencies that have already presented

18   themself, I believe, in the way he's described the company, and

19   I want to explore that with him.  The second issue is, is that

20   when he was giving his testimony he was given a grant of

21   immunity by order of the Court pursuant to our petition, and I

22   believe that while that grant of immunity does one thing as far

23   as his exposure to liability for giving testimony and the

24   subject of this inquiry, it does not immunize him from perjury.

25   So if I find within this transcript inconsistencies here today,

1   I want to make sure that I'm on safe ground using this sworn
2   testimony to impeach him if necessary.  I make this point.  I'm
3   not saying that I have gone far enough with his explanation of
4   the company to identify line by line and item by items, but I
5   wanted to bring this to the Court before I start down that
6   road.

7            THE COURT:  Well, in terms of issues of credibility,
8   of course, you can inquire if he's given inconsistent
9   statements.  The concern I have is whether this witness needs
10  to be advised outside the presence of the jury of the
11  possibility of charges of perjury.  I don't know if he's
12  testified falsely, but I'm concerned that if he feels like that
13  he's testifying pursuant to a grant of immunity that he may be
14  mistaken if he gives inconsistent or what's believed to be
15  perjured testimony here today, and I'm wondering if we need to
16  take an earlier lunch break so I can advise him of that
17  possibility.  I hate to send the jury back another time for
18  another five or ten minutes just to come back out here for
19  another 15 or 20 minutes.  If everyone is in agreement, if we
20  can go ahead and take our lunch break at this time, I could
21  advise him just generally of his obligations of testifying
22  truthfully here, and then we can resume at 12:30 instead of
23  1:00, if the parties are prepared.

24            MR. WESTBERRY:  Judge?

25            THE COURT:  Mr. Westberry.

1          MR. WESTBERRY:  On behalf of Doug Adams, we have

2    thought about our discussion earlier about the expanded

3    admonition.

4          THE COURT:  Yes, sir.

5          MR. WESTBERRY:  We would request you give that before

6    the lunch break.

7          THE COURT:  Before the lunch break?  All right.

8          MS. HUGHES:  Elizabeth Hughes on behalf of Debra

9    Morris.  I don't believe the defense has a copy of the grand

10   jury testimony, so if Mr. Smith is going to use that to

11   impeach, I would ask that all the defense counsel be given a

12   copy of it.

13         MR. SIMONS:  Of course, I want to join that request

14   on behalf of Stanley Bowling.

15         THE COURT:  Mr. Smith, will you be able to make a

16   copy of that and make that available during the lunch hour?

17         MR. SMITH:  Yes.

18         THE COURT:  All right.  That's another reason to go

19   ahead and take our lunch break.  Thank you, Counsel.

20      (Whereupon, the following proceedings continued in open

21   court.)

22         THE COURT:  All right.  Thank you, Counsel.

23         Ladies and gentlemen, a little bit of good news for

24   you.  We're going to take our lunch break early today.  Those

25   of you that were wondering, I know we didn't take a very long

1 break as we usually do because we started a little bit later.
2 So we'll go ahead and take our lunch break at this time.
3 Before we do break for lunch, I do want to again remind you of
4 the admonition that's been given.  What I'm going to do is I'm
5 going to give you until 12:45, so you'll have a little more
6 time to take your lunch in case you want to go outside the
7 building.  I know a lot of you stay in for lunch, but if you
8 want to get out and get some fresh air, we'll give you a little
9 bit extra time to do that today.  Of course, inasmuch as you
10 may be going outside, I do want to remind you of the admonition
11 that I've given to you previously not to discuss the case among
12 yourselves, not to allow anyone to approach you to discuss the
13 case.

14          Of course, we're getting close to tournament time,
15 and so I do want to warn you that you shouldn't read, watch, or
16 listen to anything about this case.  Now, there may be times
17 where you'll hear something on the radio or see something in a
18 newspaper.  You should not read, watch, listen to anything
19 about this case.  I do want to emphasize that to you.  You
20 should never do that during the course of the case.  And please
21 don't do that today.  If you go out, don't do that, don't talk
22 with any of the witnesses in the case, don't attempt to do any
23 type of research or perform any investigation.  We talked about
24 electronic communications earlier several times, don't do any
25 of that.  And, of course, don't make up your mind about the

1 case until it is finally submitted to you.  So with that

2 admonition, the jury will be excused until 12:45 this

3 afternoon.

4     (Whereupon, the jury retired from the courtroom, after

5 which the following proceedings were had in open court.)

6         THE COURT:  Thank you, and please be seated.

7         Before I excuse everyone for —

8         Mr. Westberry, in your opinion, was that admonition

9 sufficient with —

10         MR. WESTBERRY:  I recall one additional thing that

11 you were discussing earlier today that, I'm going to

12 paraphrase, the contents of which you see on TV.

