1

```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
2                    SOUTHERN DIVISION at LONDON
                              - - -
3
    UNITED STATES OF AMERICA,        :  Docket No. CR 09-16-S
4                                    :
                      Plaintiff,     :  Frankfort, Kentucky
5                                    :  Wednesday, March 17, 2010
         versus                      :  12:45 p.m.
6                                    :
    RUSSELL CLETUS MARICLE,          :
7   DOUGLAS C. ADAMS                 :
    CHARLES WAYNE JONES              :
8   WILLIAM R. STIVERS               :
    FREDDY W. THOMPSON               :       Trial Day 26B
9   WILLIAM B. MORRIS                :
    DEBRA L. MORRIS                  :
10  STANLEY BOWLING,                 :
                                     :
11                    Defendants.    :

12

13                            - - -
                     TRANSCRIPT OF TRIAL
14                BEFORE DANNY C. REEVES
         UNITED STATES DISTRICT COURT JUDGE and a jury
15                            - - -

16  APPEARANCES:

17  For the United States:      STEPHEN C. SMITH, ESQ.
                                JASON D. PARMAN, ESQ.
18                              Assistant U.S. Attorney
                                601 Meyers Baker Road
19                              Suite 200
                                London, KY 40741
20
    For the Defendant           MARTIN S. PINALES, ESQ.
21  Russell Cletus Maricle:     Strauss & Troy
                                150 E. Fourth Street
22                              Fourth Floor
                                Cincinnati,OH  45202
23
                                DAVID S. HOSKINS, ESQ.
24                              107 E. First Street
                                Corbin, KY  40701
25
```

```
 1    For the Defendant              R. KENT WESTBERRY, ESQ.
      Douglas C. Adams:              KRISTIN N. LOGAN, ESQ.
 2                                   Landrum & Shouse, LLP
                                     220 West Main Street
 3                                   Suite 1900
                                     Louisville, KY 40202
 4

 5    For the Defendant              T. SCOTT WHITE, ESQ.
      Charles Wayne Jones:           Morgan & Pottinger, P.S.C.
 6                                   133 West Short Street
                                     Lexington, KY  40507
 7

 8    For the Defendant              ROBERT L. ABELL, ESQ.
      William R. Stivers:            120 North Upper Street
 9                                   Lexington, KY  40507

10

      For the Defendant              RUSSELL JAMES BALDANI, ESQ.
11    Freddy W. Thompson:            R. TUCKER RICHARDSON, ESQ.
                                     Baldani, Rowland & Richardson
12                                   300 West Short Street
                                     Lexington, KY  40507
13

14    For the Defendant              JERRY W. GILBERT, ESQ.
      William B. Morris:             Coy, Gilbert & Gilbert
15                                   212 North Second Street
                                     Richmond, KY 40475
16

17    For the Defendant              ELIZABETH SNOW HUGHES, ESQ.
      Debra L. Morris:               Gess, Mattingly & Atchison, PSC
18                                   201 West Short Street
                                     Lexington, KY 40507
19

20    For the Defendant              DANIEL A. SIMONS, ESQ.
      Stanley Bowling:               Thompson, Simons, Dunlop & Fore
21                                   116 West Main Street
                                     Suite 2A
22                                   Richmond, KY 40476

23

24

25
```

3

1    Court Reporter:              LISA REED WIESMAN, RDR-CRR
                                  Official Court Reporter
2                                 35 W. Fifth Street
                                  P.O. Box 1073
3                                 Covington, KY  41012
                                  (859) 291-4410
4

5        Proceedings recorded by mechanical stenography,
     transcript produced with computer.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          (Proceedings commenced at 12:47 p.m.)

2          THE COURT:  Thank you.  The record will reflect the

3    jury's not present at this time.  Parties and counsel are

4    present.  I understand there's an issue to take up before the

5    jury comes in?  Miss Hughes?

6          MS. HUGHES:  I have a little witness problem, Your

7    Honor, and I wanted to just put the Court on notice of it.

8          THE COURT:  A little witness problem?

9          MS. HUGHES:  A little witness problem.  I personally

10   served a witness with a subpoena on Sunday for today at 9:00.

11   And I spoke with him by telephone last night, at about 9:00 or

12   so, to confirm he was still coming, and I told him it would be

13   fine if he arrived at noon.

14         When we took our lunch break, I checked my cell

15   phone, and I had a voicemail message from his daughter saying

16   his house had exploded, blown up, and he would not be able to

17   come today.

18         So I was not able to reach by telephone.  I expected

19   to put on my proof and finish today, and so that was going to

20   be a problem.  We're going a little slower so I'm going to

21   endeavor to contact him and make sure he's here tomorrow.  But

22   I didn't want to wait till the last minute to tell the Court I

23   was having this problem.

