1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    SOUTHERN DIVISION at LONDON
                              - - -

UNITED STATES OF AMERICA,       :   Docket No. CR 09-16-S
                                :
                 Plaintiff,     :   Frankfort, Kentucky
                                :   Wednesday, March 10, 2010
    versus                      :   4:30 p.m.
                                :
RUSSELL CLETUS MARICLE,         :
DOUGLAS C. ADAMS                :
CHARLES WAYNE JONES             :
WILLIAM R. STIVERS              :   EXCERPTED TRANSCRIPT
FREDDY W. THOMPSON              :
WILLIAM B. MORRIS               :
DEBRA L. MORRIS                 :
STANLEY BOWLING,                :
                                :
                 Defendants.    :


                              - - -
                      TRANSCRIPT OF HEARING
                    BEFORE DANNY C. REEVES
                UNITED STATES DISTRICT COURT JUDGE
                              - - -

APPEARANCES:

For the United States:      STEPHEN C. SMITH, ESQ.
                            JASON D. PARMAN, ESQ.
                            Assistant U.S. Attorney
                            601 Meyers Baker Road
                            Suite 200
                            London, KY 40741

For the Defendant           MARTIN S. PINALES, ESQ.
Russell Cletus Maricle:     Strauss & Troy
                            150 E. Fourth Street
                            Fourth Floor
                            Cincinnati,OH  45202

                            DAVID S. HOSKINS, ESQ.
                            107 E. First Street
                            Corbin, KY  40701
```

```
 1    For the Defendant              R. KENT WESTBERRY, ESQ.
      Douglas C. Adams:              KRISTIN N. LOGAN, ESQ.
 2                                   Landrum & Shouse, LLP
                                     220 West Main Street
 3                                   Suite 1900
                                     Louisville, KY 40202
 4

 5
      For the Defendant              T. SCOTT WHITE, ESQ.
 6    Charles Wayne Jones:           Morgan & Pottinger, P.S.C.
                                     133 West Short Street
 7                                   Lexington, KY  40507

 8
      For the Defendant              ROBERT L. ABELL, ESQ.
 9    William R. Stivers:            120 North Upper Street
                                     Lexington, KY  40507
10

11    For the Defendant              RUSSELL JAMES BALDANI, ESQ.
      Freddy W. Thompson:            R. TUCKER RICHARDSON, ESQ.
12                                   Baldani, Rowland & Richardson
                                     300 West Short Street
13                                   Lexington, KY  40507

14
      For the Defendant              JERRY W. GILBERT, ESQ.
15    William B. Morris:             Coy, Gilbert & Gilbert
                                     212 North Second Street
16                                   Richmond, KY 40475

17
      For the Defendant              ELIZABETH SNOW HUGHES, ESQ.
18    Debra L. Morris:               Gess, Mattingly & Atchison, PSC
                                     201 West Short Street
19                                   Lexington, KY 40507

20
      For the Defendant              DANIEL A. SIMONS, ESQ.
21    Stanley Bowling:               Thompson, Simons, Dunlop & Fore
                                     116 West Main Street
22                                   Suite 2A
                                     Richmond, KY 40476
23

24

25
```

```
 1   Court Reporter:              LISA REED WIESMAN, RDR-CRR
                                  Official Court Reporter
 2                                35 W. Fifth Street
                                  P.O. Box 1073
 3                                Covington, KY   41012
                                  (859) 291-4410
 4

 5        Proceedings recorded by mechanical stenography,
     transcript produced with computer.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                            * * *

