UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 09-16-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CHARLES WAYNE JONES, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*

Defendant Charles Wayne Jones has filed a motion for judgment of acquittal on Count 4 of the Superseding Indictment. [Record No. 1045] Jones argues that the evidence presented at trial does not support conviction on Count 4 for attempted extortion. The Court previously granted a similar motion filed by Defendant William "Al Man" Stivers with respect to that count. [*See* Record No. 947] For the reasons discussed below, Jones' motion will also be granted. Furthermore, the Court will grant Jones' Motion for Leave to File Reply [Record No. 1070] and has considered Jones' reply in reaching the present decision.

**I.   BACKGROUND**

Jones and seven co-defendants were charged in a Superseding Indictment that alleged RICO and money-laundering conspiracies by all eight defendants, as well as other conspiracies and substantive offenses by individual defendants and combinations of defendants. [*See* Record No. 272] The charges related to corruption surrounding elections in Clay County, Kentucky. In addition to the RICO and money-laundering conspiracies, Jones was charged with honest-

services mail fraud, attempted extortion, and voter-fraud and vote-buying conspiracies. [*See id.*] Only the attempted-extortion count is presently at issue.

The facts giving rise to Count 4 are not in dispute. Carmen Webb Lewis testified at trial that, in September 2004, when she was running for Manchester city council, Jones (who was then the Clay County Democratic election commissioner) and Stivers (an election officer) approached her on multiple occasions and stated that she must pay $1,000 to ensure victory in the upcoming election. [Record No. 848, p. 9-13] Lewis was told that the $1,000 should be given to then-city council member Vernon Hacker. Her understanding was that Hacker would use the money to buy votes in her favor. [*Id.*, p. 74] Lewis repeatedly refused to pay and informed Jones and Stivers that she was unconcerned about losing the race if winning required payment of $1,000. [*Id.*, p. 11-13] Nevertheless, she won a city council seat in the November 2004 election. [*Id.*, p. 35]

At the conclusion of an eight-week trial, a jury found all the defendants guilty on all charges. [Record No. 818] Stivers filed a timely Rule 29 motion shortly after the verdict was returned, seeking acquittal on Counts 4, 12, and 13. [Record No. 867] Upon review of the record, the Court found insufficient evidence to support Stivers' attempted-extortion conviction and granted the motion as to that count. [Record No. 947] Thereafter, Jones sought an extension of time to file his own post-trial motion for judgment of acquittal on Count 4. [Record No. 986] The Court found that Jones' failure to timely move for acquittal was the result of excusable neglect, and he was granted leave to file the present motion. [Record No. 1044]

## II. ANALYSIS

The Court reviews a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 as "'a challenge to the sufficiency of the evidence.'" *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996)). When considering such a motion, the Court must view the evidence in the light most favorable to the prosecution, and the government is entitled to the benefit of all reasonable inferences. *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004). Moreover, "'[i]t is not necessary that the evidence exclude every reasonable hypothesis except that of guilt.'" *Id.* (quoting *United States v. Head*, 927 F.2d 1361, 1365 (6th Cir. 1991)). Rather, acquittal is required only if the Court finds "'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Davis*, 981 F.2d 906, 908 (6th Cir. 1992) (quoting *United States v. Fawaz*, 881 F.2d 259, 261 (6th Cir. 1989)).

Jones was charged with attempted extortion under the Hobbs Act, which prohibits interference with commerce by extortion. *See* 18 U.S.C. § 1951(a). The statute defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The term "fear" includes fear of economic loss. *United States v. Collins*, 78 F.3d 1021, 1030 (6th Cir. 1996).

Count 4 alleged attempted extortion (1) by wrongful use of fear of economic loss and (2) under color of official right. [*See* Record No. 272, p. 10] Jones challenges the sufficiency of the evidence with respect to both theories. [*See* Record No. 1045] In its response to Jones' motion,

however, the United States addressed only the issue of whether there was sufficient evidence to support his conviction for attempted extortion under color of official right. [*See* Record No. 1066] Thus, it appears the government has abandoned the economic-loss theory, and the Court's discussion will be limited accordingly.[1]

To convict a defendant of extortion under color of official right, the United States must establish "that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992). While the government need not prove an "explicit, direct link" between the payment and "a promise to perform a particular, identifiable act," *United States v. Abbey*, 560 F.3d 513, 518 (6th Cir. 2009), it must show that the payment was part of an agreement that the recipient would "improperly exert his official influence on the payor's behalf." *Id.* at 519. Whether the official actually intended to take the agreed-upon action is irrelevant. *Id.* at 518. Instead, "[t]he inquiry

---

1       The Court previously found insufficient evidence to support Stivers' Count 4 conviction on an economic-loss theory. In its Memorandum Opinion and Order entered June 11, 2010, the Court concluded:

