```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF KENTUCKY
 2                 SOUTHERN DIVISION at LONDON
                            - - -
 3
    UNITED STATES OF AMERICA,      :  Docket No. CR 09-16-S
 4                                 :
                   Plaintiff,      :  Frankfort, Kentucky
 5                                 :  Wednesday, March 24, 2010
         versus                    :  8:20 a.m.
 6                                 :
    RUSSELL CLETUS MARICLE,        :
 7  DOUGLAS C. ADAMS               :
    CHARLES WAYNE JONES            :
 8  WILLIAM R. STIVERS             :
    FREDDY W. THOMPSON             :       Trial Day 31A
 9  WILLIAM B. MORRIS              :
    DEBRA L. MORRIS                :
10  STANLEY BOWLING,               :
                                   :
11                 Defendants.     :


12


13                          - - -
                      TRANSCRIPT OF TRIAL
14                 BEFORE DANNY C. REEVES
          UNITED STATES DISTRICT COURT JUDGE and a jury
15                          - - -

16  APPEARANCES:

17  For the United States:      STEPHEN C. SMITH, ESQ.
                                JASON D. PARMAN, ESQ.
18                              Assistant U.S. Attorney
                                601 Meyers Baker Road
19                              Suite 200
                                London, KY 40741
20
    For the Defendant           MARTIN S. PINALES, ESQ.
21  Russell Cletus Maricle:     CANDACE C. CROUSE, ESQ.
                                Strauss & Troy
22                              150 E. Fourth Street
                                Fourth Floor
23                              Cincinnati,OH  45202

24                              DAVID S. HOSKINS, ESQ.
                                107 E. First Street
25                              Corbin, KY  40701
```

2

```
1    For the Defendant          R. KENT WESTBERRY, ESQ.
     Douglas C. Adams:          KRISTIN N. LOGAN, ESQ.
2                               Landrum & Shouse, LLP
                                220 West Main Street
3                               Suite 1900
                                Louisville, KY 40202
4
     For the Defendant          T. SCOTT WHITE, ESQ.
5    Charles Wayne Jones:       Morgan & Pottinger, P.S.C.
                                133 West Short Street
6                               Lexington, KY  40507

7    For the Defendant          ROBERT L. ABELL, ESQ.
     William R. Stivers:        120 North Upper Street
8                               Lexington, KY  40507

9    For the Defendant          RUSSELL JAMES BALDANI, ESQ.
     Freddy W. Thompson:        R. TUCKER RICHARDSON, ESQ.
10                              Baldani, Rowland & Richardson
                                300 West Short Street
11                              Lexington, KY  40507

12   For the Defendant          JERRY W. GILBERT, ESQ.
     William B. Morris:         Coy, Gilbert & Gilbert
13                              212 North Second Street
                                Richmond, KY 40475
14
     For the Defendant          ELIZABETH SNOW HUGHES, ESQ.
15   Debra L. Morris:           Gess, Mattingly & Atchison, PSC
                                201 West Short Street
16                              Lexington, KY 40507

17   For the Defendant          DANIEL A. SIMONS, ESQ.
     Stanley Bowling:           Thompson, Simons, Dunlop & Fore
18                              116 West Main Street
                                Suite 2A
19                              Richmond, KY 40476

20   Court Reporter:            LISA REED WIESMAN, RDR-CRR
                                Official Court Reporter
21                              35 W. Fifth Street
                                P.O. Box 1073
22                              Covington, KY  41012
                                (859) 291-4410
23

24        Proceedings recorded by mechanical stenography,
     transcript produced with computer.
25
```

1    (Proceedings commenced at 8:21 a.m.)

2         THE COURT:  Before the jury's brought in this

3    morning, I have two or maybe three issues to take up.  I

4    reviewed the brief filed for Mr. Thompson that concerns

5    references to Frank Roberts' testimony.  Mr. Smith, have you

6    reviewed that brief?

7         MR. SMITH:  Yes, Your Honor.

8         THE COURT:  It's the Court's intention to first

9    advise the jury that they're to recall the testimony, but I am

10   going to summarize portions of Mr. Roberts' testimony.  I will

11   tell you the portions I plan to summarize for the jury.

12        Beginning at page 32, lines 2 through 14, lines 21

13   through 25.  Page 33, lines 1 through 16.  Page 34, lines 4

14   through 14.  I'm sorry, 4 through 13 and lines 22 through 25.

15   Page 35, lines 1 through 3, lines 24 and 25.  Page 36, lines 1

16   through 8.  Page 46, lines 9 through 18.  Page 47, lines 8

17   through 10, 20 through 22.  And page 49, lines 8 through 13.

18   And finally, page 50, lines 14 through 16.

19        Next, I will refer the parties to Rule 32.2, which

20   was amended in 2009 to specifically provide that the Court

21   should instruct the jury that there may be additional

22   forfeiture proceedings based upon their verdict.  That would

23   be subsection (5)(A) in the committee notes to the 2009

24   amendment specifically indicate that that should be done

25   before the jury begins their deliberations.  So I will be

4

1    advising the jury of that fact as well.  And I'm assuming that

2    at least one of the parties would request that this jury be

3    retained to address any forfeiture issues if there is a guilty

4    verdict returned on either Counts 1 or 2.  Is that assumption

5    correct?  Mr. Smith?

6              MR. SMITH:  Yes, Your Honor.

7              THE COURT:  All right.  It only requires one party

8    make the request.

9              I'll give the parties a moment to review the sections

10   of the testimony that I would plan to summarize for the jury,

11   see if there are any questions about that.

12             MR. WESTBERRY:  When you're ready, Judge.

13             THE COURT:  Yes, sir.  Mr. Pinales, I'll go with you

14   first.

15             MR. PINALES:  Thank you, Your Honor.  There would be

16   an objection to the highlighting of any testimony.  I believe

17   the judge's general charge that it is the jury's

18   responsibility to believe and recall the testimony as they do

19   recall it, and that what lawyers have said, both the

20   prosecutor and the defense counsel, is not evidence and it is

21   their job to recall the evidence.

22             THE COURT:  All right.  Mr. Westberry?

23             MR. WESTBERRY:  Thank you, Judge.  I would

24   essentially join in the same motion as Mr. Pinales.  I didn't

25   know this was coming.  I do have Roberts' transcript in my

1    car.  I just didn't bring my box of daily copy.  If I could
2    have some time to go out and retrieve that, it will only take
3    a couple minutes.
4         THE COURT:  I can review the sections I just
5    referenced in case you don't have that with you.  Let me do
6    that at this time.
7         MR. WESTBERRY:  I simply can't, as you might expect,
8    can't remember everything.  I've read that several times.
9    It's been a few days.
10         THE COURT:  Yes, sir.
11         MR. WESTBERRY:  Thank you.
12         THE COURT:  The first page, this is on direct
13    examination --
14         Question:  How long have you been participating in
15    the scheme over there to buy votes, Mr. Roberts?  The answer
16    is:  '02 and '04 elections.
17         Beginning at line 21:  And do you recall what you did
18    to assist in that scheme to buy votes in 2002, Mr. Roberts?
19    And his answer was:  I bought 'em.
20         Question:  All right.  How did you get, how did you
21    get involved in doing that, Mr. Roberts?  Answer:  They just
22    brought me some money to the house, and I bought the votes
23    myself.
24         Question:  Okay.  So when you say that they brought
25    the money to the house, is that your house in Horse Creek?

1    Answer:  Yes, sir.

2           Question:  And do you know when it was?  Was it days

3    before the election or a night before, or do you recall when

4    it was that they came?  Answer:  Probably a couple of days

5    before.

6           Question:  Couple of days before?  Answer:  Yeah.

7           Question:  And who came to make that visit?

8    Answer:  Doug Adams, Yancey White and Al Man Stivers.

9           Question:  When they came, was there anybody else at

10   home other than yourself?  Answer:  Just my wife.

11          Next page, line 4:  What was discussed when they

12   came?  Answer:  Just to buy votes.

13          Question:  And did you understand who was going to be

14   the beneficiary or who was going to get the benefit of those

15   bought votes?  Did they tell you they wanted you to vote for?

16   Answer:  Yes, sir.

17          And who did they say they wanted you to buy these

18   votes for?  Answer:  Freddy Thompson and Roy Morgan.

19          And then at line 22:  Now, how much did they bring

20   you that night, Mr. Roberts?  Answer:  $4,000.

21          Question:  And do you remember how they presented it

22   to you?  Was it in something, or do you remember how it was

23   given to you?  Answer:  No, they counted it out on the coffee

24   table.  I just picked it up.

25          Then at line 24, continuing, Question:  How many

1    people did you recall on election day there in 2002 that you

2    bought the votes, Mr. Roberts?  Answer:  Probably about 75.

3              Question:  Did you use all the $4,000 that Doug Adams

4    and those other fellas brought you?  Answer:  Yeah.

5              Question:  Did you run out of money at any point?

6    Answer:  Yeah.

7              Question:  And what happened when you ran out of

8    money?  Answer:  That was it.

9              Going over to the cross-examination of Mr. Bayer, I

10   think you indicated that -- this is at page 46, line 9 through

11   18:  I think you indicated that in 2002, those three gentlemen

12   came over to your house the night before the election?

13   Answer:  Yes.

14              Was it the general election or the primary, sir?

15   Answer:  Primary.

16              Question:  And they asked you to help them in the

17   race for Freddy Thompson?  Answer:  Yes, sir.

18              Page 47, beginning at line 8 through 10.  And you

19   were there helping to get Freddy Thompson elected?  Answer:

20   Yes, sir.

21              And then Mr. Abell's questions at same page, page 47,

22   lines 20 through 22:  To your understanding, in 2002, was Mr.

23   Stivers a supporter of Freddy Thompson?  Answer:  Yes, sir.

24              And then Mr. Baldani's cross-examination, lines 8

25   through 13.  Question:  All right.  Now, in 2002, Freddy

8

1    Thompson wasn't among the people that came to you with money

2    the night before, was he?  Answer:  No, sir.

3            Question:  You don't even know whether he knew they

4    were coming, do you?  Answer:  No, sir.

5            And then at page 50, lines 14 through 16:  And Yancey

6    White is one of the ones that came to you in 2002; is that

7    right?  Answer:  Yes.

8            That's the portions that would summarize the section

9    that's in dispute.

10            Mr. Baldani, did you have another issue?  You stood

11    up earlier.

12            MR. BALDANI:  I think I stood up because I didn't

13    hear you say what the portion of page 32 that you were going

14    to read, Your Honor.

15            THE COURT:  Yes, sir.

16            MR. BALDANI:  I appreciate the Court's willingness to

17    give an admonition, but it would be my request that, I mean,

18    there's just a discrete portion that is misstated in the

19    evidence, Your Honor, and that is Frank Roberts testified that

20    Freddy Thompson brought him money, and I would ask that you

21    simply refer them to the portions which refute that and not

22    the rest of his testimony.

23            THE COURT:  So you wouldn't want me to refer to the

24    portion of the direct examination where he indicated that they

25    were there on behalf of Freddy Thompson and Roy Morgan?

9

1          MR. BALDANI:  That's right, Your Honor.  Because, I

2     mean, there was a discrete misstatement.  Did Freddy Thompson

3     bring you -- give you money.  And so no, I wouldn't.  And I do

4     think it's -- I mean, it's not my battle, but I think it's

5     probably unfair to some of the others at the table that things

6     that hurt them are highlighted just to correct a discrete

7     misstatement.

8          So I don't think that all that other testimony is

9     needed at all in order to correct -- I mean, it's just plain.

10    He told -- the prosecutor stated two times, Frank Roberts

11    testified Freddy Thompson gave money.  The fact is he didn't

12    testify Freddy Thompson was amongst the group.  He was

13    specifically asked.  He said no, he didn't.  So that's the

14    only two things that need to be corrected.  And the rest of

15    the evidence doesn't need to be highlighted, from our

16    position.

17          THE COURT:  All right.  Mr. Westberry?

18          MR. WESTBERRY:  Thank you, Judge.  Very briefly.

19    When the Court reads the portions of one witness's

20    transcripts, it seems to us on behalf of Doug Adams that he

21    gives undue emphasis to that particular line of questioning

22    and testimony at the expense of all the others that we've

23    heard in the weeks that we've been in trial.

24          Also, as I was thinking about this, hearing this just

25    a few minutes ago for the first time, the comments made by Mr.

1    Smith in rebuttal, it seems to me, would adequately cover any

2    point he was going to make with regard to Mr. Roberts and the

3    trip the three made to the house based on Mr. Roberts'

4    testimony.

