# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# LONDON

CRIMINAL NO. 6:09-CR-16-KKC                     *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                             PLAINTIFF

V.                    **SENTENCING MEMORANDUM**

RUSSELL CLETUS MARICLE, et. al.                                    DEFENDANTS

\* \* \* \* \*

> *"Any people anywhere, being inclined and having the power, have the right to rise up, and shake off the existing government, and form a new one that suits them better. This is a most valuable - a most sacred right - a right, which we hope and believe, is to liberate the world."*
>
> – Abraham Lincoln

The beauty in our Constitutional democracy is that the power to form a new government rests in a voting booth. Should the government not suit the people, the people can exercise their "sacred right" to elect someone who shares the values and judgment of the citizens. This sacred right was stolen from the people of Clay County, depriving them of the only peaceful means of bettering themselves and their community through government. Because of this, the United States urges the court to sentence each Defendant to the maximum amount allowed by his or her respective plea agreement.

If this is merely a vote buying case, as it has been characterized so often, then a sentence of time served is clearly appropriate. The guideline range for vote buying is

below the time already served by all Defendants. To be sure, anyone who takes advantage of economically deprived citizens to buy his or her say in government has committed a serious offense – one that deserves punishment. Congress, through the Sentencing Commission, has spoken on that matter, and has given the Court a starting point for analysis. That point is considerably lower than the prison terms already served by these Defendants, and would warrant the request of each Defendant. No serious argument is available to the contrary.

This offense, however, is much more serious and has undermined the very fabric of democracy in Clay County. Clay County, like many rural Appalachian communities, suffers from a chronic lack of jobs and economic opportunities, exacerbated by a long, sad history of public corruption. That reality does not nullify the democratic rights of Clay County citizens – to have their will and their values represented through their elected leaders. But it does provide an opportunity for a few to secure power and opportunity for themselves. The racketeering enterprise in this case did just that; it stole democracy from the people for the sake of a few. One candidate for an office who buys votes to get elected may constitute "mere" election fraud. An altogether different, and far more serious, crime occurs when a group of individuals secretly conspires together for many years to determine who will represent the people of a county. Democracy is stolen. Any hope for a better future is sacrificed at the altar of criminal greed.

Certain Defendants argue, in essence, that their conduct was the lesser of two evils; that the enterprise formed, at least in part, to remove a corrupt drug dealer from public office, employing the very means that he had previously used to maintain his hold on

power. One aspect of this rationale is certainly true: the Defendants were not the first to abuse Clay County. Trial testimony from multiple witnesses revealed, sadly, that the only way to make it in Clay County was to align with the politically powerful, pay one's dues through similar deprivations of liberty, and remain in the good graces of the few who held power. The Defendants simply followed suit to grasp power for themselves. No end can justify these means. Whatever the Defendants' motives in seizing control of Clay County, they cannot and do not validate the Defendants' decision to rob the citizens of the power to decide their government and to place that power into the hands of a select few.

The vital consideration for the Court is to satisfy 18 U.S.C. § 3553(a) – to ensure that these sentences truly reflect the seriousness of the offense, provide a just punishment, promote respect for the law, generate appropriate deterrence, and prevent disparity. The pertinent testimony from the Defendants' trial establishes that the maximum sentences recommended in the plea agreements are sufficient and not greater than necessary to achieve these factors.[1] Distinct from isolated vote buying, this enterprise controlled the

---

[1] The Defendants argue that the stipulated facts set forth in their plea agreements contain the only evidence that the Court may consider at sentencing, but they cite no law for this – and there is none. The Sentencing Guidelines have long made clear that a court may resolve and consider disputed fact issues in imposing a sentence. See U.S.S.G. § 6A1.3. The only requirement is that the evidence considered have "sufficient indicia of reliability to support its probable accuracy." *Id*. The Sixth Circuit has characterized this standard as "'a relatively low hurdle,' which asks only that 'some evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing.'" *United States v. Moncivais*, 492 F.3d 652, 659 (6th Cir. 2007) (internal citation omitted).