13         THE COURT:  I was saving that a little bit for later

14 so as not to add too much emphasis, but I'll —

15         MR. WESTBERRY:  With that one statement, yes.

16         THE COURT:  All right.  I'll give a further

17 admonition at the end of the day, but I didn't want to load up

18 too much at the lunch hour.

19         MR. WESTBERRY:  I understand.

20         THE COURT:  If you load up too much at lunch, people

21 tend to fall asleep.

22         Before we recess for lunch, Mr. Bowling, I wanted to

23 remind you of a couple of matters to make sure that you're

24 fully aware.  I understand that you testified previously before

25 a federal grand jury in this matter pursuant to a grant of

1   immunity; is that correct?

2           THE WITNESS:  Yes, sir.

3           THE COURT:  I want to make sure that you do

4   understand that while you testified pursuant to a grant of

5   immunity, in the event you should give false testimony during

6   the course of this proceeding, that that grant of immunity

7   would not immunize you from charges of perjury.  You do

8   understand that?

9           THE WITNESS:  Yes, sir.

10          THE COURT:  And if you were to give false or

11  incorrect testimony in the course of this proceeding, false or

12  perjured testimony, charges could be brought against you

13  charging you with perjury, and, of course, that would be a

14  criminal penalty and you could be -- if found to be guilty of

15  those charges, you could be, if convicted, sentenced to a term

16  of incarceration of up to five years.  And you're aware of

17  that?

18          THE WITNESS:  Yes, sir.

19          THE COURT:  All right.  I also want to remind you

20  that you do have a right to counsel if you should choose to

21  exercise that right during the course of this proceeding if you

22  believe that any answer to a question asked of you by the

23  United States or by any of the attorneys for the defendant

24  would tend to incriminate you.  And you do understand that?

25          THE WITNESS:  Yes, sir.

1          THE COURT:  All right.  Thank you.

2          Mr. Smith?

3          MR. SMITH:  Your Honor, I'm not sure -- there's one

4     other admonition that I would ask this Court to consider giving

5     the witness.  One is the rule on separation.

6          THE COURT:  Yes, sir.

7          MR. SMITH:  And also it would further be the position

8     of the United States that if he testifies here today to

9     something -- in other words, if there's an occasion that he

10    testified falsely before the grand jury --

11         THE COURT:  Yes, sir.

12         MR. SMITH:  -- previously, that's also subject to

13    prosecution for perjury, and that would be the position we

14    would take.

15         THE COURT:  All right.  I will give the witness

16    further information.

17              First, with respect to separation of witnesses, the

18    Court has previously invoked the rule on separation of

19    witnesses.  It's a rule that prohibits or prevents witnesses

20    from discussing their testimony with anyone else that might

21    testify in the case.  That also would prevent you from

22    discussing any prior witness's testimony in the case.  In other

23    words, you're not allowed to talk about your testimony or the

24    testimony of anyone else during the course of the proceeding.

25    And you do understand that?

1            THE WITNESS:  Yes, sir.

2            THE COURT:  Now, also, as Mr. Smith correctly

3    indicated, with respect to your testimony before the grand

4    jury, if it were determined subsequently that that testimony

5    was false, was given — was given falsely, you do understand

6    that charges could be brought against you for perjury for that

7    testimony?

8            THE WITNESS:  Yes, sir.

9            THE COURT:  You understand that?  In other words,

10   just because you're given immunity, that would not allow you to

11   give false testimony in the course of a proceeding, whether

12   it's before this Court or before a grand jury.  And you do

13   understand that?

14           THE WITNESS:  Yes, sir.

15           THE COURT:  All right.  Thank you.

16           Let me ask the attorneys if there's anything else

17   before I excuse the witness or before we take our lunch break?

18   Anything else?

19       (No response.)

20           THE COURT:  All right.  If not, we will be in recess

21   until 12:45 this afternoon.

22       (Whereupon, a recess was had for the noon hour, after

23   which the proceedings continue uninterrupted to Volume 26–B.)

24                   (Proceedings concluded at 11:39)

25

1

2                          C E R T I F I C A T E

3          I, Cynthia A. Oakes, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7    3/17/2010                          s/CYNTHIA A. OAKES
         DATE                           CYNTHIA A. OAKES, RPR, RMR, CRR
8

9

10

11                              I N D E X

12                                                              PAGE

13   Testimony of STEVEN BOWLING:
          Direct Examination by Mr. Gilbert:                      4
14

15

16

17

18

19

20

21

22

23

24

25