24         THE COURT:  If we need to begin with other witnesses

25   before -- if you finish your case today, rather than recess,

1    we'll proceed with other witnesses, and then you can call this

2    person tomorrow.  I hate to issue an order for someone to be

3    transported by the marshal if they've just had their house

4    explode.

5          MS. HUGHES:  The problem is when I served him, he

6    lived in an apartment.  I don't know what he means by house.

7    So I'm a little suspect.  But hopefully, I'll get it worked

8    out for tomorrow.

9          THE COURT:  If it appears that we do need to provide

10    transportation at the government's expense for a witness, let

11    me know as soon as possible, and we can make those

12    arrangements.  As I think everyone at this point understands,

13    we are trying to complete the proof as quickly as we can, but

14    everybody has an opportunity to present their proof.  Just

15    because you're at the end of the row doesn't mean that you're

16    going to be short changed on anything.

17          MS. HUGHES:  Because of the fact that I knew he lived

18    in an apartment, and I got this message saying his house

19    exploded, it could just mean that's how -- it's from his

20    daughter and that's how they refer to it.  But I did want to

21    let the Court know as early as possible.

22          THE COURT:  What they refer to in the rules of

23    evidence as an excited utterance, I believe.

24          MS. HUGHES:  There you go.

25          THE COURT:  Mr. Simons, if we get to that point, you

6

1   do have witnesses you can present this afternoon?

2           MR. SIMONS:  I do.

3           THE COURT:  All right.

4           MR. SIMONS:  I've got a couple here now, but I have

5   more coming at 2:30.  I should be okay.

6           THE COURT:  So we should be good for today.

7           Mr. Smith, did you have an issue to take up?

8           MR. SMITH:  Your Honor, I wanted to report to the

9   Court, we shared with the defense the transcript of Mr. Steven

10  Bowling's prior testimony from the grand jury.  I was advised

11  by Mr. Simons that he was approached by Steven Bowling in the

12  hall, and he said he needed to ask him some questions or

13  had -- I think maybe Mr. Gilbert was asked by him, and Mr.

14  Simons passed that on to me.

15          Obviously, we talked, Mr. Simons and I did, and I

16  think we both agreed that he or Mr. Gilbert should be

17  representing him at this point.  And so he said as we come

18  back together here that nobody had talked with him.

19          So I guess in fairness to the Court's time, if there

20  is an issue where this witness is requesting an attorney, that

21  we need to know that now.  And in order to avoid any further

22  delay, it's just an open question right now, and nobody seems

23  to know the answer.

24          THE COURT:  All right.  Mr. Simons?

25          MR. SIMONS:  I did not speak with the witness at all.

1  I believed that to acquiesce with the rule of the Court, it

2  would be important not to.

3        THE COURT:  I understand that.  I suppose the

4  question is whether, when the witness testifies on

5  cross-examination, if he does assert a Fifth Amendment right

6  or if he requests counsel, the Court may have to appoint

7  counsel for him at that point.  We have to go through the

8  procedure.  He would have to fill out an affidavit, a

9  financial affidavit to see if he is entitled to appointed

10  counsel or otherwise.  At this point, we don't know --

11        MR. SIMONS:  That's correct.

12        THE COURT:  -- the answer to that question.  It may

13  be if we get to that point, Mr. Smith, that I would need to

14  excuse the witness subject to being recalled tomorrow.  He

15  wouldn't be excused, but he would be subject to being recalled

16  tomorrow if it looked like that there was a good faith basis

17  for the assertion of a privilege or request for counsel.

18        Mr. Abell?

19        MR. ABELL:  Judge, I do not wish to have this witness

20  raise that issue in front of this jury.

21        THE COURT:  If counsel reasonably believes that a

22  witness will assert a Fifth Amendment right, then they

23  shouldn't present the witness to testify.  Of course, we

24  didn't realize that until this stage of the proceedings.  But

25  you raise a good point.

8

1          So I believe in light of that, what I may do is allow

2     the witness to be *voir dired* outside the presence of the jury

3     by the United States.  I'll then ask any of the other parties

4     in the case if they would -- if they anticipate -- or I'll

5     allow you to *voir dire* the witness as well, see if there are

6     any issues you would raise with the witness that might result

7     in the assertion of the privilege.

8          MR. ABELL:  I can tell the Court I do not, as I stand

9     here, intend to ask the witness any questions, but I do not

10    want him to invoke Fifth Amendment rights in front of the

11    jury.

12         THE COURT:  I understand that.  At this point, we

13    don't know that until we've heard the areas of

14    cross-examination.

15         Mr. Westberry?

16         MR. WESTBERRY:  It occurred to me when I heard the

17    colloquy going on, it's my understanding, I believe it's

18    correct from a legal standpoint, it's generally impermissible

19    for a witness to exercise his or her Fifth Amendment privilege

20    in the presence of a jury.  We've always had procedures in

21    place to avoid that happening, and I think the *voir dire*

22    suggestion that you were commenting on -- I would not ask him

23    any questions myself, Your Honor.