2              THE COURT: Mr. Hoskins, I'd like for you to tell me
3    again the specific date, calendar date that you contacted the
4    witness and a specific calendar date that he contacted you or
5    your office or one of your colleagues.
6              MR. HOSKINS: Your Honor, I'd have to probably refer
7    to an actual calendar to do that. What I can tell the Court
8    is this. We had a name, I believe, a Jane Underwood who had
9    been suggested as a local person who had testified over many
10   years. We finally contacted Ms. Underwood and learned that
11   she was gravely ill.
12             THE COURT: She was gravely ill?
13             MR. HOSKINS: Ill, yes, suffering from cancer. I did
14   not speak with her personally. As the Court's aware, I've
15   been here every day all day when the Court's been in session,
16   and that conversation was through my secretary. I gave her
17   the name and phone number for Miss Underwood.
18             I think we -- in any event, she contacted Ms.
19   Underwood. Miss Underwood referred us to Mr. Slyter. We are
20   tied up here. My office is open from 8:00 to 4:30 every day.
21   I'm generally here during those hours, don't have time to
22   communicate with the office. It was a day or two after that
23   before I was able to confirm with my secretary to go ahead and
24   try to engage Mr. Slyter.
25             They would have had conversations Thursday. We

1    were -- Friday that we were out of court, whatever day that
2    was, the 5th, I believe --
3            THE COURT:  It's the 5th.  I'm trying to determine if
4    the contact occurred on the 4th or thereabouts.  Thursday is
5    the 4th of March.
6            MR. HOSKINS:  I'd say that's when it took place,
7    Judge.
8            THE COURT:  Would you say that's when it took place,
9    or was it a week earlier?
10           MR. HOSKINS:  It was not a week earlier.
11           THE COURT:  All right.  I believe Wanda White
12   completed her testimony about the 25th of February, which
13   would have been one week prior to the 4th, if I'm not
14   mistaken.
15           MR. HOSKINS:  I think that's correct, Judge.  As I
16   said, Mr. Slyter was not the first person we tried to contact.
17           THE COURT:  So you would have contacted his office on
18   the 4th.  When were these exemplars given?
19           MR. HOSKINS:  The next day.
20           THE COURT:  On the 5th.  That's the day we were not
21   in session.
22           MR. HOSKINS:  That's correct.
23           THE COURT:  And then at some point, your office
24   received a telephone call about the results of the
25   examination.  What day did that occur?

1        MR. HOSKINS:  I believe he called the office on
2  Saturday.
3        THE COURT:  All right.  That was Saturday.  We were
4  in session again on Monday of this week.
5        MR. HOSKINS:  That's correct.
6        THE COURT:  And when did you advise Mr. Smith that
7  you intended to call an expert witness on this issue -- that
8  you intended to call Mr. Slyter on this issue?
9        MR. HOSKINS:  I believe that was yesterday, Judge.
10       THE COURT:  That was on Tuesday.  And you had other
11  witnesses that you had the Court recognize yesterday.
12       MR. HOSKINS:  Yes.
13       THE COURT:  It was at the end of the day, we had
14  these four witnesses come in.  You said these would be your
15  first four witnesses, or at least that's the impression you
16  gave me.  I had two of those witnesses stay here.  At no point
17  did you tell me you had an expert witness that you had to call
18  that was leaving town on Thursday of this week, correct?
19       MR. HOSKINS:  That's correct, Judge.  Not until --
20       THE COURT:  Today at 3:15 is the first time you've
21  given me notice that you intended to call a witness, and
22  you're telling me that the first notice that you gave the
23  United States that it would be required under Rule 16 was
24  yesterday.  What time did you notify Mr. Smith yesterday that
25  you intended to call this witness?

1        MR. HOSKINS: I gave him -- all I had at that point
2   was a CV, Judge, that I gave Mr. Smith yesterday morning.
3        THE COURT: So yesterday morning, Mr. Smith didn't
4   know the substance of the testimony that would be offered?
5        MR. HOSKINS: He had my oral representation, which
6   was consistent with the testimony.
7        THE COURT: At what time?
8        MR. HOSKINS: Yesterday morning.
9        THE COURT: Yesterday morning.
10       MR. HOSKINS: I can't tell you exactly what time,
11  Judge, but it was yesterday morning.
12       THE COURT: All right. Anything else with respect to
13  notice or lack of notice given to the United States on this
14  issue?
15       MR. HOSKINS: Your Honor, I would say that I got that
16  report at lunch time yesterday, which was the first time that
17  I actually spoke with Mr. Slyter, and I immediately gave the
18  report to Mr. Smith at lunch time yesterday.
19       THE COURT: And this was before the time that you
20  represented to the Court that you had these four other
21  witnesses that you would be calling in the case first?
22       MR. HOSKINS: It was --
23       THE COURT: That occurred late in the afternoon
24  yesterday.
25       MR. HOSKINS: Your Honor, that was in part based on