> While the jury certainly could have inferred from Lewis' testimony that Stivers attempted to create or exploit a fear that she would lose the city council race (even if the evidence showed that he was unsuccessful in that attempt), the record contains no evidence supporting a reasonable inference that Stivers tried to instill or exploit a fear of *economic* loss if Lewis did not pay the $1,000 he told her was necessary in order to win. The government's argument that Lewis might have feared the loss of money she had already spent on the race is simply too attenuated, as there is no evidence that she had even made any such expenditures, that other candidates had experienced or feared similar losses, or any other evidence that Stivers intended to prey on a fear of such monies going to waste. Moreover, the record reveals no other economic loss that Lewis stood to suffer if she did not pay as directed. Thus, the Court finds that there is insufficient evidence to support Stivers' conviction of attempted extortion under the government's fear-of-economic-loss theory.

[Record No. 947] These findings are equally applicable to Jones.

is whether the official extracted money through promises to improperly employ his public influence." *Id.* at 518-19.

In other words, the essence of extortion under color of official right is that the victim feels (or, in the case of attempted extortion, is intended to feel) compelled to pay because of the extortionist's perceived ability to help or harm her by virtue of his official power. *See McCormick v. United States*, 500 U.S. 257, 283 (1991) (Stevens, J., dissenting) (agreeing with the majority that in a Hobbs Act case, the payment must "be contingent on a mutual understanding that the motivation for the payment is the payer's desire to avoid a specific threatened harm or to obtain a promised benefit that the defendant has the apparent power to deliver . . . through . . . the use of public office"); *see also United States v. Blandford*, 33 F.3d 685, 697 n.15 (6th Cir. 1994) ("'[T]he crux of the statutory requirement of "under official right" is the wrongful use of one's office to obtain payments. . . . So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951.'" (quoting *United States v. Butler*, 618 F.2d 411, 420 (6th Cir. 1980) (other internal quotation marks omitted))).

Here, however, the United States failed to establish that Jones believed Lewis would pay $1,000 because of his official status. As the Court previously found,

> while Lewis testified that at the time of her encounters with Stivers and Jones, she was aware that Stivers "handled . . . the absentee voting when you went into the machine before the election started" and Jones was "on the county Board of Elections," there is no evidence that the demand for $1,000 was related to those positions (or to Hacker's position as a city council member), nor did Lewis' testimony suggest that Stivers attempted to make her believe that he or Jones would exercise any official influence on her behalf in exchange for payment.

> Instead, Lewis agreed on direct examination, the "clear impression" she got from Stivers and Jones was that the money would be used to buy votes in her favor.
>
> Even if there had been evidence that Stivers [or Jones] improperly wielded his influence as a public official in attempting to persuade Lewis to pay, no one can seriously contend that vote-buying — a crime — would constitute an "official act" by an election officer, election commissioner, or city council member. The government does not point to evidence supporting a conclusion that the action that was supposed to have been taken in exchange for the $1,000 was anything other than vote-buying, and the Court can find none. Because the record does not support a reasonable inference that Stivers attempted to obtain money from Lewis in exchange for an official act, there is insufficient evidence to sustain his conviction of attempted extortion under a color-of-official-right theory.

[Record No. 947, p. 10-11 (footnote and citations omitted)] The Court observed in a footnote:

> This might be a closer question if, for example, Stivers [or Jones] had attempted to give Lewis the impression that in exchange for $1,000, he would change votes in her favor or refrain from changing votes in favor of her competitors — *i.e.*, that he would take some action *as an election officer* in return for the money. While such actions still would not have been official acts, they at least would have been more directly related to his position than vote-buying, which does not require access to a public office.

[*Id.*, p. 11 n.5]

The United States now contends that because election officials are responsible for enforcing election laws (including preventing vote-buying), Lewis' payment, had she made one, would have been in exchange for Jones' and Stivers' promise to look the other way when votes were purchased on her behalf. [Record No. 1066, p. 8] This argument, while plausible in the abstract, is not supported by the evidence presented at trial.

First, as previously noted, Lewis did not testify that Jones made any "promises to improperly employ his public influence," *Abbey*, 560 F.3d at 519, much less a promise not to

enforce election laws. The following exchange with the Assistant U.S. Attorney represents the sum of Lewis' testimony regarding the defendants' official status:

> Q   I want to go back to when we were talking about the thousand dollars that you were told to give in order to participate in the election.
>
> A   Uh-huh.
>
> Q   I believe you said it was Mr. Wayne Jones and Al Man Stivers that told you that you needed to do that; is that right?
>
> A   Yeah, Al Man is the one that specifically mentioned the thousand dollars, yes.
>
> Q   Do you know what position Al Man Stivers held at that time? Was he any kind of election officer?
>
> A   I just know that he handled, I guess I'll say, the absentee voting when you went in to the machine before the election started.
>
> Q   What about Wayne Jones, do you know if he held any position related to elections?
>
> A   I don't know what the actual title of it is, but he's on the county Board of Elections.