5            Again, I just want the record to be clear, I think

6    this gives far too much emphasis on that particular testimony

7    at the expense of others.  We did not make this motion, as the

8    Court is aware, and seems to me that we sort of are the

9    recipients of this.  So Judge, without anything else, that's

10   all I have to say.  Thank you.

11           THE COURT:  All right.  Mr. Abell?

12           MR. ABELL:  Judge, I join in Mr. Westberry's

13   observations and the objection on behalf of Mr. Stivers for

14   the reasons he stated.

15           THE COURT:  All right.  Thank you.  What is the

16   position of the United States?

17           MR. SMITH:  Well, Your Honor, I know this Court

18   appreciates the length and the breadth of this case.  I

19   certainly, you know, I recognize, for instance, Mr.

20   Westberry's opening, you know, he had a display of the people

21   who were supposedly at the table, and prominently missing from

22   that was Charles Wayne Jones.  You go back and read the

23   testimony of Randy Craft, and he clearly puts him there.

24   Others puts him there.  And yet, he wasn't on that chart.

25           And Mr. Richardson, you know, he makes remarks in his

1    argument yesterday that there was a conversation that occurred

2    between Wanda White and Charles Weaver before he testified in

3    front of the grand jury.

4         You know, this is argument.  I believe that it's

5    argument which the jury has been advised by this Court --

6    clearly, when an objection was made yesterday, the Court, I

7    think, admonished the jury sufficiently that they're to be the

8    fact finder.

9         The closing statement is not fact.  It is argument.

10   I believe that the United States' position would be that a

11   general admonition is sufficient, but if the Court finds that

12   it's not, I certainly understand that, and I welcome the Court

13   to read this transcript back to them, but I would ask the

14   Court to do it in context, because reasonable inferences are

15   not impermissible, and to take this out of context and read

16   just one line, which counsel now seems to be arguing he just

17   wants one line read, is taking it out of context.

18        And so I think we have to either put it in context or

19   go with the general admonition.

20        THE COURT:  All right.  Well, on balance, considering

21   the objections that have been raised by other counsel in the

22   case, what I will do is I will again remind the jury that

23   during the course of arguments by the attorneys, that certain

24   objections were made to characterization of the evidence.

25   They are reminded that they will decide factual issues and

12

1    that arguments of counsel are just that, arguments of counsel

2    and that if there's a difference between what was argued and

3    what their recollection of the evidence is, they're to go with

4    their recollection of the evidence, obviously.

5         I think that will sufficiently advise the jury of

6    their duty or correct any issues that may exist without giving

7    undue emphasis to particular testimony that was given in the

8    case.  So that would be the Court's ruling on that.

9         MR. BALDANI:  Could I say one more thing, Judge?

10        THE COURT:  Of course.

11        MR. BALDANI:  Last word, I'm sorry.  The point I want

12   to make, Your Honor, is when we objected, we didn't state the

13   nature of our objection.  So it was correct that at times

14   during objections, you did say the jury will remember the

15   testimony.  So, of course, I've asked for an admonition.  I

16   understand your ruling, but the only thing that I would ask

17   that you add in there is a specific reference, at least, to

18   the Frank Roberts --

19        THE COURT:  If I do that, I will put it in context

20   and advise that the individuals were there on behalf of Mr.

21   Thompson, according to the testimony of this witness.

22        MR. WESTBERRY:  If I may, I would prefer nothing.

23        THE COURT:  I understand that.

24        MR. WESTBERRY:  With due respect to my friend and

25   colleague.

1          THE COURT:  I know.  He likes to get the last word.

2     We've talked about that.  I've already issued my ruling.  I've

3     given you the reasons for it.  Thank you, Mr. Baldani.

4          MR. BALDANI:  Thank you, Your Honor.

5          THE COURT:  All right.  We're going to bring the jury

6     in here in just a moment to begin the jury instruction.  I

7     will first advise the jury of the issue of forfeiture that may

8     be presented after they've reached their determination.

9          Any other matters to take up?

10          MR. WHITE:  Good morning, Your Honor.  Just very

11     briefly, will you be telling us what you want us to do during

12     the deliberations when they go back out?

13          THE COURT:  Yes, sir.

14          MR. WHITE:  Okay.

15          THE COURT:  Please bring in the jury.

16          (The jury entered the courtroom at 8:39 a.m.)

17          THE COURT:  The record will reflect that all members

18     of the jury are present.  Parties and counsel are also

19     present.  Ladies and gentlemen, just two issues I want to take

20     up with you before I begin giving you the instructions in the

21     case.

22          First, I want to remind you that during the course of

23     closing arrangements, objections were made to certain

24     statements of counsel.  I want to remind you that in terms of

25     summarizing evidence, it is your determination and your memory

1    as to the evidence presented in the case.  And if that memory

2    should differ, obviously, from what an attorney might have

3    argued, it's your memory that counts.  Arguments of counsel

4    are just that.  They're arguments of counsel.  So you're

5    instructed as to that point.

6          Next, based upon your determination in the case,

7    there may be an additional brief proceeding to follow your

8    deliberations, and I want to advise you of that so there's no

9    surprise if that should occur.

10         Now, with respect to the instructions, it will take

11   me some time to get through these instructions this morning,

12   ladies and gentlemen.  I do appreciate you bearing with me on

13   this.  What I'll do is I will provide you the instructions,

14   and I'll go through these before we take our morning recess.

15         Members of the jury, now it is time for me to

16   instruct you about the law that you must follow in deciding

17   this case.  I will start by explaining your duties and the

18   general rules that apply in every criminal case.  Then I will

19   explain the elements, or parts, of the crimes that the

20   defendants are accused of committing.  Next, I will explain

21   the defendants' position.  After that, I will explain some

22   rules that you must use in evaluating particular testimony and

23   evidence.  Finally, I will explain the rules that you must

24   follow during your deliberations in the jury room, and the

25   possible verdicts that you may return.

1          Please listen carefully to all of these instructions.

2          You have two main duties as jurors.  The first one is

3      to decide what the facts are from the evidence that you saw

4      and heard here in court.  Deciding what the facts are is your

5      job, not mine, and nothing that I have said or done during

6      this trial was meant to influence your decision about the

7      facts in any way.

8          Your second duty is to take the law that I give you,

9      apply it to the facts, and decide if the United States has

10     proved the defendants guilty beyond a reasonable doubt.  It is

11     my job to instruct you about the law, and you are bound by the

12     oath that you took at the beginning of the trial to follow the

13     instructions that I give you, even if you personally disagree

14     with them.  This includes the instructions that I gave you

15     before and during the trial, and these instructions.  All the

16     instructions are important, and you should consider them

17     together as a whole.

18         The lawyers have talked about the law during their

19     arguments, but if what they say is different from what I say,

20     you must follow what I say.  What I say about the law

21     controls.

22         Perform these duties fairly.  Do not let any bias,

23     sympathy or prejudice that you may feel toward one side or the

24     other influence your decision in any way.

25         As you know, the defendants have pleaded not guilty

1   to the crimes charged in the indictment.  The indictment is

2   not any evidence at all of guilt.  It is just the formal way

3   that the United States tells the defendants what crimes they

4   are accused of committing.  It does not even raise any

5   suspicion of guilt.

6        Instead, the defendants start the trial with a clean

7   slate, with no evidence at all against them, and the law

8   presumes that they are innocent.  This presumption of

9   innocence stays with them unless the United States presents

10  evidence here in court that overcomes the presumption and

11  convinces you beyond a reasonable doubt that they are guilty.

12       This means that the defendants have no obligation to

13  present any evidence at all, or to prove to you in any way

14  that they are innocent.  It is up to the United States to

15  prove that they are guilty, and this burden stays on the

16  United States from start to finish.  You must find the

17  defendants not guilty unless the United States convinces you

18  beyond a reasonable doubt that they are guilty.

19       The United States must prove every element of the

20  crimes charged beyond a reasonable doubt.  Proof beyond a

21  reasonable doubt does not mean proof beyond all possible

22  doubt.  Possible doubts or doubts based purely on speculation

23  are not reasonable doubts.  A reasonable doubt is a doubt

24  based on reason and common sense.  It may arise from the

25  evidence, the lack of evidence, or the nature of the evidence.

17

1          Proof beyond a reasonable doubt means proof which is

2     so convincing that you would not hesitate to rely and act on

3     it in making the most important decisions in your own lives.

4     If you are convinced that the United States has proved the

5     defendants guilty beyond a reasonable doubt, say so by

6     returning a guilty verdict.  If you are not convinced, say so

7     by returning a not guilty verdict.

8          You must make your decision based only on the

9     evidence that you saw and heard here in court.  Do not let

10    rumor, suspicions or anything else that you may have seen or

11    heard outside of court influence your decision in any way.

12         The evidence in this case includes only what the

13    witnesses said while they were testifying under oath, the

14    exhibits that I allowed into evidence, and the facts that I

15    have judicially noticed.

16         Nothing else is evidence.  The lawyers' statements

17    and arguments are not evidence.  Their questions and

18    objections are not evidence.  My legal rulings are not

19    evidence and my comments and questions are not evidence.

20         During the trial, I did not let you hear the answers

21    to some of the questions that the lawyers asked.  I also ruled

22    that you could not see some of the exhibits that the lawyers

23    wanted you to see.  And sometimes, I ordered you to disregard

24    things that you saw or heard, or I struck things from the

25    record.  You must completely ignore all of these things.  Do

1    not even think about them.  Do not speculate about what a

2    witness might have said or what an exhibit might have shown.

3    These things are not evidence, and you are bound by your oath

4    not to let them influence your decision in any way.

5           Make your decision based only on the evidence, as I

6    have defined it here, and nothing else.

7           You should use your common sense in weighing the

8    evidence.  Consider it in light of your everyday experience

9    with people and events, and give it whatever weight you

10   believe it deserves.  If your experience tells you that

11   certain evidence reasonably leads to a conclusion, you are

12   free to reach that conclusion.

13          Now, some of you may have heard the terms direct

14   evidence and circumstantial evidence.

15          Direct evidence is simply evidence, like the

16   testimony of an eyewitness, which, if you believe it, directly

17   proves a fact.  If a witness testified that he saw it raining

18   outside, and you believed him, that would be direct evidence

19   that it was raining.

20          Circumstantial evidence is simply a chain of

21   circumstances that indirectly proves a fact.  If someone

22   walked into the courtroom wearing a raincoat covered with

23   drops of water and carrying a wet umbrella, that would be

24   circumstantial evidence from which you could conclude that it

25   was raining.

1          It is your job to decide how much weight to give the

2   direct and circumstantial evidence.  The law makes no

3   distinction between the weight that you should give to either

4   one, or say that one is any better evidence than the other.

5   You should consider all the evidence, both direct and

6   circumstantial, and give it whatever weight you believe it

7   deserves.

8          Another part of your job as jurors is to decide how

9   credible or believable each witness was.  This is your job,

10  not mine.  It is up to you to decide if a witness's testimony

11  was believable, and how much weight you think it deserves.

12  You are free to believe everything that a witness said, or

13  only part of it, or none of it at all.  But you should act

14  reasonably and carefully in making these decisions.

15         Let me suggest some things for you to consider in

16  evaluating each witness's testimony.  Ask yourself if the

17  witness was able to clearly see or hear the events.  Sometimes

18  even an honest witness may not have been able to see or hear

19  what was happening, and may make a mistake.

20         Ask yourself how good the witness's memory seemed to

21  be.  Did the witness seem able to accurately remember what

22  happened?

23         Ask yourself if there was anything else that may have

24  interfered with the witness's ability to perceive or remember

25  the events.

1          Ask yourself how the witness acted while testifying.

2     Did the witness appear honest, or did the witness appear to be

3     lying?

4          Ask yourself if the witness had any relationship to

5     the United States or the defendant, or anything to gain or

6     lose from the case, that might influence the witness's

7     testimony.  Ask yourself if the witness had any bias or

8     prejudice or reason for testifying that might cause the

9     witness to lie or to slant the testimony in favor of one side

10    or the other.

11         Ask yourself if the witness testified inconsistently

12    while on the witness stand, or if the witness said or did

13    something, or failed to say or do something, at any other time

14    that is inconsistent with what the witness said while

15    testifying.  If you believe that the witness was inconsistent,

16    ask yourself if this makes the witness's testimony less

17    believable.  Sometimes it may, other times it may not.

18    Consider whether the inconsistency was about something

19    important, or about some unimportant detail.  Ask yourself if

20    it seemed like an innocent mistake, or if it seemed

21    deliberate.

22         Ask yourself how believable the witness's testimony

23    was in light of all the other evidence.  Was the witness's

24    testimony supported or contradicted by other evidence that you

25    found believable?  If you believe that a witness's testimony

21

was contradicted by other evidence, remember that people sometimes forget things, and that even two honest people who witness the same event may not describe it exactly the same way.

These are only some of the things that you may consider in deciding how believable each witness was.  You may also consider other things that you think shed some light on the witness's believability.  Use your common sense and your everyday experience in dealing with other people and then decide what testimony you believe and how much weight you think it deserves.

One more point about witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

There is one more general subject that I want to talk to you about before I begin explaining the elements of the crimes charged.  The lawyers for both sides objected to some of the things that were said or done during the trial.  Do not hold that against either side.  The lawyers have a duty to object whenever they think that something is not permitted by

22

1    the Rules of Evidence.  Those rules are designed to make sure

2    that both sides receive a fair trial.

3            And do not interpret my rulings on their objections

4    as any indication of how I think the case should be decided.

5    My rulings are based on the Rules of Evidence, not on how I

6    feel about the case.  Remember that your decision must be

7    based only on the evidence that you saw and heard here in

8    court.

9            That concludes the part of my instructions explaining

10   your duties and the general rules that apply in every criminal

11   case.  In a moment, I will explain the elements of the crimes

12   that the defendants are accused of committing.

13           But before I do that, I want to emphasize that the

14   defendants are only on trial for the particular crimes charged

15   in the indictment.  Your job is limited to deciding whether

16   the United States has proved the crimes charged.

17           Each defendant has been charged with several crimes.

18   I will explain to you in more detail shortly which defendants

19   have been charged with which crimes.  But before I do that, I

20   want to emphasize several things.

21           The number of charges is no evidence of guilt, and

22   this should not influence your decision in any way.  And in

23   our system of justice, guilt or innocence is personal and

24   individual.  It is your duty to separately consider the

25   evidence against each defendant on each charge, and to return

1  a separate verdict for each one of them.  For each one, you

2  must decide whether the United States has presented proof

3  beyond a reasonable doubt that a particular defendant is

4  guilty of a particular charge.

5  　　　Your decision on any one defendant or charge, whether

6  it is guilty or not guilty, should not influence your decision

7  on any of the other defendants or charges.

8  　　　I'm going to instruct you now on Count 1, which

9  relates to all defendants.  Count 1 of the indictment charges

10  that from on or about March 2002, exact date unknown, to on or

11  about July 17, 2007, all the defendants knowingly conspired

12  together and with others known and unknown and agreed to

13  conduct and participated, directly or indirectly, in the

14  conduct of the affairs of an enterprise through a pattern of

15  racketeering activity.  In order to convict a defendant on the

16  RICO conspiracy offense charged in Count 1, the United States

17  must prove all of the following five elements beyond a

18  reasonable doubt.

19  　　　First, that an enterprise existed as alleged in the

20  indictment.

21  　　　Second, that the enterprise was engaged in, or had

22  some effect on, interstate commerce.

23  　　　Third, that the defendant was associated with or

24  employed by the enterprise.

25  　　　Fourth, that on or about a day in March 2002, the

1   exact date unknown, to on or about July 17, 2007, two or more

2   persons reached an agreement or came to an understanding to

3   conduct or participate in the affairs of an enterprise,

4   directly or indirectly, through a pattern of racketeering

5   activity.

6          Fifth, that the defendant voluntarily and

7   intentionally joined in the agreement or understanding, either

8   at the time it was first reached or at some later time while

9   it was still in existence, and at the time the defendant

10  joined in the agreement or understanding, he or she

11  specifically intended to otherwise participate in the affairs

12  of the enterprise.

13         An enterprise includes any individual, partnership,

14  corporation, association, or other legal entity, in any union

15  or group of individuals associated in fact, although not a

16  legal entity.

17         The term enterprise, as used in these instructions,

18  may include a group of people associated in fact, even though

19  this association is not recognized as a legal entity.  A group

20  or association of people can be an enterprise if these

21  individuals have joined together for the purpose of engaging

22  in a common course of conduct.  This group of people, in

23  addition to having a common purpose, must have personnel who

24  function as a continuing unit.  This group of people does not

25  have to be a legally recognized entity, such as a partnership

1    or corporation.  Such an association of individuals may retain

2    its status as an enterprise even though the membership of the

3    association changes by adding or losing individuals during the

4    course of its existence.

5         If you find that this was, in fact, a legal entity

6    such as a partnership, corporation or association, then you

7    may find that an enterprise existed.

8         The United States must also prove that the

9    association had a structure distinct from that necessary to

10   conduct the pattern of racketeering activity.

11        Interstate commerce includes the movement of money,

12   goods, services or persons from one state to another.  This

13   would include the purchase or sale of goods or supplies from

14   outside the state in which the enterprise was located, the use

15   of interstate mail or wire facilities, or the causing of any

16   of those things.  If you find beyond a reasonable doubt that

17   the actions of the enterprise affected in any degree the

18   movement of money, goods or services across state lines, then

19   interstate commerce was engaged in or affected.

20        The United States need only prove that the enterprise

21   as a whole engaged in interstate commerce or that its activity

22   affected interstate commerce to any degree, although proof

23   that racketeering acts did affect interstate commerce meets

24   that requirement.  The United States need not prove that a

25   defendant engaged in interstate commerce, or that the acts of

1    a defendant affected interstate commerce.

2        In this case, the United States alleges that the

3    enterprise engaged in, or affected, interstate commerce by

4    affecting the outcome of federal and state elections, as well

5    as the awarding of contracts by county and city governments

6    for sanitation services and construction of water sewer

7    projects, which included federal grant monies.

8        To be associated with an enterprise, a person must be

9    involved with the enterprise in a way that is related to its

10   affairs, although the person need not have a stake in the

11   goals of the enterprise and may even act in a way that

12   subverts those goals.  A person may be associated with an

13   enterprise without being so throughout its existence.

14       The United States must prove beyond a reasonable

15   doubt that a defendant knowingly reached an agreement or

16   understanding with at least one other person to participate,

17   directly or indirectly, in the affairs of the enterprise

18   through a pattern of racketeering activity.  However, you do

19   not have to find that any racketeering acts were actually

20   committed.

21       The agreement or understanding need not be an express

22   or formal agreement or be in writing or cover all the details

23   of how it is to be carried out.  Nor is it necessary that the

24   members have directly stated between themselves the details or

25   purpose of the scheme.

1          You should understand that merely being present at

2     the scene of an event, or merely acting in the same way as

3     others or merely associating with others, does not prove that

4     a person has joined in an agreement or understanding.  A

5     person who has no knowledge of a conspiracy but who happens to

6     act in a way that advances some purposes of one does not

7     thereby become a member of the conspiracy.

8          But a person may join in an agreement or

9     understanding, as required by this element, without knowing

10    all the details of the agreement or understanding, and without

11    knowing who all the other members are.  Further, it is not

12    necessary that a person agree to play any particular part in

13    carrying out the agreement or understanding.  A person may

14    become a member of a conspiracy even if that person agrees to

15    play only a minor part in the conspiracy, as long as that

16    person has an understanding of the unlawful nature of the plan

17    and voluntarily and intentionally joins in it.

18         In determining whether the alleged conspiracy

19    existed, you may consider the actions and statements of all

20    the alleged participants.  The agreement may be inferred from

21    all the circumstances and the conduct of the alleged

22    participants.

23         Acts and statements that were made before the

24    conspiracy began or after it ended are admissible only against

25    the person who made them and should not be considered by you

1    against any other defendant.

2         A person conducts or participates in the conduct of

3    the affairs of an enterprise if that person uses his or her

4    position in, or association with the enterprise, to perform

5    acts which are involved in some way in the operation or

6    management of the enterprise directly or indirectly, or if the

7    person causes another to do so.  A person also participates in

8    the operation of the affairs of the enterprise if he or she

9    has some part in directing those affairs.  An enterprise may

10   be operated not just by upper management but also by lower

11   rung participants in the enterprise who are under the

12   direction of upper management.

13        In order to have conducted or participated in the

14   conduct of the affairs of an enterprise, a person need not

15   have participated in all the activity alleged in Count 1 of

16   the indictment.

17        In order to find a pattern of racketeering activity

18   for purposes of Count 1, you must find beyond a reasonable

19   doubt that a defendant agreed that some member or members of

20   the conspiracy would commit at least two acts of racketeering

21   as described in Count 1.  You must also find that those acts

22   were in some way related to each other and that there was

23   continuity between them.

24        Acts are related to each other if they are not

25   isolated events.  That is, if they have similar purposes, or

1    results, or participants, or victims, or are committed a

2    similar way, or have other similar distinguishing

3    characteristics or are part of the affairs of the same

4    enterprise.

5         There is a continuity between acts if, for example,

6    they are ongoing over a substantial period of time, or had the

7    potential to continue over a substantial period of time, or if

8    they are part of the regular way some entity does business or

9    conducts its affairs.

10        For purposes of Count 1, the United States does not

11   have to prove that any racketeering acts were actually

12   committed at all, or that the defendant agreed to personally

13   commit such acts.

14        Now, with respect to the definition of racketeering

15   act, honest services mail fraud, I'll give you further

16   instructions on that definition when I get to Instruction 14.

17   At this point, I'm in Instruction Number 12.  Likewise, I will

18   give you further instructions on the racketeering act that's

19   alleged of extortion or attempted extortion in Instruction 15.

20   The racketeering act obstruction of justice will be given you

21   in Instruction Number 16.

22        Now, let me continue on with the racketeering act

23   that's alleged in Count 1 for bribery.  Again, I'm still in

24   Instruction Number 12 at this point.

25        The indictment in Count 1 alleges a conspiracy to

commit racketeering acts in violation of KRS 119.205, which provides that any person who makes or offers to make an expenditure to any person, either to vote or withhold his vote, or to vote for or against any candidate or public question at an election shall be guilty of a Class D felony.

The elements of this offense are as follows.  That, A, the defendant makes or offers to make, B, an expenditure to a potential voter, C, with the intent to influence the voter to vote or withhold his vote, or to vote for or against any candidate at an election.

Expenditure means any of the following when intended as payment or consideration for voting or withholding a vote, voting for or against any candidate or public question, or signing a petition to have public question placed on the ballot.

A, a payment, distribution, loan, advance, deposit or gift of money or anything of value; or, B, a contract, promise, or agreement, express or implied, whether or not legally enforceable, to make a payment, distribution, loan, advance, deposit, or gift of money or anything of value.

As I have explained, Count 1 of the indictment charges that the defendants were all members of one single conspiracy to violate the RICO statute by conducting and participating, directly and indirectly, in the conduct of the affairs of the Clay County Board of Elections through a

1    pattern of racketeering activity.

2            Some of the defendants have argued that there were

3    really two or more separate conspiracies -- between some

4    defendants to commit some crimes, and between other defendants

5    or persons to commit other crimes.

6            To convict any one of the defendants of the

7    conspiracy charge in Count 1, the United States must convince

8    you beyond a reasonable doubt that the defendant was a member

9    of the conspiracy charged in the indictment.  If the United

10   States fails to prove this, then you must find that defendant

11   not guilty of the conspiracy charge, even if you find that he

12   or she was a member of some other conspiracy.  Proof that a

13   defendant was a member of some other conspiracy is not enough

14   to convict.

15           But proof that a defendant was a member of some other

16   conspiracy would not prevent you from returning a guilty

17   verdict if the United States also proved that he or she was a

18   member of the conspiracy charged in Count 1.

19           In deciding whether there was more than one

20   conspiracy, you should concentrate on the nature of the

21   agreement.  To prove a single conspiracy, the United States

22   must convince you that each of the members agreed to

23   participate in what he or she knew was a group activity

24   directed toward a common goal.  There must be proof of an

25   agreement on an overall objective.

1          But a single conspiracy may exist even if all the

2     members did not know each other, or never sat down together,

3     or did not know what roles all the other members played.  And

4     a single conspiracy may exist even if different members joined

5     at different times, or the membership of the group changed.

6     These are all things that you may consider in deciding whether

7     there was more than one conspiracy, but they are not

8     necessarily controlling.

9          Similarly, just because there were different

10    sub-groups operating in different places, or many different

11    criminal acts committed over a long period of time, does not

12    necessarily mean that there was more than one conspiracy.

13    Again, you may consider these things, but they are not

14    necessarily controlling.

15         What is controlling is whether the United States has

16    proved that there was an overall agreement on a common goal.

17    That is the key.

18         Now let me turn to Count 2.  Count 2 of the

19    indictment charges all of the defendants with a

20    money-laundering conspiracy in violation of Title 8 of the

21    United States Code, Section 1956(h).  It is alleged that this

22    activity occurred beginning on or about a day in March 2002,

23    the exact date unknown, and continuing through July 17, 2007.

24    In order to find a defendant guilty of Count 2, you must find

25    that he or she agreed with at least one other person to

1    violate the money-laundering statute.  A violation of the

2    money-laundering statute would consist of the following

3    elements.

4         First, that a defendant conducted or attempted to

5    conduct a financial transaction.

6         Second, that the financial transaction involved

7    property that represented the proceeds of bribery or

8    extortion, as I previously defined those crimes.

9         Third, that the defendant knew that the property

10    involved in the financial transaction represented the proceeds

11    of some form of unlawful activity.

12         Fourth, that the defendant had the intent to promote

13    the carrying on of bribery or extortion and/or knew that the

14    transaction was designed in whole or in part to conceal or

15    disguise the nature, location, source, ownership or control of

16    the proceeds of bribery or extortion.

17         Now I will give you some more detailed instructions

18    on some of these terms.

19         The term "financial transaction" means a transaction

20    which in any way or degree affects interstate or foreign

21    commerce involving the movement of funds by wire or other

22    means, or involving one or more monetary instruments.

23         The word "conducts" includes initiating, concluding

24    or participating in initiating or concluding a transaction.

25         The word "proceeds" means any property derived from,

1    obtained, retained, directly or indirectly, through some form

2    of unlawful activity, including the gross receipts of such

3    activity.

4         The phrase "knew that the property involved in a

5    financial transaction represented the proceeds of some form of

6    unlawful activity" means that the defendant knew the property

7    involved in the transaction represented the proceeds of some

8    form, though not necessarily which form, of activity that

9    constitutes a felony under state or federal law.

10        The money that a person intends to use to bribe

11   another becomes proceeds of specified unlawful activity when

12   he gives it to the a third party.  The third party's

13   subsequent transfer of the money is a money laundering

14   offense.

15        As I explained previously, it is a crime for two or

16   more persons to conspire, or agree, to commit a criminal act,

17   even if they never actually achieve their goal.

18        A conspiracy is a kind of criminal partnership.  For

19   you to find any one of the defendants guilty of conspiracy to

20   commit money laundering as charged in Count 2 of the

21   indictment, the United States must prove each and every one of

22   the following elements beyond a reasonable doubt.

23        First, that two or more persons conspired, or agreed,

24   to commit the crime of money laundering, as that crime has

25   been described to you.

1          Second, that the defendant knowingly and voluntarily

2     joined the conspiracy.

3          Third, that the conspiracy took place in whole or in

4     part in the Eastern District of Kentucky beginning on or about

5     a day in March 2002 and continuing through on or about

6     July 17, 2007.

7          You must be convinced that the United States has

8     proved all of these elements beyond a reasonable doubt in

9     order to find any one of these defendants guilty of the money

10    laundering conspiracy charge.

11         With regard to the first element, a criminal

12    agreement, the United States must prove that two or more

13    persons conspired, or agreed, to cooperate with each other to

14    commit the crime of money laundering in violation of the money

15    laundering statute.

16         This does not require proof of any formal agreement,

17    written or spoken.  Nor does this require proof that everyone

18    involved agreed on all the details.  But proof that people

19    simply met together from time to time and talked about common

20    interests, or engaged in similar conduct, is not enough to

21    establish a criminal agreement.  Those are things that you may

22    consider in deciding whether the United States has proved an

23    agreement.  But without more, they are not enough.

24         What the United States must prove is that there was a

25    mutual understanding, either spoken or unspoken, between two

1    or more people to cooperate with each other to commit the

2    crime of money laundering.  This is essential.

3           An agreement can be proved indirectly, by facts and

4    circumstances which lead to a conclusion that an agreement

5    existed.  But it is up to the United States to convince you

6    that such facts and circumstances existed in this particular

7    case.

8           If you are convinced that there was a criminal

9    agreement, then you must decide whether the United States has

10    proved that a defendant knowingly and voluntarily joined that

11    agreement.  You must consider each defendant separately in

12    this regard.  To convict any defendant, the United States must

13    prove that he or she knew the conspiracy's main purpose and

14    voluntarily joined it intending to help advance or achieve its

15    goals.

16           This does not require proof that a defendant knew

17    everything about the conspiracy, or everyone else involved, or

18    was a member of it from the very beginning.  Nor does it

19    require proof that a defendant played a major role in the

20    conspiracy, or had a substantial connection to it.  A slight

21    role or connection may be enough.

22           But proof that a defendant simply knew about a

23    conspiracy, or was present at times, or associated with

24    members of the group is not enough, even if the defendant

25    approved of what was happening or did not object to it.

Similarly, just because a defendant may have done something that happened to help a conspiracy does not necessarily make him or her a conspirator.  These are all things that you may consider in deciding whether the United States has proved that a defendant joined a conspiracy.  But without more, they are not enough.

What the United States must prove is that a defendant knew the conspiracy's main purpose and voluntarily joined it intending to help advance or achieve its goals.  This is essential.

A defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he or she knew the conspiracy's main purpose.  But it is up to the United States to convince you that such facts and circumstances existed in this particular case.

Now let me turn to Instruction Number 14, which begins the instructions on Counts 3, 5, 6 and 7.  Counts 3, 5, 6 and 7 of the indictment accuse defendants Charles Wayne Jones and Freddy Thompson of violations of Title 18 of the United States Code, Sections 1341 and 1346, which make it a federal crime or offense for anyone to use the United States mails in carrying out a scheme to fraudulently deprive another of the intangible right of honest services.

Count 3 relates to the period which begins on or about a day in January 2004 until on or about May 19, 2004.

1          Count 5 relates to the period beginning on or about a

2     day in mid-2004 until on or about November 3, 2004.

3          Count 6 relates to the period on or about a day in

4     January 2006 until on or about May 17, 2006.

5          Count 7 relates to the period on or about a date in

6     mid-2006 until on or about November 8, 2006.

7          For you to find a defendant guilty of this crime, you

8     must be convinced that the United States has proved each of

9     the following beyond a reasonable doubt.

10         First, that the defendant knowingly devised or

11    participated in a scheme to fraudulently deprive the citizens

12    of Clay County of their right to the honest services of a

13    member of the Board of elections and the county clerk, using

14    the following manner and means:  Participating, with others,

15    in pooling funds for the purpose of buying votes.  Instructing

16    election officers to buy votes and mark voters or present

17    tickets to voters for purposes of identifying voters who had

18    sold their votes.  Instructing election officers to assist

19    voters who sold their votes and to destroy voter assistance

20    forms which may have resulted.  And assisting in the

21    preparation of an election report which falsely reported as

22    valid fraudulent vote totals in the county to the Kentucky

23    Secretary of State and the Kentucky Board of Elections.

24         Second, that the defendant did so willfully and with

25    an intent to defraud.

1        Third, that the defendant used the United States

2    postal service by mailing or causing to be mailed some matter

3    or thing for the purpose of executing the scheme to defraud.

4        The word "scheme" includes any plan or course of

5    action intended to deceive or cheat someone, and to act with

6    "intent to defraud" means to act knowingly and with the

7    specific intent to deceive someone, ordinarily for the purpose

8    of causing some financial loss to another or bringing about

9    some financial gain to oneself.

10        "To deprive another of the intangible right of honest

11    services" means to violate, or to cause a public official to

12    violate, the official's duty to provide honest services to the

13    public.

14        Public officials and public employees inherently owe

15    a duty to the public to act in the public's best interest.

16    If, instead, the official or employee acts or makes his

17    decision based on his own personal interests, such as

18    accepting a bribe, taking a kickback or receiving personal

19    benefit from an undisclosed conflict of interest, the official

20    has defrauded the public of the official's honest services

21    even though the public agency involved may not suffer any

22    monetary loss in the transaction.

23        It is not necessary that the United States prove all

24    of the details alleged in the indictment concerning the

25    precise nature and purpose of the scheme; or that the material

40

1    mailed was itself false or fraudulent; or that the alleged

2    scheme actually succeeded in defrauding anyone; or that the

3    use of the mails was intended as the specific or exclusive

4    means of accomplishing the alleged fraud; or that the

5    defendant did the actual mailing.

6          What must be proved beyond a reasonable doubt is that

7    the defendant, with the specific intent to defraud, knowingly

8    devised, intended to devise, or participated in a scheme to

9    defraud substantially the same as the one alleged in the

10   indictment and that the use of the United States mail was

11   closely related to the scheme because the defendant either

12   mailed something or caused it to be mailed in an attempt to

13   execute or carry out the scheme.

14         To "cause" the mails to be used is to do an act with

15   knowledge that the use of the mails will follow in the

16   ordinary course of business or where such use can reasonably

17   be foreseen.

18         Each separate use of the mails in furtherance of a

19   scheme to defraud constitutes a separate offense.

20         Now let me instruct you with respect to aiding and

21   abetting.  For you to find Charles Wayne Jones or Freddy W.

22   Thompson guilty of honest services mail fraud, it is not

23   necessary for you to find that they personally committed the

24   crime themselves.  You may also find them guilty if they

25   intentionally helped someone else to commit the crime.  A

1    person who does this is called an aider and abettor.

2         But for you to find a defendant guilty of honest

3    services mail fraud as an aider and abettor, you must be

4    convinced that the United States has proved each and every one

5    of the following elements beyond a reasonable doubt.  First,

6    that the crime of honest services mail fraud was committed.

7    Second, that the defendant helped commit the crime.  Third,

8    that the defendant intended to help commit the crime.

9         Proof that the defendant may have known about the

10   crime, even if he was there when it was committed, is not

11   enough for you to find him guilty.  You can consider this in

12   deciding whether the United States has proved that he was an

13   aider and abettor, but without more it is not enough.

14        What the United States must prove is that the

15   defendant did something to help the crime with the intent that

16   the crime be committed.

17        If you are convinced that the United States has

18   proved all of these elements, say so by returning a guilty

19   verdict on this charge.  If you have a reasonable doubt about

20   any of these elements, then you cannot find the defendant

21   guilty of honest services mail fraud as an aider and abettor.

22        As I have explained, Counts 3, 5, 6 and 7 of the

23   indictment accuse Defendants Jones and Thompson of committing

24   the crime of honest services mail fraud.  In addition to

25   convincing you that a defendant personally committed or

participated in the crime or that he aided and abetted the

commission of the crime, the United States may also prove the

defendant guilty based on the legal rule that all members of a

conspiracy are responsible for acts committed by the other

members, as long as those acts are committed to help advance

the conspiracy and are within the reasonably foreseeable scope

of the agreement.

In other words, under certain circumstances, the act

of one conspirator may be treated as the act of all.  This

means that all the conspirators may be convicted of a crime

committed by only one of them, even though they did not all

personally participate in that crime themselves.

But for you to find one of these defendants guilty of

mail fraud based on this legal rule, you must be convinced

that the United States has proved each and every one of the

following elements beyond a reasonable doubt.

First, that the defendant was a member of the

conspiracy charged in the relevant count of the indictment.

Second, that after he joined the conspiracy, and

while he was still a member of it, one or more of the other

members committed the crime of mail fraud.

Third, that this crime was committed to help advance

the conspiracy.

And fourth, that this crime was within the reasonably

foreseeable scope of the unlawful project.  The crime must

1    have been one that the defendant could have reasonably

2    anticipated as a necessary or natural consequence of the

3    agreement.

4         This does not require proof that each defendant

5    specifically agreed or knew that the crime would be committed.

6    But the United States must prove that the crime was within the

7    reasonable contemplation of the persons who participated in

8    the conspiracy.  No defendant is responsible for the acts of

9    others that go beyond the fair scope of the agreement as the

10   defendant understood it.

11        If you are convinced that the United States has

12   proved all of these elements, say so by returning a guilty

13   verdict on this charge.  If you have a reasonable doubt about

14   any of them, then the legal rule that the act of one

15   conspirator is the act of all would not apply.

16        Now let me turn to Count 4, this being Instruction

17   Number 15.  Count 4 of the indictment charges defendants

18   Charles Wayne Jones and William E. Stivers with a violation of

19   Title 18 of the United States Code, Section 1951, which makes

20   it a federal crime to attempt to extort another.  It is

21   alleged that this crime occurred on or about a date in

22   September 2004.  To sustain the charge of attempted extortion,

23   the United States must prove the following beyond a reasonable

24   doubt.

25        First, that the defendant knowingly attempted to

44

1    obtain money from Carmen Webb Lewis.

2         Second, that the defendant did so by means of

3    extortion by use of fear or under color of official right, as

4    those terms are defined in these instructions.

5         Third, that the defendant believed that Carmen Webb

6    Lewis would have parted with the money because of the

7    extortion.

8         And fourth, that the conduct of the defendant

9    affected, would have affected, or had the potential to affect

10   interstate commerce.

11        If you find from your consideration of all the

12   evidence that each of these propositions has been proved

13   beyond a reasonable doubt, then you should find the defendant

14   guilty.

15        If, on the other hand, you find from your

16   consideration of all the evidence that any of these

17   propositions has not been proved beyond a reasonable doubt,

18   then you should find the defendant not guilty.

19        Attempted extortion under color of official right

20   occurs when a public official attempts to obtain money or

21   property to which he or she is not entitled, believing that

22   the money or property would be given to him or her in return

23   for the taking, withholding or other influencing of official

24   action.  While the official must attempt to obtain the money

25   or property in return for the official action, the United

45

1    States does not have to prove that the official actually

2    intended to take that action.

3         Attempted extortion by fear means the wrongful use of

4    fear to attempt to obtain money or property.  "Wrongful" means

5    that the defendant had no lawful right to obtain money or

6    property in that way.  "Fear" includes fear of economic loss.

7    This includes fear of direct loss of money, fear of harm to

8    future business operations or a fear of some loss of ability

9    to compete in the marketplace in the future if the victim did

10   not pay the defendant.

11        The United States must prove that the victim's fear

12   would have been reasonable under the circumstances.  However,

13   the United States need not prove that the defendant actually

14   intended to cause the harm threatened.

15        With respect to Count 4, the United States must prove

16   that the defendant's actions had the potential to affect

17   interstate commerce in any way or degree.  This means that the

18   natural consequences of the defendant's actions would have

19   been some effect on interstate commerce, however minimal.  It

20   is not necessary for you to find that the defendant knew or

21   intended that his or her actions would affect interstate

22   commerce.

23        As I explained, Count 4 accuses Defendants Jones and

24   Stivers of attempted extortion.

25        There are two ways that the United States can prove a

1    defendant guilty of this crime.  The first is by convincing

2    you that he personally committed or participated in the crime.

3    The second is based on the legal rule that all members of a

4    conspiracy are responsible for acts committed by the other

5    members, as long as those acts are committed to help advance

6    the conspiracy and are within the reasonably foreseeable scope

7    of the agreement.

8          In other words, under certain circumstances, the act

9    of one conspirator may be treated as the act of all.  This

10   means that all the conspirators may be convicted of a crime

11   committed by only one of them, even though they did not all

12   personally participate in that crime themselves.

13         But for you to find one of these defendants guilty of

14   attempted extortion based on this legal rule, you must be

15   convinced that the United States has proved each and every one

16   of the following elements beyond a reasonable doubt.  First,

17   that the defendant was a member of the conspiracy charged in

18   Count 4 of the indictment.

19         Second, that after he joined the conspiracy, and

20   while he was still a member of it, one or more of the other

21   members committed the crime of attempted extortion.

22         Third, that this crime was committed to help advance

23   the conspiracy.

24         Fourth, that this crime was within the reasonably

25   foreseeable scope of the unlawful project.  The crime must

1    have been one that the defendant could have reasonably

2    anticipated as a necessary or natural consequence of the

3    agreement.

4         This does not require proof that each defendant

5    specifically agreed or knew that the crime would be committed,

6    but the United States must prove that the crime was within the

7    reasonable contemplation of the persons who participated in

8    the conspiracy.  No defendant is responsible for the acts of

9    others that go beyond the fair scope of the agreement as the

10   defendant understood it.

11        If you are convinced that the United States has

12   proved all of these elements, say so by returning a guilty

13   verdict on this charge.  If you have a reasonable doubt about

14   any one of them, then the legal rule that the act of one

15   conspirator is the act of all would not apply.

16        Defendants Maricle and Stivers are charged in Count 8

17   and Defendant Thompson is charged in Count 9 with violating

18   Title 18 of the United States Code, Section 1503.  It is

19   alleged that the illegal activities charged in Count 8

20   occurred on or about May 2, 2007 and continuing through on or

21   about May 17, 2007.  The illegal activities asserted in

22   Count 9 are alleged to have occurred on or about July 12,

23   2007.

24        This law makes it a crime for anyone to corruptly

25   endeavor to influence, obstruct or impede the due

administration of justice in connection with a pending judicial proceeding.

To find a defendant guilty of this crime, you must be convinced that the United States has proved each of the following beyond a reasonable doubt.

First, that there was a proceeding pending before a federal grand jury.

Second, that the defendant knew of the pending judicial proceeding and endeavored to influence, obstruct or impede the due administration of justice in that proceeding.

Third, that the defendant's act was done corruptly; that is, that the defendant acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice.

It is not necessary to show that the defendant was successful in achieving the forbidden objective, only that the defendant corruptly tried to achieve it in a manner which he knew was likely to influence, obstruct or impede the due administration of justice as the natural and probable effect of his actions.

The statute would be violated if the defendant advises with corrupt motive that a witness should assert his Fifth Amendment right to remain silent before a grand jury.

As I have explained, Count 8 accuses Defendants Maricle and Stivers of obstruction of justice.  Count 9

49

1    charges Defendant Thompson with the same offense.

2         There are two ways that the United States can prove a

3    defendant guilty of these crimes.  The first is by convincing

4    you that he personally committed or participated in the crime.

5    The second is based on the legal rule that all members of a

6    conspiracy are responsible for acts committed by other members

7    as long as those acts are committed to help advance the

8    conspiracy, and are within the reasonably foreseeable scope of

9    the agreement.

10        In other words, under certain circumstances, the act

11   of one conspirator may be treated as the act of all.  This

12   means that all the conspirators may be convicted of a crime

13   committed by only one of them, even though they did not all

14   personally participate in the crime themselves.

15        But for you to find any one of these defendants

16   guilty of obstruction of justice based on this legal rule, you

17   must be convinced that the United States has proved each and

18   every one of the following elements beyond a reasonable doubt.

19        First, that the defendant was a member of the

20   conspiracy charged in the relevant count of the indictment.

21        Second, that after he joined the conspiracy, and

22   while he was still a member of it, one or more of the other

23   members committed the crime of obstruction of justice.

24        Third, that this crime was committed to help advance

25   the conspiracy.

1          Fourth, that this crime was within the reasonably

2     foreseeable scope of the unlawful project.  The crime must

3     have been one that the defendant could have reasonably

4     anticipated as a necessary or natural consequence of the

5     agreement.

6          This does not require proof that each defendant

7     specifically agreed or knew that the crime would be committed.

8     But the United States must prove that the crime was within the

9     reasonable contemplation of the persons who participated in

10    the conspiracy.  No defendant is responsible for the acts of

11    others that go beyond the fair scope of the agreement as the

12    defendant understood it.

13         If you are convinced that the United States has

14    proved all of these elements, say so by returning a guilty

15    verdict on this charge.  If you have a reasonable doubt about

16    any one of them, then the legal rule that the act of one

17    conspirator is the act of all would not apply.

18         Now let me turn to Count 10.  This is Instruction

19    Number 17 in your instructions.  This relates to Defendants

20    Maricle, Jones, Stivers and Thompson.  Count 10 of the

21    indictment alleges that from on or about a date in June 2004

22    to on or about November 7, 2006, Defendants Maricle, Jones,

23    Stivers and Thompson violated Title 18 of the United States

24    Code, Section 241, which makes it a crime for two or more

25    persons to conspire to injure or oppress any person in the

1    free exercise or enjoyment of any right or privilege secured

2    to the victim by the Constitution or laws of the United

3    States.

4              For you to find a defendant guilty of this crime, you

5    must be convinced that the United States has proved each of

6    the following beyond a reasonable doubt.

7              First, that the defendant entered into a conspiracy

8    to injure or oppress one or more victims.

9              Second, that the defendant intended by the conspiracy

10   to hinder, prevent or interfere with the victims' enjoyment of

11   a right secured by the constitution or laws of the United

12   States.

13             The indictment charges that the defendants conspired

14   to deprive the victims of the right to vote.  You are

15   instructed that this right is one secured by the Constitution

16   and the laws of the United States.

17             In Count 10 of the indictment, Defendants Maricle,

18   Jones, Stivers and Thompson are charged with conspiring to

19   deprive qualified voters of their right to vote.  Again, it is

20   a crime for two or more persons to conspire or agree to commit

21   a criminal act, even if they never actually achieve their

22   goal.

23             A conspiracy is a kind of criminal partnership.  For

24   you to find any one of these defendants guilty of the

25   conspiracy charge in Count 10 of the indictment, the United

1    States must prove each and every one of the following elements

2    beyond a reasonable doubt.

3             First, that two or more persons conspired, or agreed,

4    to deprive a person of his or her right to vote.

5             Second, that the defendant knowingly and voluntarily

6    joined the conspiracy.

7             You must be convinced that the United States has

8    proved both of these elements beyond a reasonable doubt in

9    order to find any one of these defendants guilty of the

10   conspiracy charge in Count 10.

11            Let me turn to Count 11.  This begins Instruction 18.

12   In Count 11 of the indictment, Defendants Maricle, Jones,

13   Stivers, Thompson, William Morris and Debra Morris are charged

14   with conspiring to commit vote buying by illegally funding a

15   pool and using the money to buy votes in violation of federal

16   law.  It is alleged that this illegal activity occurred from

17   on or about a date in January 2006, the exact date unknown, to

18   on or about November 7, 2006.  Again, it is a crime for two or

19   more persons to conspire, or agree, to commit a criminal act,

20   even if they never actually achieve their goal.

21            A conspiracy is a kind of criminal partnership.  For

22   you to find any one of these defendants guilty of the

23   conspiracy charge in Count 11 of the indictment, the United

24   States must prove each and every one of the following elements

25   beyond a reasonable doubt.

1          First, that two or more persons conspired, or agreed,

2     to commit the crime of vote buying.

3          Second, that the defendant knowingly and voluntarily

4     joined the conspiracy.

5          Third, that a member of the conspiracy did one of the

6     overt acts described in the indictment for the purpose of

7     advancing or helping the conspiracy.

8          You must be convinced that the United States has

9     proved all of these elements beyond a reasonable doubt in

10     order to find any one of these defendants guilty of the vote

11     buying conspiracy charge.

12          Regarding the first element, a criminal agreement,

13     the United States must prove that two or more persons

14     conspired, or agreed, to cooperate with each other to commit

15     the crime of vote buying.

16          Again, this does not require proof of any formal

17     agreement, written or spoken, nor does this require proof that

18     everyone involved agreed on all the details.  But proof that

19     people simply met together from time to time and talked about

20     common interests, or engaged in similar conduct, is not enough

21     to establish a criminal agreement.  These are things that you

22     may consider in deciding whether the United States has proved

23     an agreement.  But without more, they are not enough.

24          What the United States must prove is that there was a

25     mutual understanding, either spoken or unspoken, between two

54

1    or more people to cooperate with each other to commit the

2    crime of vote buying.  This is essential.

3          An agreement can be proved indirectly, by facts and

4    circumstances which lead to a conclusion that an agreement

5    existed.  But it is up to the United States to convince you

6    that such facts and circumstances existed in this particular

7    case.

8          If you are convinced that there was a criminal

9    agreement, then you must decide whether the United States has

10   proved that the defendant knowingly and voluntarily joined

11   that agreement.  You must consider each defendant separately

12   in this regard.  To convict any defendant, the United States

13   must prove that he or she knew the conspiracy's main purpose

14   and voluntarily joined it intending to help advance or achieve

15   its goals.

16         This does not require proof that a defendant knew

17   everything about the conspiracy, or everyone else involved, or

18   was a member of it from the very beginning.  Nor does it

19   require proof that the defendant played a major role in the

20   conspiracy, or had a substantial connection to it.  A slight

21   role or connection may be enough.

22         But proof that a defendant simply knew about a

23   conspiracy, or was present at times, or associated with

24   members of the group, is not enough, even if the defendant

25   approved of what was happening or did not object to it.

1    Similarly, just because a defendant may have done

2    something that happened to help a conspiracy does not

3    necessarily make him or her a conspirator.  These are all

4    things that you may consider in deciding whether the United

5    States has proved that a defendant joined a conspiracy.  But

6    without more, they are not enough.

7    What the United States must prove is that a defendant

8    knew the conspiracy's main purpose and voluntarily joined it

9    intending to help advance or achieve its goals.  This is

10    essential.

11    A defendant's knowledge can be proved indirectly by

12    facts and circumstances which lead to a conclusion that he or

13    she knew the conspiracy's main purpose.  But it is up to the

14    United States to convince you that such facts and

15    circumstances existed in this particular case.

16    The third element that the United States must prove

17    is that a member of the conspiracy did one of the overt acts

18    described in the indictment for the purpose of advancing or

19    helping the conspiracy.

20    The indictment lists several overt acts.  The United

21    States does not have to prove that all these acts were

22    committed, or that any of these acts were themselves illegal.

23    But the United States must prove that at least one of

24    these acts was committed by a member of the conspiracy, and

25    that it was committed for the purpose of advancing or helping

56

the conspiracy.  This is essential.

To determine whether a conspiracy has as its purpose the commission of a crime, you must know the elements of the crime.

The elements of vote buying under Title 42 of the United States Code, Section 1973i, are, first, that an election was held solely or in part for the purpose of selecting or electing a candidate for the United States Congress.

Second, that someone paid or offered to pay a person for voting in that election.

Third, that the person acted knowingly or willfully.

As previously indicated to you, the United States must prove that the election in question included a candidate for United States Congress, and that the defendant paid or offered to pay a person for voting in that election.  The United States, however, does not have to prove that the payment or offer of payment was made specifically for or on behalf of a federal candidate, or for any particular candidate, or that the defendant had a specific intent to influence a federal race or any particular race.

Accordingly, the United States also need not prove, and it does not matter, who any voter actually voted for.  The United States need only show a payment or offer to pay for the act of voting in an election that included a candidate for

1   federal office.

2          The United States does not have to prove that the

3   payment or offer of payment was made specifically for or on

4   behalf of a federal candidate, or for any particular

5   candidate, or that the defendant had a specific intent to

6   influence a federal race, or any particular race.

7          Accordingly, the United States also need not prove

8   and it does not matter who any voter actually voted for.  The

9   United States need only show a payment or offer to pay for the

10   act of voting in an election that included a candidate for

11   federal office.

12          Now, some of the people who may have been involved in

13   these events are not on trial.  This does not matter.  There

14   is no requirement that all members of a conspiracy be charged

15   and prosecuted, or tried together in one proceeding.

16          Nor is there any requirement that the names of the

17   other conspirators be known.  An indictment can charge a

18   defendant with a conspiracy involving people whose names are

19   not known, as long as the United States can prove that the

20   defendant conspired with one or more of them.  Whether they

21   are named or not does not matter.

22          As I explained, the United States has alleged

23   conspiracies in several counts covering identified time

24   periods.  This raises the related question of when a

25   conspiracy comes to an end.

1          A conspiracy ends when its goals have been achieved.

2     But sometimes a conspiracy may have a continuing purpose and

3     may be treated as an ongoing, or continuing, conspiracy.  This

4     depends on the scope of the agreement.

5          If the agreement includes an understanding that the

6     conspiracy will continue over time, then the conspiracy may be

7     a continuing one.  And if it is, it lasts until there is some

8     affirmative showing that it has ended.  On the other hand, if

9     the agreement does not include an understanding that the

10    conspiracy will continue, then it comes to an end when its

11    goals have been achieved.

12         This, of course, is all for you to decide.

13         Next, I want to say a word about the dates mentioned

14    in the indictment.  The indictment charges that the crimes

15    happened on or about certain dates.  The United States does

16    not have to prove that the crimes happened on those exact

17    dates, but the United States must prove that the crimes

18    happened reasonably close to those dates.

19         Next I want to explain something about proving a

20    defendant's state of mind.

21         Ordinarily, there is no way that a defendant's state

22    of mind can be proved directly, because no one can read

23    another person's mind and tell what that person is thinking.

24         But a defendant's state of mind can be proved

25    indirectly from the surrounding circumstances.  This includes

things like what the defendant said, what the defendant did, how the defendant acted and any other facts or circumstances in evidence that show what was in the defendant's mind.

You may also consider the natural and probable results of any acts that the defendants knowingly did, and whether it is reasonable to conclude that the defendants intended those results. This, of course, is all for you to decide.

That concludes the part of my instructions explaining the elements of the crimes. Next, I will explain the defendants' positions.

All the defendants assert that the United States has failed to prove beyond a reasonable doubt all of the elements of the crimes charged in the indictment.

Defendant Douglas C. Adams asserts that he did not use his position as superintendent of the Clay County Schools to control any election in Clay County, Kentucky, and that whatever was his involvement in the Clay County elections, he did not participate in any illegal use of the Clay County Board of Elections as an enterprise.

It is further his position that neither he nor anyone on his behalf directed any members or employee of the Clay County Board of Elections, including election officers, and that the defendants as a group never acted together for the illegal common purpose of controlling elections in Clay

1    County.

2         According to Defendant Adams, he obtained his job

3    legally, held it legally, and kept it legally, and he

4    maintains that the evidence does not support the assertion

5    that there was any political pressure put on any member of the

6    Board of Education to hire or retain him, or pay him an

7    improper rate of compensation.  He further contends that he

8    was not involved in any illegal kickback schemes or extortion

9    and that he did not conspire with any other person to conduct

10   any unlawful financial transactions affecting interstate

11   commerce.

12        Next I will explain Defendant Freddy Thompson's

13   position.

14        Defendant Thompson asserts that in 2002, many people,

15   including some defendants in this case, wanted Jennings White

16   out of power.  You have heard about several crimes committed

17   by Jennings White.  While there has been evidence votes were

18   bought by people who were interested in Freddy Thompson

19   defeating Jennings White, it is Defendant Thompson's position

20   that he did not personally buy votes, or conspire with others

21   to do so on his behalf.

22        It is Defendant Thompson's theory that after being

23   elected in 2002, he was unopposed in 2004 and 2006 and had no

24   personal interest in those elections.  With regard to the 2004

25   and 2006 elections, it is Defendant Thompson's position that

1    he was required to certify the election results under Kentucky

2    law, and that he had no knowledge if the election reports in

3    those years contained fraudulent vote totals.

4         Finally, it is Defendant Thompson's position that in

5    2006, he went to great lengths to educate the citizens of Clay

6    County about the new voting machine, and that he did not

7    participate in any plan to deprive anyone of the right to

8    vote.

9         With respect to the charge contained in Count 6,

10   alleging that Defendant Thompson assisted in the preparation

11   of an election report that falsely reported as valid

12   fraudulent vote totals in the county to the Kentucky Secretary

13   of State and the Kentucky Board of Elections, the defendant

14   asserts a defense of good faith.

15        A person who acts, or causes another person to act,

16   on a belief or an opinion honestly held is not punishable

17   under this statute merely because the belief or opinion turns

18   out to be inaccurate, incorrect or wrong.  An honest mistake

19   in judgment or an honest error in management does not rise to

20   the level of criminal conduct.

21        A defendant does not act in good faith if, even

22   though he honestly holds a certain opinion or belief, that

23   defendant also knowingly makes false or fraudulent pretenses,

24   representations or promises to others.  If he does those

25   things -- let me read that paragraph again.

62

1        A defendant does not act in good faith if, even

2    though he honestly holds a certain opinion or belief, that

3    defendant also knowingly makes false or fraudulent pretenses,

4    preparations or promises to others.

5        While the term "good faith" has no precise

6    definition, it encompasses, among other things, a belief or

7    opinion honestly held, an absence of malice or ill will, and

8    an intention to avoid taking unfair advantage of another.

9        The burden of proving good faith does not rest with

10   the defendant because the defendant does not have any

11   obligation to prove anything in this case.  It is the

12   government's burden to prove to you, beyond a reasonable

13   doubt, that the defendant acted with an intent to defraud.

14       If the evidence in this case leaves you with a

15   reasonable doubt as to whether the defendant acted with an

16   intent to defraud or in good faith, you must acquit the

17   defendant.

18       That concludes the part of my instructions explaining

19   the defendants' positions.  Next I will explain some rules

20   that you must use in considering some of the testimony and

21   evidence.

22       A defendant has an absolute right not to testify.

23   The fact that a particular defendant did not testify cannot be

24   considered by you in any way.  Do not even discuss it in your

25   deliberations.

1    Remember that it is up to the United States to prove

2    a defendant guilty beyond a reasonable doubt.  It is not up to

3    the defendant to prove that he or she is innocent.

4    You have also heard Defendant Maricle testify.

5    Earlier, I talked to you about the credibility or

6    believability of the witnesses, and I suggested some things

7    for you to consider in evaluating each witness's testimony.

8    You should consider those same things in evaluating this

9    defendant's testimony.

10    You have heard the testimony of several individuals

11    who testified as opinion witnesses.  You do not have to accept

12    these witnesses' opinions.  In deciding how much weight to

13    give an opinion, you should consider the witness's

14    qualifications and how he reached his conclusions.  Also

15    consider the other factors discussed in these instructions for

16    weighing the credibility of witnesses.  Remember that you

17    alone decide how much of a witness's testimony to believe, and

18    how much weight it deserves.

19    You have heard the testimony of several witnesses

20    who, before this trial, were convicted of certain crimes.

21    These earlier convictions were brought to your attention only

22    as one way of helping you decide how believable these

23    witnesses' testimony was.  Do not use it for any other

24    purpose.  It is not evidence of anything else.

25    You have heard the testimony of Wanda White and Mike

1    Bishop, who indicated that the United States has promised them

2    that they will not be prosecuted for their involvement in

3    voter fraud in exchange for their cooperation.

4         It is permissible for the United States to make such

5    a promise.  But you should consider this testimony with more

6    caution than the testimony of other witnesses.  Consider

7    whether their testimony may have been influenced by the United

8    States' promise.

9         Do not convict a defendant based on the unsupported

10   testimony of such a witness, standing alone, unless you

11   believe his or her testimony beyond a reasonable doubt.

12        You have also heard the testimony of several

13   witnesses who testified in hopes of receiving a reduced

14   sentence based upon cooperation with the government in this

15   matter.

16        It is permissible for the government to seek such

17   reductions.  But you should consider these witnesses'

18   testimony with more caution than the testimony of other

19   witnesses.  Consider whether their testimony may have been

20   influenced by such possible reductions.

21        Do not convict a defendant based on the unsupported

22   testimony of such a witness, standing alone, unless you

23   believe the testimony beyond a reasonable doubt.

24        You have heard the testimony of several witnesses who

25   were involved in the same crimes that the defendants are

1    charged with committing.  You should consider these witnesses'

2    testimony with more caution than the testimony of other

3    witnesses.

4        Do not convict a defendant based on the unsupported

5    testimony of such a witness, standing alone, unless you

6    believe his or her testimony beyond a reasonable doubt.

7        The fact that one or more of these witnesses has

8    pleaded guilty to a crime is not evidence that the defendants

9    are guilty, and you cannot consider this against the

10   defendants in any way.

11       You have heard testimony given by witnesses which

12   includes their interpretations of what other people meant by

13   what they said.  You are reminded that this testimony

14   represents the witnesses' understanding of what was meant by

15   the statements and has been admitted to put these statements

16   and the parties' conversations in context.

17       You have also heard testimony that the cooperating

18   witnesses provided incorrect or misleading information to one

19   or more defendants during the course of a federal

20   investigation.  In evaluating this testimony, you may consider

21   whether the witness was acting pursuant to directions given by

22   investigators in making any incorrect or misleading

23   statements.

24       You have heard testimony about a defendant's good

25   character.  You should consider this testimony, along with all

1    the other evidence, in deciding if the United States has

2    proved beyond a reasonable doubt that they committed the

3    crimes charged.

4         During the trial, you have seen counsel use

5    summaries, charts, drawings, calculations or similar material,

6    which were offered to assist in the presentation and

7    understanding of the evidence.  This material is not itself

8    evidence and must not be considered as proof of any facts.

9         The United States introduced certain testimony and

10    evidence which the Court has admitted as background evidence.

11    This includes some testimony presented by Kenneth Day, Eugene

12    Lewis, and J.C. Lawson.  Background evidence includes an act

13    or acts other than the specific acts charged in the indictment

14    which are intertwined with the offense or offenses charged.

15    The introduction of background evidence is offered to complete

16    the story of the charged offense or offenses.  Here, the

17    United States offered the evidence to show the origins of the

18    enterprise; i.e., the inception of the conspiracy, that has

19    been alleged and the roles of some of the members of the

20    alleged enterprise.

21         You are cautioned that the United States does not

22    assert that the alleged conspiracy which is the subject of

23    this indictment occurred in the 1980s with one or more of the

24    defendants participating in vote buying.  Instead, the United

25    States offered this testimony as evidence of activity that

1    allegedly was the origin of the defendants joining the

2    enterprise and their respective roles in the enterprise.

3         Likewise, you are also cautioned again that the

4    defendants are not charged in this matter with drug crimes.

5    However, the United States has offered testimony regarding

6    marijuana activity as evidence of funds which allegedly could

7    be used to purchase votes, the relationship between persons

8    who are alleged to be members of the conspiracy, and the

9    defendants' positions in the conspiracy.

10         Further, evidence that Defendant Maricle previously

11    represented Defendant Adams in a matter unrelated to this case

12    has been offered by the United States to show the relationship

13    between the two defendants.

14         Remember that the defendants are on trial here only

15    for the crimes charged in the indictment, not for any other

16    acts.  Do not return a guilty verdict unless the United States

17    proves the crimes charged in the indictment beyond a

18    reasonable doubt.

19         You have heard testimony that after the crime was

20    allegedly committed, Defendant Maricle failed to provide

21    relevant information to the United States Probation Office

22    concerning his assets.

23         If you believe that Defendant Maricle concealed any

24    evidence relevant to the case, then you may consider this

25    conduct, along with all the other evidence, in deciding

1    whether the United States has proved beyond a reasonable doubt

2    that he committed the crimes charged.  This conduct may

3    indicate that a defendant thought he was guilty and was trying

4    to avoid punishment.  On the other hand, sometimes an innocent

5    person may fail to disclose information for some other reason.

6         You have heard testimony concerning the rules that

7    apply to state court judges.  You are instructed that a judge

8    is allowed to give legal advice to members of the judge's

9    family, so long as the judge receives no compensation.

10        You are also instructed that a violation of a rule of

11   judicial conduct is not, by itself, a crime.

12        You are further instructed that any party to a

13   lawsuit who believes that the judge in the case should be

14   required to step down from the case for reasons of bias or

15   conflict of interest has the right to petition the Chief

16   Justice of the Supreme Court of Kentucky to disqualify the

17   judge.

18        You have heard testimony concerning a lawsuit between

19   Defendant William E. Stivers and the City of Manchester.  You

20   are instructed that under Kentucky law, the settlement of any

21   lawsuit with the City of Manchester, including any amount of

22   money paid in settlement of the lawsuit, is subject to public

23   disclosure and inspection under the Kentucky Open Records law.

24        You are instructed that under Kentucky law, absentee

25   voting shall be conducted in the county clerk's office or

69

1    other designated place approved by the State Board of

2    Elections during normal business hours for at least the 12

3    working days before the election.

4         You are instructed that under Kentucky law, the

5    records of a County Board of Elections, including those

6    persons appointed and/or nominated to serve as precinct

7    election officers, are public documents.

8         You are instructed that under Kentucky law, the State

9    Board of Elections may require a County Board of Elections to

10   submit its list of precinct election officers for review.

11        You are further instructed that under Kentucky law,

12   the State Board of Elections may, after a hearing, direct the

13   removal of any election officer who the Board finds would not

14   fairly administer the state election laws.

15        The qualifications and restrictions on a person's

16   service as a precinct election officer are provided by

17   Kentucky statute.  The person must be 18, unless he turns 18

18   on or before the day of the regular election in the year he is

19   chosen to serve.  Must be a qualified voter of the precinct in

20   which he is to serve.  Must not be a candidate for office or

21   the spouse, parent, child or sibling of a candidate.  Must not

22   have changed party affiliation in the year prior to his

23   appointment, and must have signed a document confirming his

24   willingness to serve.

25        Kentucky statutes do not prohibit a member of a

70

1    County Board of Elections from serving as a precinct election

2    officer.

3            The County Board of Elections is required to appoint

4    election officers no later than March 20.  The appointment is

5    for all elections in the year of appointment.  The process is

6    governed by Kentucky statute.  The Board makes its selections

7    from lists provided to it by the two predominant political

8    parties in the county.  Typically, and in Clay County, these

9    would be the Republican and Democratic parties.  The lists are

10    comprised of four qualified persons per party per precinct,

11    and are submitted to the Board no later than March 15.

12            The Board must select, per precinct, four officers;

13    two judges, a sheriff and a clerk.  The judges must be from

14    different political parties, and the clerk and sheriff must be

15    from different political parties.  Kentucky law also provides

16    for the process the Board is to follow if sufficient officers

17    cannot be appointed.

18            The State Board may require a County Board to submit

19    its list of precinct election officers to it, and after a

20    hearing remove any proposed officer it finds would not fairly

21    administer the election laws.

22            County Boards of Elections are required by Kentucky

23    statute to meet at least once a month.  The County Board is

24    comprised of the elected county clerk, the elected county

25    sheriff, and two persons appointed by the State Board of

71

1    Elections.  These appointed members are appointed from lists

2    of five persons submitted to the State Board by the two

3    predominant political parties of the county.  Typically, and

4    in Clay County, this would be a Democrat and a Republican.

5         The Board is also required to be in session during

6    the entire time that the polls are open on election day.  To

7    be in session, a quorum of its members must be present.  A

8    quorum is a majority of the Board, three of four members.

9         You have heard some tape recordings that were

10   received in evidence, and you were given some written

11   transcripts of tapes.  Keep in mind that the transcripts are

12   not evidence.  They were given to you only as a guide to help

13   you follow what was being said.  The tapes themselves are the

14   evidence.  If you noticed any difference between what you

15   heard on the tapes and what you read in the transcripts, you

16   must rely on what you heard, not what you read.  And if you

17   could not hear or understand certain parts of the tapes, you

18   must ignore the transcripts as far as those parts are

19   concerned.

20        During this proceeding, you were instructed that

21   certain evidence could only be considered against certain

22   defendants.

23        When such an instruction is given, you can only

24   consider this testimony against that defendant in deciding

25   whether the United States has proved him guilty.  You cannot

1    consider it in any way against any of the other defendants.

2    I have taken judicial notice of the fact that Clay

3    County is located in the Eastern District of Kentucky.  I have

4    also taken judicial notice of the fact that an information and

5    bond report regarding one witness, Charles "Dobber" Weaver,

6    were filed in the public record of this court on March 18,

7    2008.  Even though no evidence was presented on these points,

8    you may accept these facts as true, but you are not required

9    to do so.

10    That concludes the part of my instructions explaining

11    the rules for considering some of the testimony and evidence.

12    Now let me finish up by explaining some things about your

13    deliberations in the jury room and your possible verdicts.

14    The first thing that you should do in the jury room

15    is choose someone to be your foreperson.  This person will

16    help to guide your discussions, and will speak for you here in

17    court.

18    Once you start deliberating, do not talk to the jury

19    officer, or to me, or to anyone else except each other about

20    the case.  If you have any questions or messages, you must

21    write them down on a piece of paper, sign them, and then give

22    them to the jury officer.  The officer will give them to me,

23    and I will respond as soon as I can.  I may have to talk to

24    the lawyers about what you have asked, so it may take me some

25    time to get back to you.  Any questions or messages normally

1    should be sent to me through your foreperson.

2         I also will provide for your review the exhibits

3    which were introduced during trial.  However, you will not be

4    given a computer or other device to listen to or watch audio

5    or video recordings.  Such review, if requested and allowed,

6    may only take place in the courtroom.

7         One more thing about messages.  Do not ever write

8    down or tell anyone how you stand on your votes.  For example,

9    do not write down or tell anyone that you are split 6-6, or

10   8-4, or whatever your vote happens to be.  That should stay

11   secret until you are finished.

12        Remember that you must make your decision based only

13   on the evidence that you saw and heard here in court.  Do not

14   try to gather any information about the case on your own while

15   you are deliberating.

16        For example, do not conduct any experiments inside or

17   outside the jury room.  Do not bring any books, like a

18   dictionary, or anything else with you to help you with your

19   deliberations.  Do not conduct any independent research,

20   reading or investigation about the case, and do not visit any

21   of the places that were mentioned during the trial.

22        Make your decision based only on the evidence that

23   you saw and heard here in court.

24        Your verdict, whether it is guilty or not guilty,

25   must be unanimous.  To find a defendant guilty, every one of

1    you must agree that the United States has overcome the

2    presumption of innocence with evidence that proved guilt

3    beyond a reasonable doubt.  To find a defendant not guilty,

4    every one of you must agree that the United States has failed

5    to convince you beyond a reasonable doubt.  Either way, guilty

6    or not guilty, your verdict must be unanimous.

7            Now that all the evidence is in and the arguments are

8    completed, you are free to talk about the case in the jury

9    room.  In fact, it is your duty to talk with each other about

10   the evidence, and to make every reasonable effort you can to

11   reach unanimous agreement.  Talk with each other, listen

12   carefully and respectfully to each other's views, and keep an

13   open mind as you listen to what your fellow jurors have to

14   say.  Try your best to work out your differences.  Do not

15   hesitate to change your mind if you are convinced that other

16   jurors are right and your original position was wrong.

17           But do not ever change your mind just because other

18   jurors see things differently, or just to get the case over

19   with.  In the end, your vote must be exactly that, your own

20   vote.  It is important for you to reach unanimous agreement,

21   but only if you can do so honestly and in good conscience.

22           No one will be allowed to hear your discussions in

23   the jury room, and no record will be made of what you say.  So

24   you should all feel free to speak your minds.  Listen

25   carefully to what the other jurors have to say, and then

1    decide for yourself if the United States has proved the

2    defendants guilty beyond a reasonable doubt.

3          If you decide that the United States has proved the

4    defendants guilty, then it will be my job to decide what the

5    appropriate punishment should be.

6          Deciding what the punishment should be is my job, not

7    yours.  It would violate your oaths as jurors to even consider

8    the possible punishment in deciding your verdict.  Your job is

9    to look at the evidence and decide if the United States has

10   proved the defendants guilty beyond a reasonable doubt.

11         I have prepared verdict forms that you should use to

12   record your verdict.  I'll go over those with you in just a

13   moment.  If you decide that the United States has proved a

14   charge against a defendant beyond a reasonable doubt, say so

15   by having your foreperson mark the appropriate place on the

16   form.  If you decide that the United States has not proved the

17   charge against the defendant beyond a reasonable doubt, say so

18   by having your foreperson mark the appropriate place on the

19   form.  Your foreperson should then sign the form, put the date

20   on it -- and, of course, today is March 24, 2010 -- and return

21   it to me.

22         Remember that the defendants are only on trial for

23   the particular crimes charged in the indictment.  Your job is

24   limited to deciding whether the United States has proved the

25   crimes charged.

1          Also remember that whether anyone else should be

2     prosecuted and convicted for these crimes is not a proper

3     matter for you to consider.  The possible guilt of others is

4     no defense to a criminal charge.  Your job is to decide if the

5     United States has proved these defendants guilty.  Do not let

6     the possible guilt of others influence your decision in any

7     way.

8          Let me finish up by repeating something that I said

9     to you earlier.  Nothing that I have said or done during this

10    trial was meant to influence your decision in any way.  You

11    decide for yourselves if the United States has proved the

12    defendants guilty beyond a reasonable doubt.

13         As I indicated earlier, depending upon your verdict,

14    there may be an additional brief proceeding after you return

15    your verdict.

16         Let me get to the verdict form.  After I review the

17    verdict form, I will excuse four alternates in the case.  At

18    this point, we don't know who those individuals will be.  The

19    verdict form will be attached to the end of the instructions

20    I've just given you.  I'm also going to send you a couple of

21    additional copies of the jury instructions back in case you

22    want to look at those during your deliberations, but only the

23    set I've just read to you will have the special verdict form

24    attached to it, the verdict form attached.  So there's only

25    one verdict form that will be attached to the copy of the

1    instructions that I've just given you, and it's stapled at the

2    end.

3              The verdict form, there's a separate form for each

4    defendant in the case.  So the first verdict form will relate

5    to Defendant Russell Cletus Maricle.  The next will relate to

6    Douglas C. Adams.  The third would be Charles Wayne Jones.

7    Some of these are more than one page because there's more than

8    one count with respect to certain defendants, obviously.  The

9    next would be William E. Stivers, Freddy Thompson, William B.

10   Morris, Debra Morris and finally Stanley Bowling.

11             The verdict form will list by paragraph each count

12   for which each defendant is charged, and your duty is to

13   answer guilty or not guilty with respect to each count.  At

14   the end of a particular verdict form, you should include the

15   date and the foreperson's name and juror number.  Before the

16   verdict forms are made public, it's my practice to white out

17   or remove the person's name from the verdict form so only the

18   number would appear in the record that actually is filed or

19   the document that's actually filed into the record.  You

20   should sign the document and also include your juror number.

21             You will be given, as I said, the instructions, the

22   verdict form.  You will also be given all of the exhibits as

23   I've described to you, and you will be given a copy of the

24   indictment.

25             The indictment will help to guide you in your

1    discussions, but I will caution you, I will remind you the

2    indictment is not evidence in the case.  It's only to be used

3    to assist you as you go through the various counts.  So while

4    you will be given a copy of the indictment, it's not evidence.

5    It is only to be used to guide you in your discussions.

6    You'll also be given the verdict form, as I indicated, along

7    with the instructions and a couple of additional copies, and

8    those will be sent back to you shortly.

9            Before we excuse or select the four alternates, let

10   me ask if there is any objection to the instructions as given?

11            MR. PINALES:  May I approach, Your Honor?

12            THE COURT:  Yes, sir, you may.

13            MR. PINALES:  Thank you.

14                    (A sidebar conference was held out of the

15                    hearing of the jury):

16            THE COURT:  Yes, sir.

17            MR. PINALES:  Your Honor, Martin Pinales on behalf of

18   Cletus Maricle.  All of these were raised previously.  I just

19   want to object for purposes of the record to the definition of

20   proceeds, I believe in Count 2.  We tendered a Fifth Amendment

21   charge to the Court.  I believe that --

22            THE COURT:  My question is whether there was an

23   objection to the instructions as read to the jury.

24            MR. PINALES:  Oh, I'm sorry, Your Honor.

25            THE COURT:  If I missed something, then I would want

79

1    that to be corrected if it's significant.  Your objections to

2    not giving instructions are -- they haven't been waived by not

3    being raised at this time.  This is only as given, as read to

4    the jury.

5            MR. PINALES:  There's only one typographical, and I

6    can't remember where it was.  One paragraph was repeated

7    twice.

8            THE COURT:  I think it was.  It was a word or two

9    that I changed.

10           MR. PINALES:  Yeah, but nothing significant.  I'm

11   sorry, Your Honor.

12           THE COURT:  That's fine, that's fine.

13           MR. BALDANI:  Judge, could I raise something while

14   we're here?

15           THE COURT:  Does it relate to the instructions as

16   given?

17           MR. BALDANI:  Relates to the selection of the

18   alternates.

19           THE COURT:  We've covered that several times.  I've

20   overruled the objection or overruled the attempt to remove

21   certain jurors based on their observations during trial.  I'm

22   not going to repeat myself on that.  We're going to do this

23   blind draw from the clerk, and then those four alternates will

24   be excused.

25           MR. BALDANI:  Thank you, Your Honor.

80

1          MR. PINALES:  Thank you, Your Honor.

2                    (Sidebar conference concluded.)

3          THE COURT:  Now ladies and gentlemen, we're going to

4     select the four individuals at this point who are alternates

5     in the case.  What I'm going to ask you to do is after the

6     four alternates are excused, and when I excuse everyone to go

7     back and begin your deliberations, you can get whatever

8     personal belongings that you have.  If you would bring those

9     four alternates back to my chambers, I will instruct them as

10    to further admonition, not commenting upon the case until the

11    case is finally decided.  So you can bring those four folks by

12    my office just quickly, and then they can be escorted out.

13          Madam Clerk, if you could select the four alternates.

14          DEPUTY CLERK:  Yes, Your Honor.  21, 93, 82, 78.

15          THE COURT:  All right.  Thank you, ladies and

16    gentlemen.  Madam Clerk, let me provide these to you.  It will

17    take a moment for the clerk to assemble all of the documents

18    to take those back to you and, of course, let me give you one

19    further admonition before I send you back, and that is on your

20    deliberations.

21          If during the course of your deliberations it's

22    necessary for one or more persons to leave the room while

23    you're deliberating to take a bathroom break or to take any

24    other breaks, you should stop your deliberations.  You should

25    not deliberate unless all 12 jurors are present in the jury

1    room.  You can certainly deliberate while all 12 are present,

2    but if anyone leaves for any reason, you should stop your

3    deliberations at that point.

4           At this time, the jury can be excused to begin their

5    deliberations.

6                     (The jury left the courtroom at 10:12 a.m.)

7           THE COURT:  Mr. White, we're going to resume in about

8    five minutes with the question you asked earlier.  I need to

9    excuse these jurors first and escort them out of the building.

10          MR. WHITE:  Thank you very much, Your Honor.

11                     (Recess from 10:12 a.m. until 10:31 a.m.)

12          THE COURT:  Thank you.  This morning, Mr. White had

13   raised an issue about scheduling going forward while we're

14   waiting for the jury.  Mr. White, generally what I will do is

15   advise the parties that as soon as deliberations are

16   completed, if the jury returns a verdict of guilt as to

17   Count 1 or Count 2, that would give rise to the forfeiture

18   counts with respect to defendants that would be found guilty

19   of either of those counts.  We would then proceed into the

20   forfeiture directly.

21          I do understand that the United States has presented

22   most if not all of the proof that it would be relying upon for

23   forfeiture, but I will give the parties, if we get to that

24   stage, I will give the parties an opportunity to make a brief

25   opening statement so it's essentially a trial within a trial.

82

1    Give you an opportunity to make a brief opening statement.

2    We'll then proceed with any proof that the United States would

3    have.  We'll proceed in the same manner with the defendants

4    that would be identified and then with closing arguments.

5         Typically, the forfeiture proceeding, of course,

6    would be conducted before the jury unless the parties would

7    waive that.  I wouldn't anticipate that would happen in this

8    case, and you'd want to present any evidence or arguments to

9    the jury and then brief closing statements.  They would go

10   back and they would begin their deliberations.

11        I've given you draft instructions to look over,

12   forfeiture instructions to look over this morning.  So what I

13   would ask you to do is look at those instructions and if you

14   feel like that there are additional or different instructions

15   that you'd like, you can begin looking and working on that so

16   we don't take a lot of time once we get to that issue.  As you

17   can see, the instructions are fairly straightforward with

18   respect to Counts 12 and 13.  But if there are additional

19   instructions, I would ask you if you want to go ahead and

20   tender anything to me, that will give me a chance to look over

21   it before we would get to that point.

22        Obviously, if the jury returns a verdict of guilt,

23   you know they've deliberated and they've worked pretty hard

24   and probably are not going to want to go through a really

25   lengthy proceeding, but you're entitled to present any

1    evidence that you want on those issues.  So that's a thumbnail

2    of the way we'll proceed.  Does that answer the question that

3    you asked earlier?

4         MR. WHITE:  It does with one slight thing, Your

5    Honor.  That would be during these deliberations, for example,

6    I brought other work to do and was hoping -- and I'm very

7    conscious of the Court's rule regarding telephones.  Was

8    wondering if we would be allowed to bring our phones to the

9    third floor or the second floor where there are empty rooms

10   that we can work out of, if that will be all right.

11        THE COURT:  What I will do is I'm going to make the

12   grand jury room available.  We're going to open that up.

13   That's probably the largest space on this floor.  I'm not

14   going to waive the rule on cell phones, because it's a

15   security issue more than anything else.  So if you need to

16   step out and make calls, of course, you'll be able to do that,

17   but I do want to give you some space so you can be contacted

18   when the jury comes back and we don't have to be looking for

19   everyone for 15 minutes.

20        You do need to stay fairly close to the building.  If

21   you go outside the building, you need to let the security

22   officers know where you are so you can be contacted when the

23   jury does reach a verdict on the case or if they have a

24   question.  I'd like to avoid, if the jury has a question,

25   waiting 15, 20 minutes before we answer the question.  I'd

1      like to do that as quickly as possible, but that's not always

2      feasible to do.  If you're away somewhere, it makes it much

3      more difficult.

4            I do not accept verdicts between 12:00 and 1:00.  If

5      the jury, at 12:05, sends a note they've reached a verdict.

6      I'm not going to accept that till 1:00, so you'll be able to

7      have lunch.

8            MR. WHITE:  That answered my question, Your Honor,

9      the issue on lunch.  If I could have just one more question?

10           THE COURT:  Yes, sir.

11           MR. WHITE:  It just has to do with my actually happy

12     wife/happy life rule, which I try to adhere to as well.  If we

13     go into past Friday on deliberations, do you expect that we'll

14     deliberate on Saturday or will we come back on Monday?  And if

15     you haven't decided, that's fine.

16           THE COURT:  Once deliberations start, I really turn

17     that decision over to the jury.  I'll let them stay as long as

18     they want.  I'll feed them as many meals as they want.  But if

19     they want to deliberate tonight, I'll let them do that.  If we

20     do go into the weekend, if they want to do that, then I'll

21     have to caution them about that on Friday morning so I can

22     make arrangements to have utilities turned on.  Although

23     sometimes, when you don't provide utilities, that tends to

24     speed up deliberations.

25           But I'll advise them of that on Friday and then make

85

1    the appropriate arrangements.  So if they want to go into

2    Saturday or Sunday, I'll make the building available for that

3    purpose.

4         If we go into Monday of next week, I will need to

5    reschedule ten hearings in Covington and so I'll need to start

6    doing that on Friday to advise the attorneys.  But I want to

7    wait until Friday to see if that's what the jury prefers.  If

8    they do, then we'll be back on Monday if that's their

9    preference.  So we'll let the jury make that decision as to

10   how long they want to continue deliberations.

11        MR. WHITE:  Thank you, Your Honor.  You've answered

12   all my questions.

13        MR. WESTBERRY:  Assuming we go through the evening,

14   come back tomorrow, 8:30 or 9:00 a.m.?

15        THE COURT:  I think 8:30.  The jury hasn't indicated

16   there's a problem getting here at that time.  Typically what I

17   do when I recess for the evening, I will tell the jury or have

18   the security officer tell the jury -- I not going to bring

19   them back in.  I'll tell them to be here at 8:30, or I'll go

20   back and tell the jury again they can't deliberate until all

21   jurors are present.  In other words, don't shut the door so

22   they can start their deliberations until all the jurors are

23   present in the jury room.

24        MR. BALDANI:  Judge, I've got a question.  Am I safe

25   to assume if we've got two counsel, as long as one person is

1   within a few minutes, we're okay?

2           THE COURT:  Yes.

3           MR. BALDANI:  Okay, that's all.

4           THE COURT:  If that person is prepared to proceed

5   with any forfeiture issues if we get to that point.

6           MR. BALDANI:  Right.  I understand.

7           MR. SIMONS:  Your Honor, I have one question.  I

8   disclosed an expert, Charles Stivers, who was a CPA.  And when

9   I proposed to call him, the Court indicated that would be more

10  proper for a forfeiture proceeding.  Since then, there's been

11  an issue of gross versus net.  I would still want to have him

12  available if that became an issue.  Wanted to inquire of the

13  Court if I would be allowed to present him.

14          THE COURT:  If the parties have any additional

15  authorities they would like to submit on that issue, we talked

16  about gross versus net profits in terms of proceeds under

17  Count 2, the money laundering statute.  But Count 1, of

18  course, is a separate statute.

19          MR. SIMONS:  Yes, sir.

20          THE COURT:  And I think Mr. Smith had indicated that

21  he may have some additional authorities that he would like to

22  provide.  But if the parties want to provide me with any

23  additional authorities on those issues, the sooner the better,

24  obviously.  I've looked at the issue a bit in connection with

25  that earlier issue on Count 2.  So I'm familiar with some of

1    the authorities, but if you have additional authority that

2    you'd like to provide me on that question, sooner rather than

3    later would be better.  Sooner you get me the cases, you know,

4    the more attention I'm able to give to those cases.

5              MR. SIMONS:  Thank you.

6              THE COURT:  Mr. Smith, I think you indicated you had

7    some authorities you wanted to tender on that?

8              MR. SMITH:  We do, and I'll try to get those

9    forthwith.

10             THE COURT:  Okay.  We've made arrangements to have

11   the grand jury room available to counsel?

12             COURT SECURITY OFFICER:  Yes, sir.  It's open.

13             MR. ABELL:  Judge, one other thing.  I have a little

14   tiny bit of business up at the Capitol.  When we recess here

15   in a few minutes, may I be excused?  It should take 30 minutes

16   or so.

17             THE COURT:  Yes, sir.

18             MR. ABELL:  Thank you.

19             THE COURT:  All right.  Anyone else have any

20   scheduling or other related questions you'd like to take up?

21                                 (No verbal response.)

22             THE COURT:  All right.  If not, we will be in recess

23   to await the verdict of the jury.

24             (Proceedings recessed at 10:41 a.m.)

25                         -  -  -

1                          C E R T I F I C A T E

2              I, LISA REED WIESMAN RDR-CRR, certify that the
   foregoing is a correct transcript from the record of
3  proceedings in the above-entitled case.

4

5   \s\ Lisa Reed Wiesman                 April 27, 2010
   LISA REED WIESMAN, RDR-CRR          Date of Certification
6  Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25