In accordance with these principles, the Sixth Circuit has rejected arguments similar to the Defendants' attempts to limit their relevant conduct to the factual bases articulated in their plea agreements. In *United States v. Herrera*, 928 F.2d 769 (6th Cir. 1991), for example, the defendant's plea agreement set forth specific dates in which he was involved in a conspiracy. The district court sentenced the defendant based on relevant conduct outside of those dates, and the Sixth Circuit affirmed. *See id.* at 774; *see also United States v. Smith*, 887 F.2d 104, 108 (6th Cir. 1989) (relevant conduct need not be established by a finding of the jury or a plea of guilty).

In evaluating the Defendants' relevant conduct, the Court may consider the pertinent evidence adduced at the first trial, despite the Defendants' characterizations of the first trial record as "defective." This evidence was presented

entire political process.  Members of the enterprise, including a circuit judge, the county clerk, election officers, magistrates, and the economically powerful school superintendent, forged alliances to the extent necessary to control the county.  Competition between political parties was meaningless.  Members of both parties conspired together to dictate who would win.  The enterprise guaranteed its success through control of the election officers.  These election officers ensured that voters were paid only if they voted in line with the enterprise's wishes.  As these tactics became known and new efforts arose to promote fair elections, the enterprise circumvented these efforts by changing tactics – stealing votes to ensure its grasp on power.  The enterprise worked with precision and succeeded in aggregating the control of the county within a few hands.

     The maximum term of imprisonment in each plea agreement reflects the prosecution's attempt to assess the varying roles of each Defendant, leadership and abuses of public trust, while also factoring individual characteristics of each defendant, such as age and health.  These sentences exceed the minimum sentences available under the circumstances.[2]  Sentences that exceed the minimum are necessary to deter others from taking up the sad cycle of the organized destruction of free elections in Clay County.

---

in court, under oath, and subject to each Defendant's cross examination.  This evidence features far higher indicia of reliability than evidence that is frequently considered at sentencing.  *See, e.g., United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (at sentencing, district court may consider "various types of hearsay information" and "even illegally obtained or other inadmissible evidence").

[2] The base offense level for RICO is 19 with available adjustments for abuse of trust and leadership.  *See* U.S.S.G. § 2E1.1.  As found in the presentence report for Cletus Maricle, for example, two levels are added for abuse of a position of trust and four levels are added for organizer or leader status, resulting in six levels of increase.  With three levels reduced for acceptance, the guideline range for imprisonment would be 41-51 months, notwithstanding arguments about greater potential ranges for underlying activity. Stated differently, no matter the racketeering activity of an enterprise, the analysis should start at 41-51 months for an organizer or leader who violated a position of public trust.

Furthermore, meaningful distinctions are present between the sentences recommended for the respective Defendants. These distinctions are necessary to prevent equalizing co-defendants who had different roles within the enterprise.

By contrast, imposition of the sentences urged by the Defendants would minimize the damage done to the people of Clay County by this racketeering enterprise and would do little to deter similar conduct in the future. The criminal enterprise represented by the Defendants methodically worked to rob the people of Clay County of their most basic and cherished freedoms. The sentences sought by the Defendants would be wholly inadequate to reflect the seriousness of their offenses and would be ineffective as a deterrent.

Democracy may not always work perfectly, may not always be pretty, and may not always reap the result that a group desires. Yet, the right of the people to dictate their future through true representation of their will is fundamental to who we are as a society. When an enterprise forms to take that most fundamental, sacred right away, a just sentence must be sufficiently severe and must differentiate between the culpability of the conspirators. The maximum recommended sentences set forth in the plea agreements are designed to meet these goals.

        Respectfully Submitted,

        KERRY B. HARVEY
        UNITED STATES ATTORNEY

By:    s/Jason D. Parman
        Assistant United States Attorney
        601 Meyers Baker Rd. Suite 200
        London, KY 40741

                                          (606) 330-4831
                                          (606) 864-3590
                                          Jason.Parman@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2014, the foregoing was electronically filed through the CM/ECF system, which will send notice of the filing to counsel of record.

                                        s/ Jason D. Parman
                                        Assistant United States Attorney