24         THE COURT:  All right.

25         MR. WESTBERRY:  Thank you.

9

1    THE COURT:  We'll proceed with *voir dire* of the

2    witness.  Bring the witness in at this point, and if he does

3    invoke his rights, then at that point, we'll need to revisit

4    the issue.

5         (Steven Bowling returned to the witness stand.)

6    THE COURT:  Thank you.  Mr. Bowling, please come up

7    and be seated.  You're still under oath, sir.  Mr. Bowling,

8    I'm going to allow one or more of the attorneys to ask you

9    questions outside the presence of the jury in order to

10   determine whether you intend to invoke any Fifth Amendment

11   right not to testify or not to answer a particular question so

12   it will not be necessary for you to do that in front of a

13   jury.

14        So Mr. Smith or Mr. Parman, do you need just a

15   moment?

16        Before you begin, Mr. Smith, Mr. Bowling, did you

17   have a question of the Court?

18   THE WITNESS:  Yes, sir.  I'd like to ask to be

19   dismissed.

20   THE COURT:  Before I can dismiss you, I would need to

21   determine whether you'd be invoking your Fifth Amendment right

22   to a question.  I need to determine whether it's a good faith

23   reason to be dismissed.  Would it be based on a Fifth

24   Amendment right not to incriminate yourself?

25   THE WITNESS:  Right.

10

1          THE COURT:  Have you had a chance to confer with

2     counsel?

3          THE WITNESS:  No, sir.

4          THE COURT:  I'm going to allow Mr. Smith to ask you

5     questions.  At the point that you believe that it would in

6     some way incriminate you in any type of either criminal

7     activity or perjury that would not be covered by immunity that

8     was given to you earlier, you can advise me at that time and

9     then I'll make a determination.

10          THE WITNESS:  Okay.

11          THE COURT:  Mr. Smith, you can -- Mr. Simons.

12          MR. SIMONS:  Your Honor, it seems a little unfair for

13     him to decide whether or not to invoke the Fifth Amendment

14     privilege without a lawyer.  And he hasn't seen his grand jury

15     testimony at this point.  It hasn't been shown the transcript.

16     I'm at a loss what to say beyond that, Your Honor.

17          THE COURT:  All right.

18          MR. SIMONS:  That's just my thought at the time.

19          THE COURT:  Thank you.  Mr. Bowling, do you have

20     counsel?  Have you conferred with an attorney?

21          THE WITNESS:  No.

22          THE COURT:  All right.  Do you have the resources to

23     retain an attorney?  Do you have the money to hire an

24     attorney?

25          THE WITNESS:  No, sir.

1          THE COURT:  You don't?  What I'm going to do is I'm

2     going to ask you to -- do we have a probation officer here?

3          DEPUTY CLERK:  I believe probably down in their

4     office.

5          THE COURT:  I'm going to have you meet with a

6     probation officer who will assist you in filling out a

7     financial affidavit.  Based on that affidavit, I'll be able to

8     determine whether you're entitled to have counsel appointed.

9     We may be calling you back tomorrow to testify in the case.

10    I'm not going to excuse you at this time, but I am going to

11    allow you to meet with the probation officer to fill out the

12    financial affidavit.  At a recess, we'll be making -- I'll be

13    making a further determination as to counsel for you.

14         THE WITNESS:  Okay.

15         THE COURT:  All right?  So that's the way we'll --

16    Kim, do you have a financial affidavit?

17         DEPUTY CLERK:  Yes, I do, Your Honor.

18         THE COURT:  Mr. Smith, do you have questions for the

19    Court at this time before I allow this witness to be excused

20    for the purpose of filling out a financial affidavit?

21         MR. SMITH:  No.

22         THE COURT:  The issue that we have at this stage of

23    the proceedings, if a witness invokes his Fifth Amendment

24    right after being examined on direct, the Court may be

25    required to instruct the jury that they are to disregard

1   testimony.  Cannot be considered on direct if he's not subject

2   to cross-examination.

3          So what we'll do is I'll have the witness fill out

4   this financial affidavit with the assistance of a probation

5   officer.  That's the only purpose of having the probation

6   officer present is to fill out the financial affidavit.  And

7   then I'll make a decision as to whether to appoint counsel in

8   the case.

9          I will advise the jury when the jury comes back in

10  that I have excused the witness temporarily and that to save

11  time, we're going to proceed then with the next witness.  That

12  way, I can make a determination later as to whether to strike

13  his testimony on direct.  Okay?

14          MR. SIMONS:  Thank you.

15          THE COURT:  Does any attorney or any of the parties

16  have any objection to that procedure?

17          MR. WHITE:  No, Your Honor.

18          THE COURT:  Does the United States have any

19  objections?

20          MR. SMITH:  No.

21          THE COURT:  All right.  Mr. Bowling, this is the

22  affidavit that you'll need to fill out so I can determine

23  whether you're entitled to appointment of counsel in the case.

24  If you can take that, you'll need to go downstairs to the

25  probation office.  Eric, if you could direct him to that

13

1    office.

2              COURT SECURITY OFFICER:  I'll take him down there,

3    sir.

4              THE COURT:  If you could do that, that would be

5    appreciated.  Kim, could you call to see who is the next CJA

6    attorney on the list and have Christy call to see if he or she

7    is available to come over?

8                        (Steven Bowling left the courtroom.)

9              THE COURT:  Mr. Gilbert, I think this was your

10   witness.  I think we're still on your part of the case.  Let's

11   see.  Who will your next witness be?

12             MR. GILBERT:  John Craft, Your Honor, CPA.

13             THE COURT:  Will that be your last witness, you

14   anticipate?

15             MR. GILBERT:  Yes, Your Honor.

16             THE COURT:  Mr. Smith, are you prepared to proceed at

17   this time?

18             MR. SMITH:  Your Honor, it's my understanding this is

19   the opinion witness that has been an issue in this case before

20   our trial began, and we made a motion, I think, for a hearing,

21   a *Daubert* hearing which we withdrew after some time.  And I

22   think that the issue that we have reserved, though, is the

23   issue of relevance as to this witness's testimony.

24             Based on the summary that was provided to us

25   generally, I believe his testimony will go along the lines of

14

1    B&J Transfer has not made as much money as they have been

2    shown to in this case, that their net profit in this case was

3    significantly less than their gross income from these

4    contracts, which as the Court's well aware, our theory of the

5    case is that they were -- but for the participation in the

6    enterprise, these contracts could not have been controlled and

7    maintained by B&J, roughly stated.

8         And I believe that under the Fraud Recovery Act,

9    Congress has established that the money laundering -- I

10   believe the Supreme Court last year had a decision that there

11   was some question about whether or not the government had to

12   prove gross versus net, and I believe that the Fraud Recovery

13   Act passed shortly after that decision came down, which I

14   think clarified the issue under 18 U.S.C. 1956 and makes clear

15   that it is gross and not net that is relevant in this issue.

16        And it is our position that if he's to come into this

17   court and discuss net, that that is not relevant based on

18   Fraud Recovery Act and not relevant based on the charges that

19   these defendants are called to answer for in this case.  So we

20   at this time would take a position and object to him being

21   called on those bases.

22        THE COURT:  All right.  Now, there are two forfeiture

23   counts in this case.  We have the RICO issue, and then we have

24   the two forfeiture counts, one for the RICO charge and one for

25   the money laundering.  Is that essentially correct?

1        MR. SMITH:  That is correct, Your Honor.

2        THE COURT:  Now, as I understand, and I haven't

3   looked at recent cases on this issue, but as I understand it

4   under RICO, the amount of recovery is somewhere between net

5   profits and gross profits, according to the language that's

6   actually used.  Not the money laundering statute, but the RICO

7   statute.  Is that your understanding as well?

8        MR. SMITH:  Well, I'm not really in a position to

9   disagree with the Court on that.  But I would state if that

10  is -- let's assume that is the law and we agree on that.  It's

11  a bifurcated proceeding.  It's not one which we need to decide

12  at this stage of the proceeding.  If we're talking about

13  forfeiture, that's apples and oranges.  And I believe that as

14  to the liability, criminal liability is on money laundering at

15  this point.  The criminal liability on the RICO is on those

16  racketeering acts that we've alleged.

17        And I would argue to the Court that at this stage of

18  the proceeding, the net is not relevant to either one of these

19  issues that are framed by the RICO substantive -- or the

20  conspiracy charge nor the money laundering conspiracy charge.

21        THE COURT:  And do you have any additional

22  authorities that you'd like to provide on that?

23        MR. SMITH:  Well, I can cite to the Court and I have

24  a copy of the Fraud Recovery Act, which I believe amended the

25  statute.  I can provide that to the Court.

1          THE COURT:  That was an amendment of 1956, wasn't it?

2          MR. SMITH:  That's correct.

3          THE COURT:  The money laundering statute.

4          MR. SMITH:  That's correct.

5          THE COURT:  That was passed after the Supreme Court

6     issued its decision in the RICO case.  Was it '07 or '08?

7          MR. SMITH:  I recall it being in '08, and I recall it

8     being a gambling operation in which the Supreme Court found

9     that the government should have shown what the -- that they

10    should have proven the net as opposed to the gross, and they

11    reversed the decision, and I believe Congress passed the Fraud

12    Recovery Act in 2009, in May of 2009, which amended the

13    statute.

14         THE COURT:  All right.  Mr. Gilbert, would you like

15    to respond?

16         MR. GILBERT:  I've got the information here

17    somewhere.  It will take a minute to find it.  It has to do

18    with the Santos case that was decided by the Supreme Court and

19    is referred to, and after the passage of that -- after the

20    rendering of that decision, Congress did change the language

21    of the statute.

22         However, that would be only to matters -- and the

23    modification amendment of the statute occurred on May

24    the 20th, 2009.  So what he says may be true to cases after

25    that date, but before that date, the Santos case and decision

1    would apply.  Otherwise, it would be an *ex post facto* law.  So

2    I believe that we are entitled to make a showing of net

3    profit.  I agree that this is not the time to do that.  It

4    would be on the forfeiture provision in terms of the amount of

5    the judgment if we get to that point.

6           But he does have relevant testimony.  It is testimony

7    in the lines of Mr. Gravitt that testified on behalf of Mr.

8    Adams.  He would give testimony as to the reasonableness of

9    the compensation.  There has been proof adduced so far from

10    witnesses from the government that the amount is excessive.

11    It is not in line with other transfer stations in the area,

12    and I believe that this witness ought to be able to offer

13    proof as -- on that issue.

14           THE COURT:  All right.  Well, I'm going to need to

15    take a recess to look at this a little further.  You can --

16           MR. SMITH:  Your Honor, I do have a copy of it.  I

17    can certainly make the Court a copy of the Fraud Recovery Act

18    as amended.  And just for the record, the money laundering

19    charge came after the passage of this act, which I believe the

20    record shows, my recollection, was June of '09, when it was

21    superseded and added to the indictment.

22           THE COURT:  What about the argument that this would

23    be *ex post facto*.  In other words, the change in the statute,

24    the change in the law occurred at least near the very end of

25    the -- well, after the time that's charged in the indictment.

18

1          MR. SMITH:  Your Honor, I see that totally as a red

2    herring, because the law up until the time of the Santos

3    decision was, I think, and the law of the land in the Sixth

4    Circuit was the gross proceeds.  So to state the defense has

5    somehow been surprised by the change of law and the policy and

6    underlying rationale for that is totally nonexistent in this

7    case.

8          And the fact that Congress clarified the law in May

9    of '09, before the superseding indictment again, I think that

10   there is -- there's no merit to that argument at all if that's

11   the argument of the defense.

12         THE COURT:  All right.  Do you have authorities you'd

13   like to present?

14         MR. SMITH:  I have a copy, if I can have an

15   opportunity to make a copy for the Court, I have one copy.

16         THE COURT:  You can just give me the citation and I

17   can --

18         MR. GILBERT:  The citation for Santos, Your Honor?

19   Santos is 128 Supreme Court 2020, 2008 decision.  There's also

20   a Sixth Circuit case, United States v. Kratt.  My citation is

21   2009 U.S. Appellate Lexis 19798, 2009 WL 2767152, and that's a

22   case that was decided by the Sixth Circuit February 2nd, 2009.

23         Also, Your Honor, I have a copy of the pattern Sixth

24   Circuit jury instructions in which there is significant

25   commentary on money laundering, and it indicates -- and I'll

19

1    read it verbatim.  "In cases arising from conduct prior to

2    May the 20th, 2009, the trial court must determine whether

3    Santos applies to the specified unlawful activity at issue."

4    And then it cites the Kratt case.

5         It goes on to say this case discusses Santos in a

6    1957 money laundering case with bank fraud as a specified

7    unlawful activity.  Sixth Circuit held that Santos applies to

8    the 1957 money laundering cases and that there is a rule of

9    general applicability derived from Santos based upon the

10   "outcomes" upon which the plurality in Santos and Justice

11   Stevens -- it goes on to say that the proceeds must be

12   construed to mean profit if the money laundering statute

13   exposes the defendant to a significantly higher sentence for

14   the underlying conduct.

15        THE COURT:  What pattern instruction is that?  What's

16   the number on that pattern instruction?

17        MR. GILBERT:  11.01.

18        MR. SMITH:  What was the date on that, Mr. Gilbert?

19        MR. GILBERT:  It's current through December the 1st,

20   2009.

21        MR. SMITH:  I'll hand the Court this copy; and

22   obviously, it's got the Westlaw lengthy cite to it and

23   history.

24        THE COURT:  Thank you.  I think I've got your

25   authorities.  I'm going to tell the jury that they're going to

1   be excused for 45 minutes while I take a look at this at this

2   issue.  I don't want them to set back and wait.  So I'm going

3   to go ahead and excuse the jury -- they won't need to be

4   called in for 45 minutes, and we'll take a recess for that

5   period of time.

6                    (Recess from 1:11 p.m. until 1:56 p.m.)

7            THE COURT:  Thank you.  The record will reflect the

8   jury's not present at this time.  Parties and counsel are

9   present.  The issue raised by the parties will require further

10  research as to this issue of the profits.  The Kratt case is a

11  starting point, but it's, based upon the authorities that have

12  been provided by either side, it's not sufficient to answer

13  the question, so I'm going to need to do further research on

14  this issue.

15           Matter could have been resolved had it been taken up

16  with respect to the motion in limine, but it wasn't after the

17  government withdrew the motion.  I'll need to go back and

18  revisit the question presented.  Rather than leave the jury

19  waiting, I'm going to excuse the jury for the evening.  Bring

20  them back at 9:00.

21           At that time, hopefully would have the issue resolved

22  with respect to the witness who was testifying.  I have

23  appointed counsel for him, Mr. Hellmuth, I believe, who should

24  be here this afternoon, and I'll be meeting with Mr. Hellmuth

25  and the witness when he arrives and after he's had an

1    opportunity to meet with his client.

2             So what I plan to do at this point or this juncture

3    is excuse the jury for the evening, give a further admonition,

4    and then bring the jury back at 9:00 tomorrow morning.  Mr.

5    Smith?

6             MR. SMITH:  Your Honor, I would like to know if the

7    Court would allow me to brief the issue.  I believe that this

8    afternoon, within a couple hours, I could offer a brief to the

9    Court that would summarize succinctly, I believe, our position

10   on this.  I've already prepared the research, and I would like

11   to have that submitted to the Court, if the Court would like.

12            THE COURT:  All right.  How long would you like?

13            MR. SMITH:  I assume we're at the 2:00 hour.  Would

14   4:00 this afternoon --

15            THE COURT:  5:00 will be fine.  If anyone wants to

16   submit any additional authorities, I'm going to give the

17   parties a chance to do that.  Mr. Westberry?

18            MR. WESTBERRY:  Not on that issue, on a different.

19   Excuse me.

20            THE COURT:  Let's take this one up first.

21            MR. WESTBERRY:  Yes, sir.

22            THE COURT:  5:00 this afternoon?

23            MR. GILBERT:  Yes, Your Honor.  I've got an hour

24   travel.

25            THE COURT:  I will be here until I've resolved this

1    issue.

2            MR. GILBERT:  Yes, Your Honor.

3            THE COURT:  Whether it's 12:00 tonight or 9:00 in the

4    morning.  So I'll be here.  If you want till 6:00, that's

5    fine.

6            MR. GILBERT:  Okay.  Thank you.

7            THE COURT:  All right.  Sooner you get me the

8    materials, obviously, the better.  But if you want to take it

9    to 6:00, that will be fine.  I'll obviously be working on this

10   till late tonight.

11           MR. GILBERT:  I'll be diligent.

12           THE COURT:  Thank you.  Mr. Westberry, I'm sorry.

13           MR. WESTBERRY:  Thank you, Judge.  Regarding the

14   admonition, at lunch, personally I saw on the table at the

15   restaurant the Herald Leader.  It truly is above the fold,

16   what involved Mr. Adams.  It's probably in any news stand, the

17   Herald Leader, that you'll see in this area.

18           I would just ask the Court again to craft an

19   admonition that is as encompassing as possible in terms of

20   asking the jury to avoid seeing something like that, without,

21   of course, too much attention to a newspaper.  I don't want it

22   drawn to their attention the fact that it's in a newspaper.  I

23   refer the Court -- I haven't had this in an awful long time.

24   I'm not really good at coming up with ideas.

25           THE COURT:  I'll use my best efforts to drive the

1    point home with a velvet hammer, so to speak.

2              MR. WESTBERRY:  Sure.  Thank you.

3              THE COURT:  Mr. Hoskins?

4              MR. HOSKINS:  Thank you, Your Honor.  I would ask the

5    Court to make Steven Bowling's grand jury testimony a Court

6    exhibit at this point.  The indication that I heard at the

7    sidebar was that he had testified to the effect that his

8    father did not own B&B Excavating before the grand jury.  We

9    didn't have the benefit of seeing the grand jury testimony

10   until after that.  I see numerous places in that testimony

11   where he says his father is the owner.  I would ask the Court

12   to make that a Court exhibit.

13             THE COURT:  Well, Mr. Hoskins, at this point, the

14   witness hasn't been asked any questions about it.  I think a

15   copy's been provided to all counsel.  I don't really see the

16   need to make this a court exhibit at this point, unless you're

17   trying to make some point that I'm not aware of.  Maybe you

18   need to tell me what that is.

19             MR. HOSKINS:  I'm not trying to make a particular

20   point, Judge, other than that I think that that witness was,

21   by the way he was advised of his rights -- and I'm not saying

22   the Court did it in an improper way, but I think it had the

23   effect, I think, of intimidating that man to the point where

24   he may not testify, and we may not get the benefit of the

25   evidence that he presented on direct.

1          THE COURT:  You think the Court intimidated the

2     witness with the questions that were presented?  Is that what

3     you're saying to me?

4          MR. HOSKINS:  My point, Judge, is not that the Court

5     did anything improper.  I don't mean that at all.  I think the

6     Court did what the Court is required to do when there's a

7     request that somebody is to be advised of their rights.  But I

8     think under all the circumstances of that man's testimony,

9     that I don't think that properly should have been requested at

10    that point is what I'm saying.

11         THE COURT:  Well, if you'd like to move for a

12    document to be made a court exhibit, you can make your motion.

13    I'll sustain the motion.  You can place your copy of the

14    transcript into the record, Mr. Hoskins.  Will that satisfy

15    you?

16         MR. HOSKINS:  Yes.

17         THE COURT:  All right, good.  Good.  Anything else to

18    take up before the jury's brought in?  Bring the jury in,

19    please.

20              (The jury entered the courtroom at 2:04 p.m.)

21         THE COURT:  The record will reflect that all members

22    of the jury are present.  Ladies and gentlemen, again, I

23    appreciate your patience in dealing with me, with the Court as

24    we attempt to complete the proof in this case.  I have an

25    issue that I need to do a little more research on before we

1    proceed.  And rather than have you sit here and wait for me to

2    do that, I'm going to go ahead and excuse you for the evening.

3            I do know that several of you do have some business

4    obligations that you do need to attend to, so rather than have

5    you sit back in the jury room, I'm just going to go ahead and

6    excuse you for the evening while I do a little more research

7    on this point.  Because we're going to be breaking a little

8    bit early today, I will ask you to come back at 9:00 tomorrow.

9    We will proceed at that time.

10           I want to apologize to you for not having a full day

11   in today, but I also want to remind you of the admonition.

12   I've given the admonition to you several times.  As we break

13   early today, I do want to remind you to avoid any contact with

14   any persons associated with the case, whether that be

15   witnesses, attorneys or anyone else that might be associated

16   with the matter.

17           Don't talk about the case with anyone when you go

18   home.  You know that.  You know you're not supposed to do

19   that.  Keep in mind that if I were to bring you in and ask you

20   if you've done that, if you've violated the oath that you took

21   not to talk about the case, I would expect every one of you to

22   say, no, sir, I have not violated my oath.

23           Now, that extends to all parts of the admonition that

24   I give you not to talk about the case, not to do any type of

25   research or experiments, not to read anything about the case,

1    not to watch or listen to anything about the case.

2          I know that, you know, several of you may listen to

3    television from time to time.  And you'll listen to someone

4    that's being interviewed.  And you'll listen to one channel.

5    Switch over and you listen to another channel, and you'll get

6    two completely different reports of what the person said.  We

7    know that happens all the time.  And the point I want to make

8    to you is don't listen to anything about the case, because

9    what's important in this matter is not what someone else

10   thinks or what someone else writes, but ultimately what you

11   decide in the case.

12         And you don't make that decision until the very end

13   of the case.  So don't read, watch or listen to any accounts

14   of the case if there should be any.  If you were to pick up a

15   newspaper and see a headline about the case, put it down.

16   Don't read, watch, or listen to anything about this case in

17   any way.

18         Again, don't do any type of research or

19   investigation, don't visit any of the locations that you've

20   heard about.  I wouldn't anticipate that you'd be doing that,

21   that you'd be getting in your car and driving someplace to

22   visit one of the locations, but I do need to remind you not to

23   do that.  And, of course, don't make up your mind about the

24   case until it is finally submitted to you.

25         We are all making our best efforts to complete the

1    proof in the case this week.  We're trying to do that.  And I

2    believe that by taking this recess this afternoon, that will

3    help us to accomplish that task in completing the proof in the

4    case just as quickly as we can.  So with that admonition, the

5    jury will be excused until 9:00 tomorrow morning.

6                (The jury left the courtroom at 2:07 p.m.)

7          THE COURT:  Madam Clerk, if you would advise me when

8    Mr. Hellmuth has arrived and has a chance to speak with Mr.

9    Bowling.  I need to talk with him about appointment as counsel

10   in the case based on the information contained in the

11   financial affidavit.  Until that time, we'll be in recess.

12         MS. HUGHES:  Your Honor, I'm sorry.  I do have a room

13   full of witnesses.  I'm sorry, I should have thought of this

14   before.  Can we bring them in?

15         THE COURT:  Yes, ma'am.  Please be seated.  Miss

16   Hughes, are they in another location in the building?

17         MS. HUGHES:  Court security officer is taking care of

18   it for me.

19         MR. SIMONS:  I have some also.  I assume they're

20   coming too.

21         THE COURT:  Mr. Smith, you had provided me with a

22   copy of the statute, Fraud Recovery Act of 2009.  I think this

23   is your copy.  I'm going to provide that back to you at this

24   time.

25         MR. SMITH:  Your Honor, just for the record, I

28

1    understand the Court's timetable, but if argument on this

2    issue at any point would help the Court, we'd certainly make

3    ourselves available for oral argument.

4            THE COURT:  The parties should be available at

5    8:30 a.m. tomorrow morning for any follow-up questions or

6    arguments on this particular issue.

7            We'll recognize the first seven witnesses who may be

8    testifying in the case.  Ladies and gentlemen, you will not be

9    called to testify in the case today.  However, I anticipate

10    that you will be called tomorrow in the matter.  So what I'm

11    going to do is I'm going to have you state your name for the

12    clerk.  She will then administer an oath that would require

13    again that you return tomorrow, be present to testify.  You

14    will be required to essentially post a bond on your own

15    recognizance in the amount of $500 should you fail to appear.

16            Of course, that sum will not be due and owing should

17    you appear and testify as you're currently obligated to do.

18    So we'll go across.  I'm going to go across, my left, your

19    right to left.  If you could just state your name, please, and

20    if you need to spell your last name if you would do that as

21    well, sir.

22            MR. MORRIS:  William Bartley Morris the Second.

23            THE COURT:  Mr. Morris, you don't need to spell your

24    name.  That's fine.  Yes, ma'am?

25            MS. SMITH:  Marianna Smith.

1          THE COURT:  Miss Smith, what's your first name?

2          MS. SMITH:  Marianna, M-a-r-i-a-n-n-a.

3          THE COURT:  Thank you.  Yes, sir.

4          MR. SMITH:  Eddie Smith.

5          THE COURT:  Eddie Smith.

6          MR. GARRISON:  James Garrison.

7          THE COURT:  Mr. Garrison.  Thank you.

8          MS. SARAH BOWLING:  Sarah Bowling.

9          THE COURT:  Sarah Bowling.  Yes, ma'am.

10         MS. GEORGE:  Candace George.

11         THE COURT:  Ms. George.  Yes, sir.

12         MR. CRAFT:  John Craft.

13         THE COURT:  Craft, C-r-a-f-t?

14         MR. CRAFT:  Yes, sir.

15         THE COURT:  Thank you.  Are all witnesses appearing

16    on behalf of Debra Morris?  No?  Tell me who are you appearing

17    on behalf of.

18         MR. MORRIS:  Debra Morris.

19         MS. SMITH:  Debra Morris.

20         MR. SMITH:  Debra Morris.

21         MR. GARRISON:  Stanley Bowling.

22         MS. SARAH BOWLING:  Stanley Bowling.

23         MS. GEORGE:  Debra Morris.

24         MR. CRAFT:  Bart Morris.

25              (The oath was administered by the deputy clerk.)

1        THE COURT:  Thank you.  You'll be excused at this

2   time.  You're not going to be called in the case until

3   tomorrow at the earliest.  You'll be required to return at

4   that time.  Thank you.

5        Ladies and gentlemen, we'll follow the same procedure

6   with respect to the next five potential witnesses in the case.

7   Ma'am, if you could state your name for the clerk.

8        MS. MORRIS:  Jessica Morris.

9        MR. CHARLES:  Stephen Charles.

10       MS. CRYSTAL BOWLING:  Crystal Bowling.

11       MS. HIPSHER:  Regina Hipsher.

12       MR. DAVIDSON:  Eddie Davidson.

13       THE COURT:  Eddie Davidson.  If you could tell me who

14   has subpoenaed you to testify.

15       MS. MORRIS:  Debra Morris.

16       MR. CHARLES:  Debra Morris.

17       MS. CRYSTAL BOWLING:  Stanley Bowling.

18       MS. HIPSHER:  Debra Morris.

19       MR. DAVIDSON:  Debi Morris.

20       THE COURT:  Did each of you hear the instructions

21   given to the last witnesses?  If you could, please, I'll ask

22   the clerk to administer the oath to you.

23            (The oath was administered by the deputy clerk.)

24       THE COURT:  All right.  Thank you.  You all will be

25   excused at this time as well.

31

1          MR. CHARLES:  When are we supposed to be back?

2          MS. HUGHES:  Mr. Charles has advised me he has a

3    conflict for tomorrow.  I'm going to do the best I can to work

4    it out.  I need him solely to authenticate a document.  We

5    discussed that early on.

6          THE COURT:  You anticipate it would be Friday, at

7    this point, before he would be called?

8          MS. HUGHES:  Well, it's just so hard to know.  I

9    mean, it's possible it could be tomorrow, but I've got him

10   under court order now.  I'm going to see what I can work out

11   with him.

12         THE COURT:  Any other witnesses that need to be

13   recognized?  Thank you.  We'll be in recess at this time.

14

15         (Proceedings adjourned at 2:17 p.m.)

16               - - -

17         C E R T I F I C A T E

18         I, LISA REED WIESMAN RDR-CRR, certify that the
     foregoing is a correct transcript from the record of
19   proceedings in the above-entitled case.

20

21    \s\ Lisa Reed Wiesman                March 18, 2010
      LISA REED WIESMAN, RDR-CRR          Date of Certification
22    Official Court Reporter

23

24

25