1     the United States' representation that they would be closing
2     earlier, but I did certainly not intend to communicate to the
3     Court the precise order in which I was going to call
4     witnesses.  It became much more dire as this day drug on to
5     get Mr. Slyter on today, knowing that he was --
6             THE COURT:  What would you have done had one of the
7     attorneys for the defendants continued to examine Special
8     Agent Briggs for another hour and a half?  What would your
9     position have been, stop the defendants and put on your expert
10    witness because you hadn't notified the Court of that?
11            MR. HOSKINS:  Fortunately, Judge, we didn't get to
12    that point.  I didn't have to do anything like that.
13            THE COURT:  So you hadn't thought through that at
14    that point?
15            MR. HOSKINS:  Judge, no, I wouldn't try to stop the
16    examination of a witness.  But in the normal course of what we
17    were doing, I think reasonably, I assumed based on
18    representations by the government that we could get this
19    witness on today, didn't think it was going to be urgent until
20    it got towards the end of the day and the day drug on.
21            THE COURT:  Well, you're aware of the notice
22    requirements of Rule 16, and I assume that you would have
23    known that would have been an issue that you would have needed
24    to take up with the Court before presenting your first
25    witness.

1       MR. HOSKINS: Judge, I really didn't think that would
2  be an issue in this case, because I knew this expert had
3  testified for the government, for the United States attorney's
4  office. That had been explained to me before. I didn't think
5  it would be an issue.
6       I think that the problem that this brings to light is
7  what a criminal defendant has in a massive case when they're
8  given hundreds and hundreds of pages of discovery materials
9  within weeks before trial when there are other issues that
10 have to be addressed, such as the times we had to set aside
11 for hearings on the recordings, times we had to set aside for
12 the 404(b) background information and just a very difficult
13 amount of material to get through.
14      We didn't know until Wanda White testified that this
15 document supposedly came from Cletus Maricle or Judy Maricle.
16 The government didn't give us that information. They gave us
17 lots and lots of documents with very little explanation.
18      THE COURT: As I recall Miss White's testimony, it
19 was that the document came from Mr. Maricle. Not that he
20 prepared it, but that it came from Mr. Maricle. That's what I
21 recall the testimony being.
22      MR. HOSKINS: That's correct, Judge.
23      THE COURT: All right. Mr. Smith, I do want to hear
24 from you on this point. I'm concerned about rebuttal, how you
25 would need to rebut this testimony, and the Court certainly

1    recognizes that one of the tactics that Mr. Hoskins has used
2    in this case when he commits an error or when he does
3    something that's improper is to attempt to attack someone
4    else.  That's his M.O. in the case.
5         Putting that aside for a moment, how can the Court
6    remedy this particular situation?  I don't want to prejudice
7    the defendant by not allowing the testimony to be presented,
8    but I also wanted to give the United States sufficient time to
9    be able to respond to it.
10        MR. SMITH:  Well, Your Honor, I would suggest that,
11   obviously, I don't know this -- did he say he was going to be
12   gone three weeks?
13        THE COURT:  He's not released.  I'm not releasing
14   him.
15        MR. SMITH:  I think the issue that we have,
16   obviously, and I think the reason Rule 16, I think, applies to
17   both sides is that it can unduly prejudice one side or the
18   other.  Had the government attempted to do this, obviously, no
19   one would stand up to support my argument here that I'd given
20   sufficient notice for the defense to get a proper examiner,
21   bring them in to court to rebut this kind of testimony.
22        I am amazed to hear from this examiner that he spent
23   an hour and fifteen minutes with these two people.  I've had
24   experience with handwriting exemplars, and I find that very
25   unusual, in my experience.  Of course, I'm not speaking about

1 his qualifications, and Mr. Hoskins is going to try to make, I
2 assume, the United States attorney's office, because they've
3 used him before, we wouldn't have an issue.

4 That's not the issue. The issue is he has brought in
5 an expert witness without giving us notice and an opportunity
6 to get our own expert. And I'm not saying that that's not
7 something that -- here's the problem. The problem is that
8 without the opportunity to consult a government expert, I have
9 one arm tied behind me to try to cross-examine this
10 individual.

11 There are some things that came out here this
12 afternoon that disturb me. I'd like to talk to an expert of
13 my own choice. And I don't want to be tied by whoever Ken
14 Taylor picks or whoever the Western District of Kentucky picks
15 and say, well, because they picked him two years ago, he must
16 be an expert; and therefore, I've got to accept his testimony
17 here. I don't. I choose not to. I want to go get my own
18 expert, and I'd like to have an opportunity to do that.

19 He wants to call the witness, I ask that he be called
20 later. Cut his trip short. He's a paid expert. He's in the
21 business of testifying in front of a Court. I'm sure it's not
22 the first time he or a lawyer before a Court has had to cancel
23 a vacation. I've had to cancel many. I know that's part of
24 the business I'm in. I don't complain about it. I don't
25 think that's unfair. We'll have an opportunity to get our own

1  expert in here, and I have a fair shot at cross-examining.
2  They won't be prejudiced.  They can still get their evidence
3  in, and we'll all have a fair trial, and I'll feel like
4  that -- you know, again, it's not an issue of whether or not
5  he can testify.
6        I'm not attacking his qualifications.  I'm
7  attacking -- I'm objecting because of the lack of notice and
8  the handicap which it puts the government in that we've not
9  had an opportunity to -- I just saw his opinion yesterday,
10 late afternoon, in a written form for the first time.  So I
11 would just, you know, if the Court is looking for a solution,
12 the only solution I can offer is to delay his testimony.
13        THE COURT:  All right.  Well, this is what I'm going
14 to do in this case.  I am going to allow the witness to
15 testify tomorrow.  I am going to give the United States time,
16 if requested -- if you need additional time to locate another
17 witness and if we have to take a recess to do that, I'll give
18 you the time to do that.  I will allow your expert witness to
19 review any materials that this particular witness has looked
20 at as well as review his testimony, the testimony here and the
21 testimony that he may give tomorrow.
22        I'm not going to release him tomorrow after he
23 testifies.  I will find out tomorrow how long his trip is
24 planned and may take -- that may require that he not attend
25 his trip.  But we'll proceed with his testimony tomorrow.

1           Of course, this concerns me.  Many things that have
2   happened in this case concern me on behalf of the defendants'
3   attorneys.  Mr. Hoskins, I don't find that this was in good
4   faith in any way, your actions.  I do think that you're
5   attempting to hide the ball in this case, and I think that
6   your actions in attempting to challenge or attack someone else
7   or complain about the proceedings, when you're given discovery
8   and other things, are not well taken.
9           But in order to avoid any prejudice to the defendant,
10  I am going to allow this particular witness to testify
11  tomorrow.
12          Again, Mr. Smith, if you need additional time to
13  locate witnesses, if we have issues of handwriting exemplars
14  that need to be given, I need to know about that first thing
15  in the morning.  But he will not be released at this time, Mr.
16  Smith.  You will have access to his materials tonight, this
17  afternoon.  You'll be given access to the materials that he
18  reviewed.  You'll be given access to this Rolodex that he
19  referred to, as well as the exemplars that were given and any
20  other materials that he consulted in reaching any opinions.
21          We will be recessed until 8:45 tomorrow morning.  The
22  jury will be here at 9:00, and I'll take up any additional
23  issues at that time.
24                              * * *
25

14

1          C E R T I F I C A T E

2          I, LISA REED WIESMAN RDR-CRR, certify that the
foregoing is a correct transcript from the record of
3    proceedings in the above-entitled case.

4

5    \s\ Lisa Reed Wiesman                March 10, 2010
     LISA REED WIESMAN, RDR-CRR           Date of Certification
6    Official Court Reporter