[Record No. 848, p. 33-34] As Lewis described the encounters, Jones' and Stivers' overtures were couched solely in terms of what *she* had to do to win the election (*i.e.*, pay for votes); there was no suggestion as to what they could do for her. [*See id.*, p. 9 ("[Stivers] said, 'You know you're going to have to give some money to win.'"); *id.* ("[A]nd then Wayne comes into the room, and they [were] both kind of back and forth just explaining in order to win, that's the way it happens, you have to give money, you have to buy into elections and that sort of thing."); *id.*, p. 13 ("[T]hey t[old] me again, 'You're going to have to pay to win, you won't win if you don't

pay.'"); *id.* ("Wayne would say a few things about, you know, 'You need to do this, you have to do this.'")] The government's argument thus finds no support in Lewis' testimony.

Nevertheless, the United States maintains that simply by telling Lewis she had to pay $1,000 to ensure success in the election, Jones and Stivers "implied that she would need their influence in conjunction with their official capacities in order for her to win office." [Record No. 1066, p. 8] The government's reasoning can be distilled as follows: Jones and Stivers were public officials; Jones and Stivers asked Lewis for money; therefore, Jones and Stivers attempted to get money from Lewis in exchange for official favors. But this syllogism effectively reads the intent element out of the offense. It relieves the prosecution of the burden of proving that Jones "believ[ed] that the money . . . would be given to him . . . in return for the taking, withholding[,] or other influencing of official action." [Jury Instruction No. 15A, Record No. 826, p. 48]

Perhaps recognizing the paucity of support for the Count 4 conviction in Lewis' testimony, the United States instead cites the testimony of various other witnesses to illustrate that Jones and Stivers abused their official positions by facilitating vote-buying. In particular, the government points to Roger Webb's statement that he "witnessed voters lined up like 'livestock' at the poll where Jones was working in 2006." [Record No. 1066, p. 4] According to the United States, "Webb testified how Jones failed to properly enforce the law as commissioner against vote buying at the polls in 2006. This is enough to support the conviction." [*Id.*, p. 8] This assertion is flawed, however. To begin with, the government's characterization of the evidence is inaccurate; Webb stated unequivocally that he did not observe

any vote-buying that day. [*See* Record No. 878, p. 23-24, 26] Rather, he testified that his suspicions were aroused when he saw large numbers of voters being transported ("hauled") to the polls at the Harts Branch precinct during the May 2006 primary, and that after he contacted the county clerk (Defendant Freddy Thompson, Jones' son-in-law), Jones briefly left the polling site, then returned and assured Webb, "Everything's going straight," to which Webb replied, "[O]kay. That's all I ask." [*Id.*, p. 24; *see id.*, p. 14-18, 22-24]

For better or worse, vote-hauling is legal in Kentucky. *See United States v. Turner*, No. 05-02, 2005 U.S. Dist. LEXIS 35788, at *5 (E.D. Ky. Dec. 13, 2005) ("While paying someone to vote is clearly illegal under federal law, a Kentucky statute implicitly permits the practice of 'vote hauling.'" (citing Ky. Rev. Stat. § 119.205(5) (requiring that candidates or their representatives who pay others for transporting voters to the polls on election day pay by check))). Although the jury could have concluded, based on the testimony of Webb and other witnesses, that the voters being hauled were paid and that Jones represented the proverbial fox guarding the henhouse, Webb did not "testif[y] how Jones failed to properly enforce the law," as the United States declares.

Moreover, even if the jury inferred from Webb's testimony that Jones allowed vote-buying to occur, it does not follow that he intended Lewis to believe that her $1,000 would buy protection from enforcement of voting laws. The events described by Webb occurred a year and a half after Lewis' encounters with the defendants. Nothing in the cited testimony — of Webb or any other witness — establishes the *quid pro quo* that the government was required to prove. *See Abbey*, 560 F.3d at 517. In short, while the record contains ample evidence of Jones "not

acting as an election official should" [Record No. 1066, p. 7], it does not support a reasonable inference that his attempts to obtain money from Lewis were based on an agreement, express or implied, that he would exercise his official power in Lewis' favor. *See id.* at 517-19. The evidence, therefore, is insufficient to sustain Jones' conviction for attempted extortion.

### III. CONCLUSION

The evidence presented at trial does not support Jones' Count 4 conviction under either theory pursued by the United States. Accordingly, it is hereby

**ORDERED** as follows:

(1) Defendant Jones' Motion for Judgment of Acquittal as to Count 4 [Record No. 1045] is **GRANTED**.

(2) Defendant Jones' Motion for Leave to File Reply [Record No. 1070] is **GRANTED**.

This 1st day of December, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge